**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| INFODELI, LLC and BREHT C. BURRI,     ) | |
| ) | |
| Plaintiffs,    ) | |
| ) | |
| v.       ) | |
| ) | Case No. 4:15-cv-00364-BCW |
| WESTERN ROBIDOUX, INC.,     ) | |
| ) | |
| ENGAGE MOBILE SOLUTIONS, LLC.    ) | |
| ) | |
| MATTHEW BARKSDALE     ) | |
| ) | |
| CEVA ANIMAL HEALTH, LLC.     ) | |
| ) | |
| SHANE FAIRCHILD     ) | |
| ) | |
| BOEHRINGER INGELHEIM VETMEDICA,   ) | |
| INC.     ) | |
| ) | |
| PETER E. BURRI,     ) | |
| ) | |
| BRIAN P. BURRI and CINDY BURRI, and   ) | |
| ) | |
| CONNIE S. BURRI,     ) | |
| Defendants.     ) | |

## FIRST AMENDED COMPLAINT

COME NOW the Plaintiffs, Breht C. Burri and InfoDeli, LLC ("InfoDeli"), and for their

First Amended Complaint ("Complaint") against the above-named Defendants, state and allege

as follows:

## JURISDICTION

1.     This Court has subject matter jurisdiction over Plaintiffs' claims for copyright infringement, inducement of copyright infringement and vicarious copyright infringement pursuant to 17 U.S.C. § 501, and 28 U.S.C. §§ 1331 and 1338(a), and for violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.

2.     This Court has supplemental jurisdiction over Plaintiffs' other claims pursuant to 28 U.S.C. § 1367(a) because the other claims are closely related to Plaintiff's Federal claims, are part of the same case or controversy and derive from a common nucleus of operative facts.

## VENUE

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and § 1400(a) because Defendants Engage Mobile Solutions, Inc. ("Engage"), Western Robidoux, Inc. ("WRI") and Boehringer Ingelheim Vetmedica, Inc. ("Boehringer") maintain their principal place(s) of business in this District.

## THE PARTIES

4.     Plaintiff InfoDeli is a Missouri corporation, duly licensed and in good standing, with its principal place of business located at 2107 Grand Blvd., Suite #208, Kansas City, MO 64108.

5.     Plaintiff Breht C. Burri is a resident of Platte County, state of Missouri, with a home address of 5637 Gresham Circle, Parkville MO 64152.

6.     Defendant WRI is a Missouri corporation in good standing, with its principal place of business located at 4006 S. 40th Street, St. Joseph MO 64503.

7.     Defendant Peter E. Burri is a resident of the state of Missouri with a home address of 4612 S. Wilshire Dr., St. Joseph MO 64506

2

8.     Defendant Brian P. Burri is a resident of the state of Missouri with a home address of 2198 NW State Route F, Union Star MO 64494.

9.     Defendant Cindy Burri is a resident of the state of Missouri with a home address of 2198 NW State Route F, Union Star MO 64494.

10.     Defendant Connie S. Burri is a resident of the state of Missouri with a home address of 1202 Heartland Road, St. Joseph MO 64506.

11.     Defendant Engage Mobile Solutions, LLC is Missouri limited liability corporation with its principal place of business at 112 E. Missouri Ave., Suite 200, Kansas City MO, 64106.

12.     Defendant Matthew Barksdale is the President of Engage Mobile Solutions, LLC, and is a resident of the state of Missouri with a home address of 822 N. Farley Ave., Kansas City MO 64157-8538.

13.     Defendant CEVA Animal Health, LLC. ("CEVA") is a Delaware limited liability corporation duly qualified to do business in the state of Missouri.

14.     Defendant Shane Fairchild is a Product Manager at Defendant CEVA with a home address of 8210 N.E. 102nd St., Kansas City MO 64157.

15.     Defendant Boehringer Ingelheim Vetmedica, Inc. ("Boehringer") is a Delaware corporation duly qualified to do business in the state of Missouri with its principal place of business at 2621 N. Belt Hwy, St. Joseph, MO 64506.

16.     Based upon the above, venue is proper in this jurisdiction.

## ALLEGATIONS

### Allegations Specific to Defendant WRI

17.     Defendant WRI is a commercial printing company owned by Defendant Connie Burri, and her three sons, Plaintiff Breht Burri, Defendant Brian Burri and Defendant Peter Burri.

18.     The husband of Connie Burri, and the father to the three sons, was Milton "Roger" Burri (now deceased), who incorporated WRI in 1979, as part of a buyout of Western Robidoux Forms, Inc.

19.     In 1985, Milton Burri and Connie Burri merged Burri Associates, Inc. with WRI.

20.     When WRI was first incorporated, only Milton Burri was on the Board of Directors, but on January 23, 1990, he added Connie Burri as a second Director.

21.     As of the filing of this First Amended Complaint, on information and belief, WRI has authorized 30,000 shares of stock, but only issued 2,000 shares of stock, owned by Connie S. Burri (1,424 shares) and her three sons (192 shares each).

22.     On information and belief, Defendant Connie Burri is currently the controlling shareholder of WRI and its President.

23.     Plaintiff Breht Burri is a minority shareholder in WRI and has been since about December 29, 2009, when his Mother Connie first gifted him shares of stock; Connie Burri gifted equal amounts of shares to his two brothers at the same time.

24.     Shortly after Roger Burri passed away, the Articles of Incorporation for WRI were changed in July of 2009 to increase the number of members on the Board of Directors from two (2) to four (4).  Those four directors were Connie Burri and her three sons, Breht, Brian and Peter.

4

25.    In a Board Meeting held on June 4, 2014, with attorney Robert "Bob" Kirkland purportedly attending as Connie Burri's "proxy", attorney Kirkland (purportedly voting Connie Burri's shares), Brian Burri and Peter Burri all voted to reduce the number of Board Members to three, and then kicked Plaintiff Breht Burri off of the Board of Directors.

26.    On June 4, 2014, Connie S. Burri signed a document filed with the state of Missouri that claimed that all 2,000 shares of WRI's issued stock voted to change the Articles of Incorporation for WRI and reduce the number of members on the Board of Directors from four (4) to three (3).

27.    Plaintiff Breht Burri did not cast his 192 voting shares in favor of this change and so a correction was filed with the state of Missouri on June 12, 2014, signed by attorney Robert T. Steinkamp, as WRI's "authorized agent" to correct that the number of shares voting in favor of eliminating one Board member from 2000 to 1808.

28.    Attorney Steinkamp is corporate counsel for WRI and of counsel with Kirkland Woods & Martinsen.  Attorney Bob Kirkland is personal counsel to Connie S. Burri and has done the Burri family estate planning for many years, and the name partner in Kirkland Woods & Martinsen.

29.    Messrs. Steinkamp and Kirkland currently are with the law firm of Kirkland Woods & Martinsen, and were with that firm at all relevant times herein.

## Allegations Specific to the Burri Family

30.    Plaintiff Breht Burri is the oldest of three sons, and as of the filing of this suit, is 52.

31.    Plaintiff Breht Burri has been a loyal, faithful son and worked in the family business in school and then for a short time after he graduated from college; while doing so, he

5

brought in several important accounts (*e.g.*, Intertec Publishing and Sosland Publishing which accounted for approximately 50% or more of the company's revenues for many years) to WRI that generated a substantial amount of revenue for WRI over the following years. Breht neither asked for nor received compensation for the profits enjoyed by WRI from these accounts.

32. As a young man, Plaintiff Breht Burri left the family business, obtained a degree in law, and practiced law in California for several years. Breht then decided to change career paths, electing to pursue computer programming instead. Breht founded TooBaRoo, the precursor company to Plaintiff InfoDeli. InfoDeli deals in the business of software development, database development, systems licensing, web development and internet marketing.

33. Defendant Brian Burri is the middle of the three sons, and as of the filing of this First Amended Complaint is approximately 42. With perhaps a few minor exceptions, Brian has worked exclusively at WRI his entire career.

34. Defendant Peter Burri is the youngest of the three sons, and as of the filing of this First Amended Complaint is approximately 40. With perhaps a few minor exceptions, Peter has worked exclusively at WRI his entire career.

35. Defendant Cindy Burri is married to Defendant Brian Burri. Defendant Cindy Burri also works at WRI.

### Allegations Specific to Plaintiff InfoDeli

36. Plaintiff InfoDeli creates and licenses Internet (or web-based) database software and systems. The "InfoDeli" platform is a database and web-based information delivery system that allows InfoDeli's clients and customers to, among other things, order, manage and/or distribute marketing materials and provide product fulfillment in real time through a browser on the internet. Breht Burri founded InfoDeli and its predecessor company TooBaRoo on or about

6

1996. Breht registered the URL Infodeli.com on January 17, 1996. He was granted a trademark registration for InfoDeli on March 11, 1997.

37.     Breht first met with Boehringer Ingelheim in TooBaRoo's California office regarding website development in approximately 1997. Beginning in approximately 1998, Breht Burri first began providing programming services to Defendant Boehringer.

38.     In 2002, Plaintiff Breht Burri first created the precursor software to the InfoDeli Software Platform that was later used in the Joint Venture with WRI as explained below.

**Creation of the _de facto_ Partnership between InfoDeli, Breht Burri and WRI**

39.     In 2009, Plaintiffs Breht Burri, InfoDeli and Defendant WRI entered into a _de facto_ partnership (the "Joint Venture").

40.     At the start of the Joint Venture, the Burri Brothers did not own any shares of WRI stock; thereafter, as part of her estate planning, Connie Burri simultaneously and periodically gifted an equal number of shares to each of the three brothers.

41.     Each brother received sixteen shares on or about December 29, 2009, sixteen shares each on the same date in 2010, and 160 shares each on the same date in 2012.

42.     Further, from July of 2009 until June 4, 2014 (when Defendant Brian Burri, Defendant Peter Burri, and attorney Kirkland voted to eliminate one director from the Board of Directors) each brother was a Director of WRI.

43.     On or around September 1, 2013, WRI took out "key man" insurance policies on each of brothers in the amount of $3,000,000 per brother should something happen to one or more of the brothers; this policy was payable even though Breht was not an employee or manager of WRI.

7

44.     Approximately six years before the joint venture with WRI began, the InfoDeli platform was already in place and used by Boehringer via a direct relationship between Boehringer and Breht Burri.

45.     The *de facto* Joint Venture terms were simple: (a) Breht and InfoDeli provided Western Robidoux with use of InfoDeli-created software and a significant amount of Breht's digital capabilities and expertise, along with helping sell business; in exchange, Breht was to receive compensation equal to that of his brothers, Brian Burri and Peter Burri; (b) for example, during the course of the Joint Venture with WRI, an executive from Boehringer left and went to CEVA and insisted that CEVA implement the InfoDeli platform, which prompted Breht to first help sell the CEVA business[1] and then he and his InfoDeli team created and deployed a new InfoDeli Software Platform installation for Ceva;  (c) WRI[2], Boehringer (and later CEVA) were allowed to use this software at no charge as part of the services provided to them by the Joint Venture; (d) the InfoDeli Software Platform allowed the sales forces of Boehringer (and later CEVA) to place orders over the internet for printing, printed materials and non-printed premium items such as hats, shirts and pens with the customized Logos; (e) after receipt of the orders through the InfoDeli Software Platform, WRI would print the items and/or ship the items with WRI's (or any other third party's) fulfillment services; (f) Breht later adapted the InfoDeli Software Platform to allow CEVA's customers to redeem coupons and directly place orders for

---

[1]  Plaintiff Breht Burri and Defendant Cindy Burri landed the CEVA account for the Joint Venture, and on June 1, 2011, Connie Burri wrote to congratulate them and said "You two are on top of it.  * * * *.  Good job both of you. * * * *.";
[2]  Due to tax advice, InfoDeli and Breht started charging licensing fees on InfoDeli to WRI around 2013 but this was offset by reallocating lower compensation to Breht.  The net amount paid did not change.

8

free samples of product through pages on other websites created by Breht Burri and the InfoDeli team; (g) these specialized windows allowed access into the InfoDeli Software Platform by the end user at the consumer level (*i.e.*, a pet owner) who could redeem coupons for free samples of CEVA's products; (h) Breht Burri and InfoDeli would maintain the databases, and also process certain orders or, alternatively, directly route the orders to WRI each day, (i) Plaintiffs would sometimes further enhance or "tweak" the software with requested generalized improvements; (j) WRI paid Breht the same compensation (adjusted for tax purposes since Breht was self-employed) as his brothers Brian and Peter, and (k) at the end of the year, Breht, Brian and Peter would split equally whatever profits WRI paid out.

46.     On September 28, 2011, Mr. Tom Brodowski of CEVA wrote Cindy Burri and said "Attached is a copy of the fulfillment agreement with all the revised terms Breht and I discussed and agreed to." Thus, Breht, representing the *de facto* Joint Venture, negotiated the contract with CEVA on behalf of WRI.

47.     By December 22, 2011, Breht had the CEVA Literature Store up and running on the InfoDeli platform. CEVA asked WRI to quote it on integrating the CEVA system with the existing WRI system, and in response, sometime in December of 2011, Defendant Cindy Burri (using points provided to her by Plaintiff Breht Burri) wrote back and explained the benefits of the InfoDeli Software Platform.

48.     Indeed, due to substantially higher internet connection speeds available in Kansas City (as opposed to St. Joseph), basic productivity and time management required Breht to be located in Kansas City at the InfoDeli office or at a higher speed connection in the Kansas City area.

9

49.     For the years 2009, 2010, 2011, 2012 and 2013 (with one exception), the Joint Venture functioned efficiently and smoothly, partly because Plaintiff Breht did not realize that his brothers were being compensated at a higher rate than he was.

50.     Beginning in 2013, CEVA's use of the InfoDeli Software Platform increased sharply, as did the orders in WRI's order fulfillment business, particularly related to the promotional marketing of CEVA's Vectra product and the related coupon kits ordered through the InfoDeli Software Platform.

51.     Specifically, on or about December of 2012, Breht Burri and InfoDeli's programmers created a website at VectraRebate.com that was tightly integrated with the InfoDeli Software Platform.  This site allowed pet owners to redeem a coupon for free samples of Vectra by using redemption codes linked, managed and created in the InfoDeli database system at the URL VectraRebate.com.

52.     This website launched in early 2013.  The site also allowed Veterinary Clinics or CEVA Sales Representatives to directly order Vectra Program Replacement Kits Materials by entering a special reorder code in a specialized area of the site.

53.     Among his other tasks, at the end of each day, to control quality and costs for CEVA, Breht would monitor and collect the Vectra Kit/Coupon orders placed that day on the InfoDeli system, process those orders for proper printing and shipping, and then forward them to WRI, who would then package and mail the kits, coupons or samples.  In doing so, the Joint Venture kept its fulfillment costs down as much as possible for its customer CEVA.

54.     Other benefits of the InfoDeli Software Platform were of significant value to CEVA and Boehringer as well; for example, the InfoDeli Software Platform was capable of

10

providing real-time, customized marketing reports for CEVA's and Boehringer's management and the sales force.

55. For example, authorized management could query or view the digital (*e.g.*, PDF files of a product description sheet or a product brochure) and physical orders, sales program reporting and inventory usage for a given product, for a given territory, for a given sales representative or a specific program type (*e.g.*, buy three get one free program).

56. The InfoDeli Software Platform, through its customized database schema, granted users at CEVA and Boehringer certain limited rights, by assigning each individual user a certain level of authorization to see information or do certain activities in the Platform; all others rights rested with the Joint Venture Partners, *i.e.*, Breht Burri, InfoDeli and WRI.

57. This was extremely valuable to CEVA and Boehringer, as it gave the sales representatives all of their physical and electronic promotional materials in one centralized place located on one website, making them easily accessible.

58. The system also provided marketing and product inventory reports on the system activity; in fact, the InfoDeli Software Platform was so powerful that WRI also ran their entire fulfillment warehouse for CEVA and Boehringer off the front and backend of the InfoDeli Software Platform.

59. As the fulfillment orders and printing orders placed through the InfoDeli web-based database software grew, so too did WRI's gross revenues and profits, and so too did the salaries for Brian Burri, Cindy Burri and Peter Burri, and to a lesser extent, Breht Burri (until 2014).

60. On information and belief, sometime in 2013, one or more of the Defendants Connie Burri, Brian Burri, Peter Burri and Cindy Burri, acting in concert, set in motion the

11

following scheme: (a) cause WRI to pay Plaintiff Breht Burri and InfoDeli less than an equal split of the WRI profits in breach of the Joint Venture Agreement; (b) make plans to create a substantially similar software product that copied the protectable aspects of the InfoDeli Software Platform; (c) when their substantially similar software was created in 2014, eliminate the Joint Venture partnership; and (d) do all of this surreptitiously and in a way to seamlessly eliminate the Plaintiffs without interruption to the services provided to Boehringer and CEVA.

61.     Further, on information and belief, one or more of the Burri Defendants, whether acting alone or in concert, recruited Defendants Matthew Barksdale, unknown Engage Mobile employees or contractors, unknown Boehringer employee(s), and Shane Fairchild and other unknown CEVA employees, to assist them in their scheme to create a substantially similar software product.

62.     Because Plaintiff Breht Burri was on the board of directors of WRI until June 4, 2014, on information and belief, beginning in 2013 or perhaps earlier, one or more of the Defendants Connie Burri, Brian Burri, Cindy Burri and/or Peter Burri, acting in concert, excluded Breht from WRI meetings regarding their plans to cause WRI to materially breach its *de facto* Joint Venture partnership with Breht Burri and InfoDeli.

63.     Despite previously having access to WRI's books at his brother's computer whenever Breht inquired, on September 26, 2013, Defendants Connie, Brian and Peter Burri denied Breht Burri access to WRI's electronic books, so that Breht could no longer see WRI's profits (thus, he could not determine whether the terms of the Joint Venture were being fulfilled).

64.     On September 26, 2013, Breht then wrote his Mother, Connie Burri, the following email:

On 9/26/13 4:16 PM, "Breht Burri" <toobaroo@fastmail.fm> wrote:

Mom

Check with Brian to see what amounts of money are in the bank accounts?

Can you check and see what amounts are in the Accounts Receivable?

Can you tell me if you guys have taken your own bonuses out without my knowledge?

Can you tell me if you guys have increased your weekly salaries to exceed mine without my knowledge?

It is just very strange. normally I ask Brian how things are going in the accounts and he immediately pops them open on the screen and it's very forthright and telling me what is going on at Western Robidoux.

today brian ignored my questions and walked away from his screen.

Peter also vaguely indicated that something was up re the bonuses.

You indicated that payment of those amounts would be conditioned on some additional agreement and that there was less money than anticipated.

Send me the answers to those questions and that anticipated schedule of payments.

Thanks.

Breht Burri
TooBaRoo | Domain Licensing
Phone: 816-365-9207
Email: Breht@TooBaRoo.com
Twitter: @TooBaRoo
http://TooBaRoo.com

Internet Marketing | Domains | SEO & SEM

65.     An email from his Mother's account replied that same day:

13

## Re: Some questions

| | |
|---|---|
| **From:** | Connie Burri <connie@wriprint.com> |
| **To:** | Breht Burri <toobaroo@fastmail.fm> |
| **Subject:** | Re: Some questions |
| **Date:** | Thursday, September 26, 2013 4:32 PM |
| **Size:** | 4 KB |

Breht,

The only question you need to know the answer to is your payment schedule. If you don't want to be a part of Western Robidoux why should you know our billing or anything else. We have many very good customers besides the two you are acquainted with and it has been a good year with most of them.

Depending on what we receive tomorrow in receivables, we will have a check for either $25,000 or $50,000 on Monday. If not $50,000 the other $25,000 will follow the next Monday. Please change your weekly charges to $6,000 for the rest of the year. In December when we know where we are on several large payables we have coming up, we will determine how much more you all will get at that time.

Please know I/we have no intention of cheating you, but there is more to this business than that in which you are involved.

Love

Mom

66.     On December 16, 2013, Breht Burri sent an email in response:

On 12/16/13 2:54 PM, "Breht Burri" <infodeli@aol.com> wrote:

Mom,

What is going on regarding bonuses for 2013. I need to get some estimates to my accountant to do some end of year planning.

Based upon Brian's mid year projections, I/we are around 50K shy so far.

Also, we will also end up shipping around 35% more samples than the TOP projection. In addition, we continued to ship kits and duo and replacement coupons much longer than I think we anticipated.

I need to get an rough estimate back to him for some forecasting for what I need to do by the end of the year.

Breht

67.     On December 17, 2013, an email from his Mother's account responded:

14

**Re: Remaining Bonuses for 2013 - what is the plan?**

**From:** Connie Burri <connie@wriprint.com>

**To:** Breht Burri <infodeli@aol.com>, Peter Burri <pburri@wriprint.com>, Brian Burri <bburri@wriprint.com>

**Subject:** Re: Remaining Bonuses for 2013 - what is the plan?

**Date:** Tuesday, December 17, 2013 8:57 AM

**Size:** 3 KB

___

All,

At this point there are no plans for further bonuses. Cash flow is way down. The last three months have been low billing months and expenses have been very high.

Connie

68.     Breht's frustration with lack of access to the books and the overall situation at WRI continued to escalate (along with WRI's sales), culminating in Breht sending this email to WRI:

On 1/28/14 2:24 PM, "Breht Burri" <infodeli@aol.com> wrote:

WRI,

I want to reiterate what I said on the phone.  Get together the following items together ASAP.

1) Total Compensation, including retirement sums, for Peter Burri for 2011, 2012, 2013.
2) Total Compensation, including retirement sums, for Brian Burri for 2011, 2012, 2013.
3) Total Compensation, including retirement sums, for Cindy Burri for 2011, 2012 2013.

Get those numbers to me immediately.  Later, I'll need to have your accountant certify those financial representations.

I will no longer have my family take a back seat to Brian, Cindy and Peter's retirement.

Get a plan together to make up the balance between the compensation to Brian Burri and Peter Burri for the time periods above versus the sums paid historically for those same time periods to TooBaRoo and currently to InfoDeli.

No further work will done processing orders, performing billings or other lit store functions until I get the above information and you get a plan together get the compensation packages on par for the last 3 years.

Send me the amounts and I'll send the invoices for those sums.

69.     In reply, an email from Connie Burri's account responded on January 28, 2014:

15

## Re: Compensation Discussion

| | |
|---|---|
| **From:** | Connie Burri <connie@wriprint.com> |
| **To:** | infodeli@aol.com |
| **Subject:** | Re: Compensation Discussion |
| **Date:** | Tuesday, January 28, 2014 2:52 PM |
| **Size:** | 4 KB |

Breht,
Extortion is a crime. Please don't cut off your nose to spite your face.
Also the Ceva billing is due tomorrow, please have it ready.

Lisa is looking into making a correction with the IRS.

Love,
Mom

70.     On January 29, 2014, Breht received correspondence from WRI's attorney Bob Steinkamp that threatened Breht and instructed him not to discontinue any services per the Joint Venture Agreement.  Specifically, Mr. Steinkamp wrote and said:

> "In your latest email you suggested that your frustrations might cause you to stop 'processing orders, performing billings or other lit store functions. . . .'  I trust that such actions (or inactions) have not and will not occur.  I also trust that you will not take any actions that would disrupt the business of Western's customers or cause damage to them or to the Company.  Such acts on your part would only cause damage to you, the business (including a possible loss of those customers) and exacerbate the current situation."

71.     Because of Mr. Steinkamp's email, and even though Breht was never given access to the books, Plaintiff Breht Burri continued to provide full services to CEVA and Boehringer in fulfillment of his obligations under the Joint Venture and for the benefit of their joint clients, Boehringer and CEVA.

72.     Suspecting foul play, Breht Burri further protected his copyrights by registering his software with the United States Copyright Office, and was granted four registrations:  TXu 1-886-832 (effective date February 25, 2014 and attached hereto as Exhibit 1); TXu 1-909-698 (effective date February 25, 2014 and attached hereto as Exhibit 2); TXu 1-886-831 (effective

16

date February 27, 2014 and attached hereto as Exhibit 3) and TXu 1-905-562 (effective date August 18, 2014 and attached hereto as Exhibit 4).

73. Meanwhile, on information and belief, one or more of the Defendants, acting in concert, had already begun to put their plan into action to create a knock-off software product; specifically, one or more of the Defendants Connie Burri, Brian Burri, Cindy Burri and/or Peter Burri, acting in concert, decided to duplicate the InfoDeli Software Platform.

74. Specifically, on information and belief, on March 4, 2014 (just a week prior to the Terms of Use being put on the InfoDeli Software Platform), one or more of the Burri Defendants met with Defendants Engage Mobile, LLC (a software development company) and (on information and belief) Matthew Barksdale (Engage Mobile's President) at Engage Mobile's offices for an entire day in a "technology strategy session" (*i.e.*, a meeting to decide the best way to knock off the InfoDeli Software Platform). Mr. Steinkamp did not tell Breht about this meeting or that WRI was attempting to replace the InfoDeli Software Platform.

75. Indeed, in an effort to protect itself from this lawsuit, on February 4, 2014, WRI's attorney Robert Steinkamp, wrote Breht and sent him a "draft" (*i.e.*, non-binding) consulting and license agreement with WRI in an effort to avoid any claims of breach of the *de facto* Joint Venture agreement between the Plaintiffs and WRI, but Mr. Steinkamp also made it clear that Breht would not be allowed access to WRI's books, even though Breht was (at that time) a Director of WRI and an approximate 10% shareholder of WRI's issued stock.

76. There were seven (7) logins into the InfoDeli Software Platform on March 4, 2014 alone, all from an IP address associated with Engage Mobile's Kansas City offices.

17

77.     At one point during the meeting, InfoDeli's Software Platform was simultaneously accessed twice by Cindy Burri's admin level log-in[3] to show (on information and belief) Engage Mobile's personnel how the InfoDeli Software Platform functioned.

78.     In other words, one of two things happened, either two different users logged in under Mrs. Burri's login at the same time, or Mrs. Burri logged in twice on two different computers.  Cindy Burri was not authorized by the Plaintiffs to show third parties the software and would never have received authorization to show third parties the software for the purposes of duplicating its features.

79.     On information and belief, Cindy Burri's password was used to provide Engage Mobile with unauthorized access to the InfoDeli Software Platform for the specific purpose of obtaining sufficient information to create a substantially similar copy of the copyrighted aspects of the InfoDeli Software Platform.

80.     The person(s) that logged on with Cindy Burri's password (or someone acting in concert with that person) placed a "dummy" order to observe how the software processed the order.

81.     At some point in time, this "dummy" order was deleted from the system in a failed effort to "cover their tracks", causing damage to the InfoDeli Software Platform.

_____

[3] The reader should understand that when this Complaint states that a certain person logged into the InfoDeli Software Platform as shown by the InfoDeli login files, the allegation means that is it more likely than not that the person assigned that user-name is the person accessing the InfoDeli Software Platform.  However, it is also possible that the certain person gave someone else their username and password to log into the system.

18

82.     Indeed, there were multiple unauthorized logins into the InfoDeli Software Platform on March 4, 2014 alone, all from an IP address associated with Engage Mobile's Kansas City offices.

83.     These logins could serve no legitimate purpose other than to access the InfoDeli Software Platform to show Engage Mobile the InfoDeli Software Platform, and to help it duplicate the copyrighted aspects and expression of the InfoDeli Software.

84.     During these logins, many pages and multiple aspects of the system were viewed to display and demonstrate unique, copyrighted aspects of the InfoDeli Software Platform to Defendant Engage Mobile.

85.     Two days later on March 6, 2014 (from another Kansas City location), one (or more) of the Defendant(s) again logged into the InfoDeli Software Platform using Cindy Burri's login and this time, placed two (2) additional "dummy" orders.

86.     At some point in time, these two additional "dummy" orders were deleted from the InfoDeli Software Platform, further damaging the InfoDeli system and causing the dummy orders to be unavailable.

87.     During the March 6, 2014 login(s), one or more of the Defendants, acting in concert, also viewed "backend" administrative systems and other unique and protected aspects of the InfoDeli system so that Engage Mobile could create a substantially similar software product.

88.     On March 11, 2014, Plaintiffs implemented a "Terms of Use" Service Agreement on all of InfoDeli's Internet database software; thus, to access the InfoDeli Software Platform, the user must agree to the Terms of Use to use or access the InfoDeli Software Platform (attached hereto as Exhibit 5).

19

89.     In response, WRI's attorney Bob Steinkamp sent an email on March 11, 2014 to counsel for the Plaintiffs, and claimed and demanded that:

> "Early this afternoon, Breht initiated and placed a new Terms of Use policy on his website which effectively set forth terms of an agreement regarding that use that are not acceptable and never agreed to by WRI. In addition, that Policy changes the status quo. As a result, he has effectively blocked and terminated WRI (*sic*) use of that site. We demand that this Terms of Use policy be removed immediately."

90.     Later that day, Mr. Steinkamp advised counsel for the Plaintiffs that "As I said to you previously, WRI has stopped using infodeli ***and has been forced to notify its clients that such software is not available at this time***." (Emphasis added).

91.     Despite Mr. Steinkamp's claims in his March 11, 2011 email, on March 11, 2014, three different users logged into the InfoDeli Software Platform from WRI's IP address 50.27.188.175 in St. Joseph, Missouri, and accepted the Terms of Use a total of 5 (five) separate times: twice on Boehringer's system and three (3) times on CEVA's system.

92.     Apparently that same day, Engage Mobile provided WRI its "Phased Approach to ***WRI's Crisis Management*** and Digital Strategy", dated March 11, 2014. (Emphasis added).

93.     Apparently, one or more of the Burri Defendants, acting in concert, contacted CEVA and Boehringer and claimed that a crisis existed because the InfoDeli Software Platform was no longer available; this obviously was untrue – the InfoDeli Software Platform remained available but WRI did not want to continue to agree to the Terms of Use since it was attempting to knock off the InfoDeli Software Platform at that time.

94.     On information and belief, WRI told CEVA and Boehringer that the InfoDeli Software Platform was unavailable to create panic in the minds of CEVA and Boehringer, who would fear that their business would be interrupted or impeded by Plaintiffs. On information and belief, this untrue claim improperly biased CEVA and Boehringer against the Plaintiffs.

20

95.     However, at that time, the InfoDeli Software Platform remained available and in fact, Boehringer and CEVA continued to place orders on it, as well as use the document searching and marketing report functions provided through the InfoDeli Platform.

96.     Approximately fifty-eight (58) CEVA users affirmatively agreed to the Terms of Use after they were first posted on March 11, 2014.

97.     Over one hundred sixty (160) users from Defendant Boehringer (and its associated companies, such as BCS, BIVI and Boehringer Ingelheim, Inc., and various Distributor Users) affirmatively agreed to the Terms of Use after they were first posted on March 11, 2014.

98.     On March 12, 2014, the day after the Terms of Use were accepted by WRI at least five times, Defendant Brian Burri, in his capacity as the Secretary of WRI, entered into a Master Services Agreement ("the MSA") with Engage Mobile which stated, among other things, that "WRI has an opportunity to * * * decrease their risk/reliance on an external vendor [Plaintiff InfoDeli] by implementing new technology for some aspects of their business." The MSA is attached hereto as Exhibit 6.

99.     The MSA between WRI and Engage Mobile committed to a blended rate of $125 per hour for a total estimate of $50,000 to $100,000 to create the knock-off software.

100.    The MSA also explicitly admitted that:

21

One element of WRI's rebate program is the site vectrarebate.com which feeds internal systems for WRI. There are several current and long-term issues which include:

- The site was created and is managed by a third party. WRI does not control the domain and does not control the data that is entered into the site.
- To get information from the system, WRI is dependent upon the third party. WRI cannot get any information directly from the system - they must wait to get the information from the third party.
- WRI is concerned about the overall responsiveness of the third party that is running vectrarebate.com and is concerned that the third party might stop supporting the site and providing information from the site.
- In addition, the workflow and technology that is used to link vectrarebate.com to WRI is cumbersome and requires too many manual procedures.
- There are hundreds of thousands of rebate coupons currently in the market that are directed to the vectrarebate.com site
- The nature of the relationship with the third party that is running vectrarebate.com and the suboptimal processes behind the system create signifiant risk for WRI.

A second key part of WRI is their fulfillment system. WRI's fulfillment system utilizes a digital storefront and a series of internally developed systems to allow WRI to fill client orders. WRI's fulfillment systems meets the company's current needs but lacks flexibility and key features to support WRI in the future.

* * *

Engage Mobile performed a one day strategy session with WRI to provide an overview of the issues associated with each of WRI's systems. Based upon preliminary discussions, we envision a new version of vectrarebate.com and WRI's fulfillment system that will provide a more streamlined, faster and more automated process that will result in a better expereince for WRI and their clients as well as an elimination of the relaince on WRI's existing third party partner that manages vectrarebate.com and the associated system.

In the strategic document "Phase Approach to WRI's Crisis Management and Digital Strategy" delivered to WRI on 3-12-14, Engage Mobile outlined the proposed process and next steps for WRI to move forward. That document outlined the immediate next steps and initial plan.

(Emphasis added; spelling and grammar errors in original).

101. However, as explained above, numerous users from CEVA and Boehringer continued to log into InfoDeli's Software Platform, continued to accept the Terms of Use, continued to place orders, and continued to create and check reports on the InfoDeli Software Platform well beyond March 11, 2014, thus irrevocably committing CEVA and Boehringer to an agreement to the Terms of Use.

22

102.     The InfoDeli Software Platform generates a confirmation email to a user who has placed an order on it.

103.     On information and belief, after WRI claimed it was no longer using the InfoDeli Software Platform, Boehringer employees worked around WRI's cessation of use by forwarding the confirmation emails to WRI for fulfillment, thus allowing WRI to pretend that it was not using the InfoDeli Software Platform.

104.     Alternatively, on information and belief, the sales reps could have worked around this problem in several other ways, such as faxing in orders from the printed emails or obtaining specific links or descriptions to specific documents located in the InfoDeli Software Platform and forwarding/faxing or calling in those links to WRI for fulfillment.

105.     One or more of the Defendants WRI, Connie Burri, Brian Burri, Cindy Burri and/or Peter Burri, acting in concert, also met with employees and managers of Defendants CEVA and Boehringer to obtain their support for their plan to reverse engineer the copyrighted InfoDeli Software Platform, including but not limited to Defendant Shane Fairchild.

106.     CEVA and Boehringer were unwilling to abandon the collective works and protected aspects of the InfoDeli Software Platform as a whole and thus, one or more of the Defendants, acting in concert, had to quickly develop a plan to view and/or to replicate the database schema, its data, and the database relationships for the thousands of images and documents contained within the InfoDeli Software Platforms and then copy the copyrighted schema, the database relationships and the data to the illegal replacement software.

107.     On information and belief, one or more of the Defendants, acting in concert, extracted code (on information and belief), database schema (also on information and belief), and data, by copying the exact unique names of the images, documents and assets to the knock-

23

off software from data and information stored in the InfoDeli Software Platform's online and/or desktop systems.

108. The Plaintiffs sent Cease and Desist letters to WRI (on March 18, 2014), Engage Mobile (on May 1, 2014), CEVA (on June 1, 2014) and Boehringer (on May 30, 2014).

109. Demonstrating their bad faith, all of these Defendants have, on information and belief, ignored the cease and desist letters by continuing to use the knock-off software.

110. Some of the Defendants have actually denied any breach of the Terms of Use, denied infringement of the Plaintiffs' rights, denied theft of Plaintiffs' software and/or code, and/or denied their tortious interference with the Plaintiffs' Joint Venture or business expectancies.

### Facts Specific to Defendant Shane Fairchild and/or CEVA

111. Defendant Shane Fairchild, on information and belief, assisted one or more of the Defendants and acted in concert with them to create a substantially similar software product which duplicates the copyrighted aspects of the InfoDeli Software Platform.

112. Defendant Fairchild further provided access to the InfoDeli Software Platform to Engage Mobile and/or WRI and/or other developers to allow them to create software that is, on information and belief, substantially similar to copyrighted aspects of the InfoDeli Software Platform.

113. Further, acting in bad faith, Defendant Fairchild pretended to negotiate with the Plaintiffs to enter into a license for the InfoDeli Software Platform to buy the other Defendants time to knock off the InfoDeli Software Platform, and within minutes of the new Vectra rebate website coming online, Mr. Fairchild ended the purported licensing negotiations with the Plaintiffs.

24

114.    Through these bad faith negotiations, Defendant Fairchild convinced Plaintiffs to keep the InfoDeli Software Platform active, at no charge to CEVA (which CEVA used to its full advantage), all based upon the false pretense that CEVA would ultimately enter into a license agreement because of Plaintiffs' show of good faith by, among other things, keeping the Platform up and running for CEVA.

## Not a Family Dispute

115.    From time to time, various non-Burri Defendants have characterized the facts alleged herein as a "family dispute".  Make no mistake, this is not a family dispute, but an effort by sophisticated entities such as CEVA and Boehringer to replicate copyrighted software without paying the licensing fees to the Plaintiffs to avoid interruption in their method of business.

116.    Further, Engage Mobile, as a software development company, knew or should have known that its actions could potentially infringe Plaintiffs' copyrights and that such infringement was not a "family dispute", because the MSA referred to Plaintiffs as an "external vendor".

117.    Given the brazen theft of Plaintiffs' IP (Intellectual Property) by the Defendants, through all of the above described conduct, the Defendants have acted knowingly, willfully, wantonly, maliciously, intentionally, and recklessly in disregarding the rights of the Plaintiff, all so that they could cut Plaintiffs out of the business that Plaintiffs' InfoDeli Software Platform made possible.

118.    Out of the events alleged above, the Plaintiffs bring the following claims.

**First Claim for Relief**
**COPYRIGHT INFRINGEMENT**

**(against Defendants WRI, Engage Mobile, Boehringer and CEVA and each of their officers, directors, managers and/or employees who controlled or directed the acts of infringement)**

119.    Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth in full at this point, including ownership of the copyrights attached as Exhibits 1-4 and the Terms of Use attached hereto as Exhibit 5.

120.    Well prior to 2014, InfoDeli's login screens and footers contained notice(s) that the works are copyright protected, placing users of the InfoDeli Software Platform on notice of the copyrights.

121.    InfoDeli's Software, including the structure, sequence, organization, reporting functions, database schema, administrative access codes, product identification codes, and all protectable non-literal elements are copyrightable subject matter under the laws of the United States.  See Exhibits 1-4.

122.    The Defendants, or those acting at their direction, clearly accessed the Plaintiffs' copyrighted materials for the unauthorized purpose of duplicating it.

123.    One or more of the Defendants, acting in concert, worked together to extensively customize an open source[4] platform called "Magento" on an "emergency" basis, by the viewing

---

[4]  If open source software is used as the platform, then the derivative software is automatically licensed to Magento for use by others on a royalty-free basis ("Licensee hereby grants Magento a perpetual and irrevocable (irrespective of the expiration or termination of this Agreement), nonexclusive, transferable, worldwide, and royalty-free license to reproduce, create derivative works of, distribute, perform, and display any derivative works of the Software developed by or for Licensee, and to use, make, have made, sell, offer to sell, import, export, and otherwise

26

or capturing of screen impressions from the InfoDeli system to create a substantially similar product that replicates the copyrighted aspects of the InfoDeli Software Platform.

124.    One or more of the Defendants, acting in concert, also created software that is substantially similar to the InfoDeli Software by using "screen captures" of the InfoDeli Software Platform (on information and belief), copying and, on information and belief, reproducing the structure, sequence, organization, reporting functions, database schema, administrative access codes, product identification codes, and all protectable non-literal elements of the InfoDeli Software Platform.

125.    Through these acts, the Defendants have infringed the Copyrights attached as Exhibits 1 and 2, and on information and belief, have also infringed the Copyrights attached as Exhibits 3 and 4.

126.    Thus, the above named Defendants, whether alone or acting in concert, have infringed the Plaintiffs' rights under copyright law.

127.    These rights include the right to reproduce the InfoDeli Software Platform and derivative works thereof, to license others to prepare derivative works from its InfoDeli Software Platform, and to distribute its InfoDeli Software Platform, all as set forth in 17 U.S.C. §106.

128.    By reason of the foregoing, WRI, Engage Mobile, CEVA and Boehringer, and each of their officers, directors, managers and employees who controlled or directed the acts of infringement, are guilty of copyright infringement.

---

exploit any product based on any such derivative works."). See
http://magento.com/legal/terms/enterprise (last visited June 23, 2015).

129.    Plaintiffs are entitled to injunctive relief against Defendants WRI, Engage Mobile, CEVA, Boehringer, and each of their officers, directors, managers, employees, and any third parties acting at their direction to cease further infringement of the Plaintiffs' copyrights.

130.    Plaintiffs request that the Court order the impoundment or destruction of all copies of all infringing works, including all magnetic media, tapes, discs, or other articles by means of which additional infringing copies and/or derivative works may be made.

131.    Plaintiff seeks all profits made by the Defendants due to the infringing software, as well as Plaintiffs' damages; and costs and reasonable attorney's fees.

WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment:

a.      Permanently enjoining WRI, Engage Mobile, CEVA and Boehringer, and each of their officers, directors, managers, employees, and any third parties acting at their direction, pursuant to 17 U.S.C. §502, from any further infringement of Plaintiffs' Copyrights;

b.      Ordering impoundment or destruction, pursuant to 17 U.S.C. §503, of all copies of any infringing works, including all magnetic media, tapes, discs, or other articles by means of which additional infringing copies and/or derivative works may be made;

c.      Pursuant to 17 U.S.C. §504, awarding the Plaintiffs their damages in the amount of each Defendants' profits from their infringement;

d.      In the alternative, pursuant to 17 U.S.C. §504, awarding the Plaintiffs their actual damages;

e.      In the alternative, pursuant to 17 U.S.C. §504, awarding the Plaintiffs statutory damages;

f.      Pursuant to 17 U.S.C. §505, awarding costs and attorney fees; and

g.      Granting such additional and further relief as this Court deems just and proper.

28

**Second Claim for Relief**
**CONTRIBUTORY COPYRIGHT INFRINGEMENT**

**(against Defendants Connie Burri, Brian Burri, Cindy Burri, Peter Burri, Engage Mobile, Matthew Barksdale, and Shane Fairchild**

132.    Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth in full at this point.

133.    Through their volitional conduct as alleged above, on information and belief, each of the above named Defendants, whether acting alone or in concert, contributorily infringed the Plaintiffs' registered copyrights under copyright law, namely by inducing, assisting, causing, encouraging, or materially contributing to the infringement of Plaintiffs' registered copyrights, including but not limited to infringement by reproducing the copyrighted aspects of the InfoDeli Software Platform and assisting Defendants WRI, Boehringer and/or CEVA in preparing derivative works that infringe the copyrighted aspects of the InfoDeli Software Platform, when Defendants knew or had reason to know of the direct infringement of Plaintiffs' registered copyrights, all as set forth in 17 U.S.C. §106.

134.    By reason of the foregoing, the Plaintiffs hereby assert a claim against Defendants Connie Burri, Brian Burri, Cindy Burri, Peter Burri, Engage Mobile, Matthew Barksdale, and Shane Fairchild for injunctive relief, impoundment or destruction of all copies of any infringing works, including all tapes, discs, or other articles by means of which additional infringing copies and/or derivative works may be made; Defendants' profits traceable to the infringement, as well as Plaintiffs' damages; and costs and reasonable attorney's fees.

WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment:

a. Permanently enjoining Defendants Connie Burri, Brian Burri, Cindy Burri, Peter Burri, Engage Mobile, Matthew Barksdale, and Shane Fairchild, pursuant to 17 U.S.C. §502, from any further acts of infringement or contributory infringement of Plaintiffs' Copyrights;

b. Ordering impoundment or destruction, pursuant to 17 U.S.C. §503, of all copies of any infringing works, including all magnetic media, tapes, discs, or other articles by means of which additional infringing copies and/or derivative works may be made;

c. Pursuant to 17 U.S.C. §504, awarding the Plaintiffs their damages in the amount of each Defendants' profits from their infringement;

d. In the alternative, pursuant to 17 U.S.C. §504, awarding the Plaintiffs their actual damages;

e. In the alternative, pursuant to 17 U.S.C. §504, awarding the Plaintiffs statutory damages;

f. Pursuant to 17 U.S.C. §505, awarding costs and reasonable attorney's fees; and

g. Granting such additional and further relief as this Court deems just and proper.

### Third Claim for Relief
### <u>TAMPERING WITH COMPUTER DATA</u>

**(against at least WRI, Cindy Burri, Engage Mobile and Matthew Barksdale)**

135. Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth in full at this point.

136. On January 31, 2014 and February 3, 2014, Mark Crable, a WRI employee in its graphics department, logged into the InfoDeli Software Platform built for CEVA, and on information and belief, took snapshots of numerous pages in the InfoDeli Software Platform for the express purpose of copying the copyrighted aspects of the InfoDeli Software Platform.

30

137. On the morning of March 4, 2014, at 6:15 AM, on information and belief, Nate Martinez, a WRI employee in its graphics department, logged into the InfoDeli Software Platform that the Plaintiffs designed and configured for Boehringer, and on information and belief, took snapshots of Boehringer System Screens or downloaded images in preparation for the Engage Mobile meeting to be held later that day, and for the express purpose of copying the copyrighted aspects of the InfoDeli Software Platform.

138. One or more of the Defendants WRI, Cindy Burri, Engage Mobile and Matthew Barksdale, whether alone or acting in concert, did knowingly, intentionally and without authorization or reasonable grounds to believe that they had authorization to do so, logged into and inputted test data into the InfoDeli Software Platform and subsequently destroyed that test data residing or existing internal to a computer, computer system, or computer network in violation of RSMo. 569.095(1).

139. One or more of the Defendants WRI, Cindy Burri, Engage Mobile and Matthew Barksdale, whether alone or acting in concert, did knowingly, intentionally and without reasonable grounds to believe that they had authorization to do so, took data, programs, or supporting documentation residing or existing internal or external to a computer, computer system, or computer network in violation of RSMo 569.095(3).

140. On or about March 4-6, 2014, one or more of the Defendants WRI, Cindy Burri, Engage Mobile and Matthew Barksdale, whether alone or acting in concert, did knowingly, intentionally and without reasonable grounds to believe that they had authorization to do so, disclosed or took passwords, identifying code, personal identification number, or other confidential information about a computer system or network that is intended to or does control access to the computer system or network in violation of RSMo. 569.095(4).

31

141.     One or more of the Defendants WRI, Cindy Burri, Engage Mobile and Matthew Barksdale, whether alone or acting in concert, did knowingly, intentionally and without reasonable grounds to believe that they had authorization to do so, accessed computers, computer systems, and/or computer networks, to intentionally examine information about another person in violation of RSMo. 569.095(5).

142.     One or more of the Defendants WRI, Cindy Burri, Engage Mobile and Matthew Barksdale, whether alone or acting in concert, did knowingly and without reasonable grounds to believe that they had authorization to do so, received, retained, used, or disclosed data they knew or believed was obtained in violation of RSMo. 569.095(6).

143.     On March 11, 2014, three separate users at WRI logged into the InfoDeli Software Platform and around agreed to the Terms of Use around five times.

144.     In an effort to avoid the Terms of Use which WRI's users clearly agreed to, WRI later claimed (untruthfully) to CEVA and Boehringer that the InfoDeli Software Platform was "unavailable".

145.     On or about March 4-14, 2014, one or more of the Defendants WRI, Cindy Burri, Engage Mobile and Matthew Barksdale, whether alone or acting in concert, did knowingly, intentionally and without reasonable grounds to believe that they had authorization to do so, accessed the InfoDeli Software Platform in violation of RSMo. 569.099.

146.     On or about March 11-14, 2014, one or more of the Defendants WRI, Cindy Burri, Engage Mobile and Matthew Barksdale, whether alone or acting in concert, did knowingly, intentionally and without reasonable grounds to believe that they had authorization to do so, received, retained, used, or disclosed data they knew or believed was obtained in violation of RSMo. 569.095(6).

32

147.    Specifically, using software known as a FTP (File Transfer Protocol) program, one or more of the Defendants, accessing the internet from IP Address 50.27.188.175, downloaded the InfoDeli database schema (on information and belief), configurations (on information and belief), and collections of images, thumbnails, and documents stored on the InfoDeli site for use in the knock-off system.

148.    These images, thumbnails and documents are virtually useless without the corresponding database schema and configurations (the relationship between the images and the data in the system).

149.    Plaintiffs have been damaged by the above acts, which allowed Defendants to replicate Plaintiffs' InfoDeli Software Platform (which took Plaintiff Breht Burri years to develop and perfect) in a very short amount of time that they otherwise could not have created so quickly and so cheaply, because once the knock-off software was up and running, Defendants were able to and did wrongfully terminate Plaintiffs' previously successful Joint Venture with WRI.

150.    Plaintiffs seek their compensatory damages as allowed by statute, including but not limited to lost profits, and/or actual, non-economic and/or economic damages suffered by them.

151.    Plaintiffs have been forced to incur attorney fees to prosecute this claim and are therefore entitled to recover their attorney fees and costs pursuant to RSMo. 537.525(2).

152.    Defendants acted knowingly, willfully, wantonly, maliciously, intentionally, and recklessly in disregarding the rights of the Plaintiff, all so that they could cut Plaintiffs out of the business that Plaintiffs' InfoDeli Software Platform made possible.

153.    Defendants' actions are outrageous, and thus Plaintiffs should be entitled to an award of punitive damages as well.

33

WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment in favor of Plaintiffs and award them their damages, punitive damages, attorney fees, costs, injunctive relief and all other relief available under the law.

### Fourth Claim for Relief
### TORTIOUS INTERFERENCE WITH CONTRACT AND
### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

**(against Defendants Connie Burri, Brian Burri, Cindy Burri, Peter Burri, Engage Mobile, Matthew Barksdale, and Shane Fairchild)**

154. Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth in full at this point.

155. Defendants Connie Burri, Brian Burri and Peter Burri are now and at all times relevant hereto were officers and/or directors of WRI.

156. Defendant Cindy Burri is Brian Burri's wife and at all relevant times was an employee of WRI.

157. Defendant Matthew Barksdale was at all relevant times the President of Defendant Engage Mobile and Engage Mobile, at Barksdale's direction (on information and belief) worked with one or more of the Burri Defendants to create software that duplicated the copyrighted and protected aspects of the InfoDeli Software Platform.

158. Defendant Shane Fairchild is a Product Manager at CEVA in charge of the Vectra Rebate program. To buy time for WRI and Engage Mobile to create the knock-off software, Mr. Fairchild pretended to negotiate with Breht Burri on a direct licensing deal for the InfoDeli Software Platform after WRI told CEVA that the InfoDeli Software Platform was no longer available (because it did not want to further agree to the Terms of Use).

34

159.    However, Mr. Fairchild and CEVA had no intention of licensing the InfoDeli Software Platform, and within minutes of the knock-off VectraRebate.com software and website coming on-line, Mr. Fairchild informed Breht that CEVA would not license the InfoDeli Software Platform.

160.    When Breht Burri asked Mr. Fairchild what software Ceva intended to use in place of the InfoDeli Software Platform, and Mr. Fairchild claimed he could not talk about it.

161.    On information and belief, all of the Defendants knew that WRI compensated the Plaintiffs for service and use of the InfoDeli Software Platform.

162.    The Defendants lacked legal justification to tortiously interfere with Plaintiffs' continued expectancy of payment from WRI via the *de facto* Joint Venture Agreement since the InfoDeli Software Platform worked very well, it was well supported, and WRI and CEVA were under contract to use the InfoDeli Software Platform when the change was made.

163.    The InfoDeli Software Platform was well received by the clients and in fact, InfoDeli 5.0 was near completion in 2013 and continued to improve upon the already successful product.

164.    In order to create an argument that Plaintiff Breht Burri was not servicing the accounts and software, on information and belief, one or more of the Burri Defendants altered the WRI network to deny Plaintiff Breht Burri access to the software and systems that he previously enjoyed, thus preventing him from providing full support services.

165.    Each of the Defendants, whether acting alone or in concert, used improper means to further their own interests, including but not limited to infringing Plaintiffs' copyrights, violating Missouri statutes on computer tampering, violating their fiduciary duties to the Plaintiff Breht Burri (WRI and the Burri Defendants only), engaging in fraud and fraudulent concealment

35

(except Engage Mobile and Mr. Barksdale), misrepresentation of facts (except Engage Mobile and Mr. Barksdale), and violating the Terms of Use of the InfoDeli Software Platform.

166.     Plaintiffs have been severely damaged by Defendants' conduct, as Plaintiff Breht Burri was supposed to obtain an equal share of WRI's profits with his two brothers in 2013 and 2014 (which was his primary source of income), but it appears that such profits were only partially paid in 2013 and only partially paid for a very small part of 2014, despite the outstanding success of the InfoDeli Software Platform and the benefits it brought to Boehringer, CEVA and WRI.

167.     As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial.

168.     Defendants acted knowingly, willfully, wantonly, maliciously, intentionally, and recklessly in disregarding the rights of the Plaintiffs, all so that they could cut Plaintiffs out of the business that Plaintiffs' InfoDeli Software Platform made possible.

169.     Defendants' actions are outrageous, and thus Plaintiffs should be entitled to an award of punitive damages as well.

WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment in favor of Plaintiffs and award them their damages, punitive damages, attorney fees, costs, injunctive relief and all other relief available under the law.

### Fifth Claim for Relief
### FRAUD / FRAUDULENT CONCEALMENT

### (against Defendants Connie Burri, Brian Burri and Peter Burri)

170.     Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth in full at this point.

36

171.    On or about May 15, 2013, Defendant Brian Burri informed Plaintiff Breht Burri that because WRI's gross revenues and net income had increased substantially, Brian Burri's employee compensation, Peter Burri's employee compensation, and Plaintiffs' payments for the Joint Venture, increasing in lockstep fashion, were on course to substantially increase from previous years.

172.    On September 26, 2013 Defendant Peter Burri indicated to Breht Burri in a conversation (later documented in an email) that they would be operating under a "new arrangement" but did not indicate what that arrangement was or provide any more details.

173.    Plaintiffs never agreed to a "new arrangement" and continued to operate under the terms of the Joint Venture.

174.    None of the Burri Defendants advised Breht that the "new arrangement" meant that Breht Burri would now be receiving less money than Brian or Peter.

175.    Worse yet, none of the Burri Defendants told Plaintiff Breht Burri that the "new arrangement" ultimately involved the copying of protected aspects of the InfoDeli Software Platform and thus totally excluding Plaintiffs from all compensation due to the Plaintiffs under the Joint Venture Agreement.

176.    Upon information and belief, Defendants Brian Burri, Peter Burri and Connie Burri knowingly and intentionally maintained their silence about their intentions to induce the Plaintiffs to continue to make the InfoDeli Software Platform available to CEVA and Boehringer, until they could illegally copy and replace the InfoDeli Software Platform and systems.

177.    In reasonable and justifiable reliance on Defendants' silence when the Burri Defendants owed Plaintiff Breht Burri a fiduciary duty to speak about their intentions to pay him

37

less than the agreed-upon amounts, and to illegally copy his protected software aspects to completely end the Joint Venture, the Plaintiffs continued to provide WRI and its customers with access to the InfoDeli Software Platform until Plaintiffs discovered on or about March 31, 2014 that Defendants had undertaken a secret project to replicate and copy the InfoDeli Software Platform and systems with no intention of allowing Plaintiffs to share in the fruits of WRI's success.

178.    As family members and co-shareholders, the Burri Defendants owed Breht duties of good faith, honesty and loyalty, and thus were obligated to timely tell him about any plans implemented by WRI to end the Joint Venture, copy the InfoDeli Software Platform, or otherwise change his compensation, especially given that Plaintiff Breht Burri was a minority shareholder who heavily relied upon income generated by the Joint Venture (but paid directly to WRI) as his primary source of income.

179.    As a result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

180.    Defendants acted knowingly, willfully, wantonly, maliciously, intentionally, and recklessly in disregarding the rights of the Plaintiff, all so that they could cut Plaintiffs out of the business that Plaintiffs' InfoDeli Software Platform made possible.

181.    Defendants' actions are outrageous, and thus Plaintiffs should be entitled to an award of punitive damages as well.

WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment in favor of Plaintiffs and award them their damages, punitive damages, costs, and all other relief available under the law.

**Sixth Claim for Relief**

## OPPRESSION OF MINORITY SHAREHOLDER

**(against Defendants WRI, Brian Burri, Peter Burri and Connie Burri)**

182.     Plaintiff incorporates by reference all of the preceding paragraphs as if set forth in full at this point.

183.     Defendant WRI is a "closely held" corporation, since its shares are not publicly traded; there are a small number of shareholders (four); in the past, the shareholders have been treated as partners; there is no ready market to sell the shares; and the majority shareholder, Defendant Connie S. Burri, participates in the management, direction and operation of WRI; thus, WRI's directors and officers have a heightened fiduciary duty to Plaintiff Breht Burri, who is a minority shareholder.

184.     Plaintiff Breht Burri entered into the *de facto* Joint Venture with WRI (controlled by the Burri Defendants) in good faith, such that Plaintiff Breht Burri had an expectation of continued nonemployee compensation in the form of "salary" (income for licensing fees and services rendered by Plaintiffs Breht and InfoDeli as part of the Joint Venture), bonuses, and/or dividends for his contributions (and those of InfoDeli) to the ongoing operations of WRI.

185.     After Roger Burri passed away, the Burri Defendants operated WRI in a secretive fashion until May 20, 2014 by: (a) not calling Board meetings, (b) making decisions without Board approval, and (c) withholding important information from Plaintiff Breht Burri, who was a shareholder, Board Member, and Joint Venture Partner with WRI.

186.     Specifically, on March 12, 2014, WRI entered into a significant contract with Engage Mobile for $50K - $100K to develop knock-off software without Board discussion or approval, and without advising Plaintiff Breht Burri at that time of what WRI was doing.

39

187.    In addition, the Burri Defendants wrongfully eliminated all Joint Venture compensation owed to Plaintiffs in March of 2014 and later removed him from the Board in June of 2014.  On information and belief, these actions were to hide corporate waste and misuse of corporate funds for their own personal benefits.

188.    Upon information and belief, the majority shareholder Connie S. Burri and the Burri Defendants, acting through shared counsel[5] with WRI, have colluded and conspired to eliminate any compensation to the Plaintiffs, either in the form of compensation from the Joint Venture, licensing payments for use of the InfoDeli Software Platform, its copyrighted aspects, any fees generated for servicing the InfoDeli Software Platform, any fees for responding to requests to the Joint Venture's two major customers, CEVA and Boehringer, and/or any form of dividend.

189.    The elimination of payments to Plaintiffs has in large part been accomplished by unlawfully copying Plaintiff's copyrighted InfoDeli Software Platform, thus illegally eliminating the need for the Joint Venture, Plaintiffs' services and InfoDeli Software Platform, which effectively substantially increased the Burri Defendants' own compensation without reasonable justification, and all without prior Board discussion or approval.

190.    Defendants acted knowingly, willfully, wantonly, maliciously, intentionally, and recklessly in disregarding the rights of the Plaintiff, all so that they could cut Plaintiffs out of the business that Plaintiffs' InfoDeli Software Platform made possible.

191.    Defendants' actions are outrageous, and thus Plaintiffs should be entitled to an award of punitive damages as well.

---

[5]  The attorneys representing the Burris and WRI had a conflict of interest.

Wherefore the Plaintiff Breht Burri requests any or all of the following remedies afforded to an oppressed minority shareholder: (a) damages (*i.e*., repayment of excessive salaries and bonuses to the Burri Defendants for all years 2010 to the present) and punitive damages; (b) a dissolution of WRI; (c) a salary cap for the Burri Defendants set to a reasonable level of compensation for the services they perform for WRI; (d) an audit of WRI's books; (e) the appointment of a custodian to manage this litigation and to hire independent counsel instead of counsel controlled by the Burri Defendants; (f) entry of an order requiring that any loans from WRI to any Burri Defendants or any entities controlled by them to be repaid forthwith; (g) if appropriate, the payment of dividends; and/or (h) a mandatory buy-out of Plaintiff's 192 shares of stock, calculated without any discounts, such as those for minority shareholders or lack of marketability.

### Seventh Claim for Relief
### BREACH OF JOINT VENTURE AGREEMENT

### (against WRI)

192.    Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth in full at this point.

193.    The Joint Venture Agreement with Defendant WRI had been partially or fully performed by the Plaintiffs when the Defendant WRI unilaterally breached the terms of the Agreement, without notice or termination of the Joint Venture Agreement.

194.    At no time did the Board meet to authorize the termination of the Joint Venture Agreement.

41

195. The Plaintiffs had fulfilled all conditions precedent for the Joint Venture Agreement by creating and servicing the InfoDeli Software Platform and orders that came through it.

196. The Defendant WRI breached the Joint Venture Agreement with Plaintiffs by failing to pay Plaintiffs compensation equal to those paid to Brian Burri and Peter Burri per the terms of the Joint Venture Agreement.

197. As a proximate result of the conduct complained of herein, the Plaintiffs are entitled to compensatory and economic damages that are foreseeable from WRI's breach of the Joint Venture Agreement.

WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment in favor of Plaintiffs and award them their damages, punitive damages, costs, and all other relief available under the law.

**Eighth Claim for Relief**
**BREACH OF THE INFODELI TERMS OF USE AGREEMENT**

**(against Defendants Boehringer, CEVA, WRI, and Shane Fairchild)**

198. Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth in full at this point.

199. Defendant CEVA has many employees who were active users of the CEVA InfoDeli Software Platform and systems in the course of their employment. When logging into the CEVA InfoDeli system after March 11, 2014, the users were presented with Terms of Use ("TOU") which included, among many other provisions, the following:

> Users agree not to reverse engineer, copy, download, reproduce, distribute, duplicate functionality, create derivative works or adaptations of, publicly display or in any way exploit any part of the InfoDeli platform, software, or content in whole or in part except as expressly authorized in writing by InfoDeli. Users

42

further waive any right of "fair use" as that phrase is interpreted and defined under U.S. Copyright law and agree to limit their use of the site to the purposes intended. InfoDeli does not grant any express or implied rights in InfoDeli to Users, and all rights in and to the Site and to InfoDeli's platform, software, or Content are retained and reserved by InfoDeli.

200.    Attached hereto as Exhibit 7 is a list of the CEVA employees who logged into the CEVA InfoDeli system and accepted the Terms of Use during the scope and course of their work.

201.    CEVA is thus bound by the Terms of Use.

202.    Upon information and belief, at least some of these CEVA logins were for the purpose of copying the protectable aspects of the InfoDeli system.

203.    The Terms of Use which the CEVA employees, including Shane Fairchild, repeatedly agreed to in the course of performing their jobs with CEVA are binding upon CEVA and Mr. Fairchild.

204.    CEVA and Mr. Fairchild materially breached the Terms of Use when Mr. Fairchild and/or the CEVA employees assisted WRI in copying the protectable aspects of the InfoDeli Software Platform.

205.    Similarly, attached hereto as Exhibit 8 is a list of the Terms of Use agreed to by employees of Boehringer.

206.    Boehringer is similarly bound by its employees' acceptance of the Terms of Use in the scope and course of their work, and on information and belief, Boehringer breached the Terms of Use when its employees assisted WRI and Engage Mobile in reverse engineering the InfoDeli Software.

207.    Similarly, attached hereto as Exhibit 9 is a list of employees of WRI who agreed to the Terms of Use in the scope and course of their work.

43

208.     WRI is similarly bound by the Terms of Use, and on information and belief, WRI breached the Terms of Use when its officers, directors, managers and/or employees assisted Engage Mobile in reverse engineering the InfoDeli Software.

209.     As a proximate result of the conduct complained of herein, the Plaintiffs are entitled to compensatory and economic damages that are foreseeable due to the material breaches of the Terms of Use.

WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment in favor of Plaintiffs and award them their compensable damages, costs, and all other relief available under the law.

### Ninth Claim for Relief
### <u>VICARIOUS LIABILITY FOR COPYRIGHT INFRINGEMENT</u>

**(against All Burri Defendants, Shane Fairchild, Engage Mobile and Matthew Barksdale)**

210.     Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth in full at this point.

211.     The above Defendants, whether acting alone or in concert, had an obvious and direct financial interest in the exploitation of the copyrighted materials.

212.     The above Defendants, whether acting alone or in concert, each had the right and the ability to supervise the infringing activities.

213.     The above Defendants vicariously infringed the Plaintiffs' copyrights.

WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment:

a.       Permanently enjoining Defendants Connie Burri, Brian Burri, Cindy Burri, Peter Burri, Matthew Barksdale, and Shane Fairchild, pursuant to 17 U.S.C. §502, from any further acts of infringement or vicarious infringement of Plaintiffs' Copyrights;

44

b.      Ordering impoundment or destruction, pursuant to 17 U.S.C. §503, of all copies of any infringing works, including all tapes, discs, or other articles by means of which additional infringing copies and/or derivative works may be made;

c.      Pursuant to 17 U.S.C. §504, awarding the Plaintiffs their damages in the amount of each Defendants' profits from their infringement;

d.      In the alternative, pursuant to 17 U.S.C. §504, awarding the Plaintiffs their actual damages;

e.      In the alternative, pursuant to 17 U.S.C. §504, awarding the Plaintiffs statutory damages;

f.      Pursuant to 17 U.S.C. §505, awarding costs and reasonable attorney's fees; and

g.      Granting such additional and further relief as this Court deems just and proper.

**Tenth Claim for Relief**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030 *et seq.*)**

**(against all Burri Defendants, Shane Fairchild, Engage Mobile and Matthew Barksdale)**

214.    Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth in full at this point.

215.    Upon information and belief, all Defendants (except defendants Engage Mobile and Matthew Barksdale, who were not authorized users of the InfoDeli Software Platform) knowingly and intentionally exceeded their authorized accessed to the Plaintiffs' InfoDeli Software Platform.

216.    Upon information and belief, Defendant Matthew Barksdale, without authorization, knowingly and intentionally accessed the Plaintiffs' protected InfoDeli Software Platform.

45

217.    Upon information and belief, Defendant Engage Mobile, by and through its employees, agents and third-party contractors, without authorization, knowingly and intentionally accessed the Plaintiffs' protected InfoDeli Software Platform.

218.    Defendants' conduct, whether alone or in concert, caused Plaintiffs to incur damages in the form of responding to the unauthorized access, as well as responding to the access in excess of authorization.

219.    This response occurred at least in March of 2014.

220.    Plaintiffs were also damaged because they were forced to conduct a damage assessment of the protected InfoDeli Software Platform.

221.    In order to provide extra security to the InfoDeli Software Platform to prevent further unauthorized access and/or to prevent access in excess of authorization, Plaintiffs were forced to take the InfoDeli system offline, making it unavailable, which drew complaints from CEVA, thus damaging Plaintiffs' relationship with CEVA.

222.    Defendants, acting in concert, placed orders in the InfoDeli Software Platform, and then deleted them, all in excess of their authorization or without authorization, further damaging the system.

223.    Defendants also copied, on information and belief, the structure, sequence, organization, reporting functions, database schema, administrative access codes, product identification codes, and all protectable non-literal elements of the InfoDeli Software Platform.

224.    As a result of Defendants' unauthorized, intentional access, as well as their access in excess of authorization, of Plaintiffs' protected InfoDeli Software Platform, Plaintiffs have suffered damages and a loss of no less than $5,000.00 in the last year prior to filing this Complaint, including but not limited to its costs to respond to this offense.

46

225.     As a result of the foregoing, Plaintiffs seek their compensatory damages in an amount to be determined at trial.

226.     Defendants acted knowingly, willfully, wantonly, maliciously, intentionally, and recklessly in disregarding the rights of the Plaintiff.

227.     Defendants' actions are outrageous, and thus Plaintiffs should be entitled to an award of punitive damages as well.

WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment in favor of Plaintiffs and award them their damages, punitive damages, attorney fees, costs and all other relief available under the law.

## Eleventh Claim for Relief
## UNFAIR COMPETITION UNDER MISSOURI COMMON LAW

### (against All Defendants)

228.     Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth in full at this point.

229.     The acts and conduct of Defendants as alleged above in this complaint constitute unfair competition pursuant to the common law of the State of Missouri.

230.     Defendants' conduct as alleged above has damaged and will continue to damage the Plaintiffs and has resulted in losses to Plaintiffs, and an illicit gain of profits to Defendants in an amount that is unknown at the present time.

231.     Defendants acted knowingly, willfully, wantonly, maliciously, intentionally, and recklessly in disregarding the rights of the Plaintiffs.

232.     Defendants' actions are outrageous, and thus Plaintiffs should be entitled to an award of punitive damages as well.

WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment in favor of Plaintiffs and award them their damages, punitive damages and all other relief available under the law.

### Twelfth Claim for Relief
### ILLEGAL CIVIL CONSPIRACY UNDER MISSOURI LAW

### (against All Defendants)

233.    Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth in full at this point.

234.    Plaintiffs have alleged the following illegal and/or wrongful acts by the Defendants:  copyright infringement, contributory copyright infringement, vicarious copyright infringement, unfair competition, violations of the computer fraud and abuse act, breach of contract, breach of the joint venture agreement, suppression of a minority shareholder in a closely held company, fraud/fraudulent concealment, and tortious interference with contract and prospective business advantage as set forth above.

235.    The wrongful acts of each of the Defendants has proximately caused damage to the Plaintiffs, as set forth above.

236.    Each of the named Defendants in each of the respective wrongful and/or illegal causes of action set forth above, had an agreement or understanding amongst themselves as to that wrongful or illegal cause of action to do some or all of the above unlawful acts, and/or each of the Defendants used unlawful means to do acts that would otherwise be lawful to accomplish the wrongful or illegal acts in the respective causes of action.

237.    Defendants should be held jointly and severally liable for all damages caused by their co-conspirators.

238.    Defendants acted knowingly, willfully, wantonly, maliciously, intentionally, and recklessly in disregarding the rights of the Plaintiff.

239.    Defendants' actions are outrageous, and thus Plaintiffs should be entitled to an award of punitive damages as well.

WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment in favor of Plaintiffs and award them their damages, punitive damages, attorney fees, costs, injunctive relief and all other relief available under the law.


## PRAYER

WHEREFORE, Plaintiffs respectfully request judgment as follows:

a)      For all damages available under the law;

b)      For all relief available to an oppressed minority shareholder as set forth in detail above;

c)      For punitive and/or exemplary damages;

d)      For costs of suit and prejudgment interest;

e)      For reasonable attorney's fees and costs;

f)      For any additional relief that the court deems just and proper in the premises.

_____

DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all issues so triable.

CAREY, DANIS & LOWE

By:      /s/ Paul A. Maddock
Paul A. Maddock
Missouri Bar No. 42,103
Of Counsel
8235 Forsyth Blvd., Ste. 1100
St. Louis, MO 63105
Telephone: 314-678-1205
Facsimile: 314-339-8393
pmaddock@careydanis.com

CALDWELL LAW FIRM, P.C.
Kenneth N. Caldwell
Missouri Bar No. 65,443
1201 NW Briarcliff Pkwy, 2nd Floor
Kansas City, MO 64116
Telephone: (816) 673-7655
kcaldwell@caldwell-law-firm.com

ATTORNEYS FOR THE PLAINTIFFS
BREHT C. BURRI and INFODELI, LLC