IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| INFODELI, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No.: 4:15-cv-00364-BCW |
| v. | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| WESTERN ROBIDOUX, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS
CLAIM XII FOR FAILURE TO STATE A CLAIM,
AND CLAIMS IV, V, VI, AND VII FOR LACK OF JURISDICTION**

Defendants Western Robidoux, Inc. ("WRI"), and Connie Burri, Brian Burri, Peter Burri, and Cindy Burri (collectively, the "Burri Family Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully request this Court dismiss Claim XII for failure to state a claim because Plaintiffs fail to adequately allege a meeting of the minds among the defendants sufficient to support a conspiracy claim.

Further, the Burri Defendants, pursuant to Rule 12(b)(1), respectfully request this Court dismiss Claims IV, V, VI, and VII of the First Amended Complaint for lack of supplemental jurisdiction under 28 U.S.C. § 1367(a) or, alternatively, 28 U.S.C. § 1367(c)(2). This Court should decline to exercise supplemental jurisdiction over Plaintiffs' claims IV, V, VI, and VII (collectively the "Shareholder Claims"), because they do not form part of the same case or controversy as claims I, II, III, VIII, IX, X and XI (collectively the "Software Claims").

Plaintiffs allege this Court has federal question jurisdiction over its several claims for copyright infringement and violation of the Computer Fraud and Abuse Act. (Doc. 45, First

Am. Compl. ¶ 1).[1] Beyond these Software Claims, however, Plaintiffs ask this Court to exercise supplemental jurisdiction over its state law Shareholder Claims. (Doc. 45, First Am. Compl ¶ 2). These Shareholder Claims involve separate questions of law and operative fact and are not part of the same case or controversy as the claims giving rise to the Court's original jurisdiction. In addition, the Shareholder Claims predominantly involve the Burri Family Defendants and WRI, and will involve voluminous and burdensome discovery wholly unrelated to the Software Claims and the remaining Defendants: Engage Mobile Solutions, LLC ("Engage"), Matthew Barksdale, Ceva Animal Health, LLC ("Ceva"), Shane Fairchild, and Boehringer Ingelheim Vetmedica, Inc. ("BIVI") (collective, the "Software Claim Defendants").[2] As a result, the Court lacks supplemental jurisdiction over the Shareholder Claims pursuant to 28 U.S.C. § 1367(a). In addition, the Court should exercise its discretion to decline supplemental jurisdiction over the Shareholder Claims under 28 U.S.C. § 1367(c)(2), because the Shareholder Claims substantially predominate over the Software Claims that form the basis for this Court's original jurisdiction. For these reasons and the reasons set forth below, the Court should dismiss claims IV, V, VI, and VII for lack of jurisdiction.

---

[1] Plaintiffs' state law claims concerning alleged tampering with Plaintiffs' software, violation of the software's terms of use, and alleged unfair competition also relate to alleged infringement and are not at issue in this Motion.

[2] While Plaintiffs name defendants Matthew Barksdale, Engage and Shane Fairchild as defendants in Plaintiffs' tortious interference claim (Claim III), their inclusion does not support supplemental jurisdiction. The sole allegation against them is that Barksdale "duplicated the copyrighted and protected aspects of the InfoDeli Software Platform." (Doc. 45 First. Am. Compl. at ¶ 157). Thus, the Court should dismiss the tortious interference claim against Barksdale and Engage as preempted by the Copyright Act. *See e.g. Ray v. ESPN, Inc.*, 783 F.3d 1140, 1145 n. 2 (8th Cir. 2015) (affirming dismissal of tortious interference claim as preempted by Copyright Act). The allegations against Fairchild concern his negotiations with Plaintiffs, and whether they were conducted in good faith. (Doc. 45, First Am. Compl. ¶¶ 159-60). These allegations have nothing to do with the merits of Plaintiffs' federal question claims and, if presented at trial along with the Software Claims, would only complicate the issues and confuse the jury. As a result, supplemental jurisdiction is improper under 28 U.S.C. § 1367. Further, the claim should be dismissed for failure to state a claim as explained in CEVA and Fairchild's motion to dismiss.

# LEGAL STANDARD

A.  **Failure to State a Claim Under Rule 12 (b) (6)**

To survive a motion to dismiss under Rule 12(b)(6):

"a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."

*Henderson v. Cypress Media, Inc.*, 12-0803-CV-W-ODS, 2012 WL 3580676, at *2 (W.D. Mo. Aug. 17, 2012) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009)). While the Court must accept all *factual* allegations as true, the court need not defer to "legal conclusions or formulaic recitation[s] of the elements of a cause of action." *Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023, 1027 (8th Cir. 2011) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)).

B.  **Lack of Supplemental Jurisdiction Under Rule 12 (b) (2)**

A federal court may only exercise supplemental jurisdiction over a state law claim if it is so related to the federal question claims that "they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Even if a court determines that it has supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367(a), it may nevertheless exercise its discretion to decline jurisdiction if:

> (1) the claim raises a novel or complex issue of State law;
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> (3) the district court has dismissed all claims over which it has original jurisdiction; or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367 (c). A district court's decision not to exercise supplemental jurisdiction over state law claims is reviewed for abuse of discretion. *Missouri Roundtable for Life v. Carnahan*, 676 F.3d 665, 678 (8th Cir. 2012).

## DISCUSSION

### A. Plaintiffs Failed to State a Claim for Civil Conspiracy (Claim XII)

In the First Amended Complaint, Plaintiffs add a claim for civil conspiracy for the sole purpose of tying together the disparate and unrelated causes of action against the various Defendants in an alleged single purpose conspiracy. This legally untenable civil conspiracy claim is merely an attempt to bootstrap into a federal court case the state law claims over which the Court cannot and should not exercise supplemental jurisdiction for the reasons discussed below. For example, there are no factual allegations in the entire First Amended Complaint that tie the Software Claims against all of the Defendants to the Shareholder Claims against the Burri Defendants so as to support the general allegation that they are all part of the same conspiracy. As the civil conspiracy claim is insufficient to state a claim it should be dismissed and provide no basis for supplemental jurisdiction over the unrelated state law claims discussed below.

In order to state a claim for civil conspiracy a plaintiff must allege facts that would support the following elements: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby injured. *Phelps v. Bross*, 73 S.W.3d 651, 657 (Mo. Ct. App. 2002). "The 'meeting of the minds' must be plead with sufficient facts to support the elements: not only because Missouri law requires it . . . but because *Iqbal* and *Twombly* require Plaintiff to plead facts sufficient to show more than a mere possibility that there was a meeting of the minds to commit the torts alleged elsewhere in the Complaint." *Cridlebaugh v. CitiMortgage, Inc.*, 2012 WL 5997950 at *2 (W.D. Mo. Nov. 30, 2012)(dismissing civil conspiracy claim)(internal

citations omitted). Further, "[w]hile the court must accept allegations of fact as true when considering a motion to dismiss, the court is free to ignore legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002)(dismissing civil conspiracy claim).

Under this standard, Plaintiffs have failed to adequately allege a "meeting of the minds" among all the Defendants to commit the alleged conspiracy. Plaintiffs' only allegation regarding a "meeting of the minds" appears in paragraph 236 of the First Amended Complaint:

> Each of the named Defendants in each of the respective wrongful and/or illegal causes of action set forth above, had an agreement or understanding amongst themselves as to that wrongful or illegal cause of action to do some or all of the above unlawful acts, and/or each of the Defendants used unlawful means to do acts that would otherwise be lawful to accomplish the wrongful or illegal acts in the respective causes of action.

This allegation contains no factual grounds to support the claim and is nothing more than the "conclusory allegations and speculation" that cannot support a claim in the face of a motion to dismiss. *Moses.com Securities, Inc. v. Comprehensive Software Systems, Inc.*, 406 F.3d 1052, 1064 (8th Cir. 2005)(affirming dismissal of civil conspiracy claim).

In *Moses.com Securities*, the plaintiff alleged defendants knew the software applications could not perform the functions advertised in a press release and defendants "reached a meeting of the minds to mislead . . . customers." *Id.* at 1063. The Eight Circuit noted that although the allegations in the complaint used "language that arguably stated the elements of the alleged tort" the allegations did not provide sufficient factual grounds to support the claim. *Id.* at 1064. As a result, the court upheld the district court's dismissal of the civil conspiracy claim. *Id.* Similarly, in *Process Controls Intern., Inc. v. Emerson Process Management*, the plaintiff attached as exhibits to the complaint communications between the alleged conspirators containing allegedly false information as evidence the defendants engaged in a conspiracy to

commit false advertising, tortious interference, or defamation. 2011 WL 6091722 at *1 (E.D. Mo. Dec. 7, 2011). The court found that even with evidence supporting allegations of direct communications between the defendants, the communications did nothing more than "allude to a meeting of the minds." *Id.* at *3. As a result, the court dismissed the civil conspiracy claim. *Id.*

This Court should reach the same result here. Plaintiffs' civil conspiracy claim is merely a "formulaic recitation of the elements of a cause of action" and that is not enough to state a claim. *Minneapolis Firefighters'*, 641 F.3d at 1027. Further, the "usual liberal requirements for pleading are not applicable when conspiracy claims are raised. *Bootheel Ethanol Investments, L.L.C. v. Semo Ethanol Co-op.*, 2009 WL 398506 at *5 (E.D. Mo. Feb. 17, 2009)(dismissing civil conspiracy claim for failure to plead facts in support of meeting of the minds allegations). Plaintiffs have not alleged any facts in support of their "meeting of the minds" allegation and, as a result, the Court should dismiss the civil conspiracy claim.

### B. Supplement Jurisdiction is Improper Because InfoDeli's Software Claims and Shareholder Claims Do Not Form Part of the Same Case or Controversy

Plaintiffs have taken two separate universes of claims – one subject to federal jurisdiction and one subject to state jurisdiction – and mashed them together into a single Complaint that subjects five of the ten named Defendants, and the Court, to unnecessary and extremely burdensome discovery on state law Shareholder Claims that go well beyond the Software Claims that give rise to this Court's jurisdiction. If this matter proceeds as pled, it will cause increasing burdens on the unrelated Defendants and the Court to address the discovery and legal arguments over shareholder disputes that significantly predate the software copyright disputes. Further, in the likely event that the software copyright claims are resolved by the Court, or the parties, prior to the resolution of the shareholder disputes, those claims would be immediately subject to dismissal for lack of jurisdiction forcing the parties to those claims to

start over at that point in state court. Therefore, the Court should dismiss the state law shareholder claims now so that they may proceed in the appropriate court with only the appropriate parties.

Supplemental jurisdiction requires the state law claims to arise from the same "case or controversy" as the claims subject to federal question jurisdiction. In order for claims to be part of the same "case or controversy" the claims must "derive from a common nucleus of operative fact." *Myers v. Richland County*, 429 F.3d 740, 746 (8th Cir. 2005). Claims derive from a common nucleus of operative fact if the claims would ordinarily be tried in one judicial proceeding. *ABF Freight System, Inc. v. Int'l Broth. of Teamsters*, 645 F.3d 954, 963 (8th Cir. 2011); *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007); *Kansas Public Employees Retirement System v. Reimer & Kroger Assoc's, Inc.*, 77 F.3d 1063, 1067 (8th Cir. 1996). Under this standard, a simple intertwining of facts between various claims is not enough. *Williams v. Kelso*, 201 F.3d 1060, 1066 (8th Cir. 2000). To be part of the same case or controversy, the claims must "share significant factual elements." *HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1198 (3d Cir. 1996). Accordingly, even if the claims involve some of the same participants, and some of the events overlap, the claims do not arise out of a "common nucleus" unless the operative facts supporting the claims overlap. *Nixon v. N.L.R.B.*, 559 F. Supp. 1265, 1270 (W.D. Mo. 1983).

Therefore, supplemental jurisdiction is only proper if those claims would not exist "but for" the claims giving rise to the court's original jurisdiction. *See Netbank v. Williams*, 2007 WL 234051 at *2 (E.D. Mo. Aug. 22, 2007) (finding supplemental jurisdiction was proper because claims would not exist "but for" original jurisdiction claims). By comparison, claims that involve "distinct questions of law" to the point where the causes of action are "independent

and essentially separate" are not part of the same "case or controversy" and the Court should not exercise supplemental jurisdiction over the claims. *See Williams*, 201 F.3d at 1067 (finding claims do not form part of same case or controversy despite "intertwined" facts because they raise distinct questions of law).

        *1.     Plaintiffs' Software Claims*

Plaintiffs' Software Claims relate to their alleged ownership of a copyright in the software system WRI formerly used to fulfill its online orders for CEVA and BIVI prior to WRI's decision to develop a different software system with the help of Engage in 2014. These Software Claims include copyright infringement (Claim I), contributory copyright infringement (Claim II), and vicarious liability for copyright infringement (Claim IX). The operative facts of plaintiffs' copyright infringement claim are going to relate to: (1) ownership of a valid copyright; and (2) copying of original elements of the copyrighted work. *Warner Bros. Entertainment, Inc. v. X One X Productions*, 644 F.3d 584, 595 (8th Cir. 2011). The contributory infringement claim will require plaintiffs to show defendants (1) had knowledge of the allegedly infringing activity; and (2) induced, caused or materially contributed to the infringing conduct of another. *Gershwin Pub. Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). Similarly, the vicarious infringement claim will require a showing that defendant profited directly from the alleged infringement while declining to exercise a right to stop or limit it. *MGM v. Grokster, Ltd.*, 545 U.S. 913, 931 (2005). Thus, the operative facts of these claims will primarily consist of evidence related to copyright ownership and a comparison of the original elements of the copyrighted software to the elements of the allegedly infringing software. Among other things, this will require a detailed analysis and expert witness testimony concerning the operation of the two software systems.

The remaining Software Claims share operative facts with the copyright claims, because they are relevant to plaintiffs' allegations of copyright infringement. For instance, the Computer Fraud and Abuse Act claim (Claim X), the tampering with computer data claim (Claim III), and the breach of the InfoDeli terms of use (Claim VIII) are relevant to whether certain defendants had access to plaintiffs' allegedly copyrighted software at the time of the alleged infringement in early 2014. Thus, these claims share a common nucleus of operative fact with the plaintiffs' infringement claims.

### 2. *Plaintiffs' Shareholder Claims*

The Shareholder Claims, on the other hand, involve facts spanning years and relate to the relationships between the Burri family members and address broad and disparate aspects of corporate governance over that period. The questions of law governing the Shareholder Claims are wholly unrelated to the questions of law governing the Software Claims. The Shareholder Claims do not involve the Software Defendants who would nonetheless be burdened with the voluminous discovery necessary to address the Shareholder Claims. The Shareholder Claims are not part of the same case or controversy as the Software Claims.

In order for the Court to determine whether it has supplemental jurisdiction over a state claim, it must conduct a claim-by-claim analysis of each state law claim to determine whether each state claim shares a common nucleus of operative facts with the claims giving rise to the court's original jurisdiction. *See Krause v. Forex Exchange Market, Inc.*, 356 F. Supp. 2d 332, 337–338 (S.D.N.Y. 2005) (exercising jurisdiction over state aiding and abetting claims related to alleged violation of federal statute, but declining to exercise jurisdiction over unjust enrichment, breach of fiduciary duty, breach of contract, negligence and conversion claims). If the claims involve the same parties but different operative facts and different legal issues, then

the claims are not part of the same case or controversy. *See Lawrence & Associates, Inc. v. Amdocs Champaign, Inc.*, 2007 WL 390732 at *3 (E.D. Mo. Jan. 31, 2007) (holding court lacked supplemental jurisdiction over counterclaims).

      a.      Breach of Joint Venture (*De Facto* Partnership) Agreement (Claim VII)

The operative facts concerning whether any joint venture/*de facto* partnership existed will span at least six years, and will involve voluminous evidence concerning whether any joint venture existed, the terms of the joint venture, and Plaintiffs' performance over the course of the joint venture. *Burgess v. Omar*, 345 F. Supp.2d 369, 372 (S.D.N.Y. 2004) (finding counterclaims did not arise out of same nucleus of operative fact where federal claims arose out of a relatively short period, but state claims related to "alleged looting of the corporate defendants...over a five to six year period"). Further, the alleged breach, for purposes of this claim, is that WRI stopped paying plaintiffs in accordance with the terms of the joint venture agreement. (Doc. 45, First Am. Compl. ¶ 196). For purposes of this claim, it is immaterial why WRI stopped payment, or whether there was copyright infringement by anyone, making evidence regarding copyright infringement irrelevant to this claim.

      b.      Tortious Interference with Contract and Prospective Economic Advantage (Claim IV)

In order to establish the claim of tortious interference with contract and prospective economic advantage, Plaintiffs will need to present evidence sufficient to satisfy the following elements: (1) a contract or valid business expectancy; (2) a defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages. *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. 1996). Similar to the breach of joint venture claim, the operative facts of this claim

extend back to 2009 because the alleged contract or prospective economic advantage is the joint venture/*de facto* partnership agreement. (*See* Doc. 45, First Am. Compl. ¶ 166). Therefore, the claim does not share a common nucleus of operative fact with Plaintiffs' Software Claims, and will not require a detailed analysis of the two software programs or involve any of the Software Claim Defendants.[3]

### c. Fraudulent Concealment (Claim V)

The claim of fraudulent concealment will require plaintiffs to satisfy the following elements: (1) a representation or a party's silence in the face of a legal duty to speak, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or his ignorance of its truth, (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) the right to rely thereon, and (9) the hearer's consequent and proximately caused injury." *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. 1988); *Oliver v. Ford Motor Credit Co., LLC*, 437 S.W.3d 352, 358 (Mo. App. 2014).

The alleged operative facts of Plaintiffs' fraudulent concealment claim are that the other directors of WRI – Connie Burri, Brian Burri and Peter Burri – were aware of WRI's plan to transition to a new software system but failed to inform Breht Burri. (Doc. 45, First Am. Compl. ¶ 178). Plaintiffs further allege that the directors had a fiduciary duty to disclose this information, because Breht Burri was a shareholder of WRI. *Id.* None of these allegations requires proof of copyright infringement or computer fraud, and do not involve the other Software Claim Defendants. Therefore, the claims do not arise out of a common nucleus of operative fact with the Plaintiffs' federal question claims and supplemental jurisdiction over the

---

[3] As explained above in footnote 1, Engage and Barksdale should be dismissed from this claim and the allegations against Fairchild relate to contract negotiations with Plaintiffs, and have nothing to do with the copyright and computer fraud claims that give rise to the Court's original jurisdiction.

11

claim is improper. *See Williams*, 201 F.3d at 1067 (holding claims that raise "distinct questions of law" are not part of the same case or controversy).

### d. Oppression of Minority Shareholder (Claim VI)

A claim for oppression of a minority shareholder requires a showing that the majority's actions plainly opposed the true interests of the corporation and clearly show that no one taking that action could have been influenced by an honest desire to act in the corporation's interests. *Herbik v. Rand*, 732 S.W.2d 232, 234-35 (Mo. App. 1987). In essence, Plaintiffs' minority shareholder oppression claim is based on the allegation that WRI and the defendant-directors of WRI made arrangements to prevent plaintiff Breht Burri from sharing in the profits of WRI. (Doc. 45, First Am. Compl. ¶ 188). In deciding that claim, the operative facts will concern the actions, if any, taken by the Burri Family Defendants, and whether the defendants' actions were motivated by an honest desire to act in the corporation's best interests. *See Hebrik*, 732 S.W.2d at 234-35. Facts regarding the alleged copyright infringement are irrelevant to the claim, and the Software Claim Defendants are not parties to this claim. Consequently, the claim does not share a common nucleus of operative fact with the federal question claims over which the court has original jurisdiction.

**C. The Court Should Decline Jurisdiction Because the Shareholder Claims Predominate Over the Original Jurisdiction Claims**

Independent of whether supplemental jurisdiction is available under 28 U.S.C. § 1367(a), the Court should exercise its discretion and decline jurisdiction under 28 U.S.C. § 1367(c)(2), because the Shareholder Claims substantially predominate over the original jurisdiction claims. Under this standard, supplemental jurisdiction is a doctrine of discretion, not of right. 28 U.S.C. § 1367(c)(2)*; United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). This Court should decline supplemental jurisdiction "if it appears that the state issues substantially

predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought." *Gibbs*, 383 U.S. at 726-27. In *Gibbs*, the Supreme Court explained that the justification for supplemental jurisdiction is based on "considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *Id.* at 726. Courts should also consider "reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial, Fed. Rule. Civ. Proc. 42(b)." *Id.* at 727. If these factors are present, then "jurisdiction should ordinarily be refused." *Id.*

In this case, the Shareholder Claims involving a difficult and contentious family dispute substantially predominate over the original jurisdiction claims and will drive both discovery and the schedule in this matter. Further, the Shareholder Claim factual disputes and legal issues would confuse the jury at trial in its handling of the Software Claims and the Software Claim Defendants. By way of example, the damages element of the tortious interference claim is dependent upon the allegation that Breht Burri was "supposed to obtain an equal share of WRI's profits…." (Doc. 45, First Am. Compl. ¶ 166). Similarly, the damages element for the claim of fraud rests on the allegation that Plaintiffs were excluded from the all compensation under the joint venture agreement. *Id.* at ¶ 175. The same is true for the oppression of minority shareholder claim, where Plaintiffs allege a conspiracy to eliminate licensing payments and servicing fees that were presumably due under the alleged joint venture agreement. *Id.* at ¶ 188. Further, the alleged breach of the joint venture agreement is clearly based on the joint venture/*de facto* partnership allegations. *Id.* ¶¶ 192-197. These damage

elements will be completely different from the alleged damages in the Software Claims, and will substantially predominate and confuse the jury trying to resolve the Software Claims.

Proving the existence, terms, performance and breach of the *de facto* partnership/joint venture agreement is going to require vast amounts of evidence concerning the parties' actions and communications spanning half-a-dozen years, little, if any, of which will be relevant to the Software Claims or the Software Claim Defendants. The court in *Evantigroup LLC v. Mangia Mobile, LLC*, ran into this exact same issue when straightforward trademark claims were bogged down and eventually eclipsed by complex factual issues related to *de facto* partnership allegations. 2014 WL 1048589 at *2 (E.D. Mo. Mar. 14, 2014). In that case, the plaintiff was a small restaurant that brought a trademark infringement claim against a local food truck that used the name "Mangia Mobile" for about ten months. *Id.* at *1. In addition to the trademark claims, the plaintiff raised issues regarding piercing the corporate veil and *de facto* partnership. *Id.* Driven primarily by the veil piercing and *de facto* partnership issues, the plaintiff engaged in exhaustive discovery, and plaintiff's trial exhibit list ballooned to 87 pages and listed more than 650 exhibits. *Id.* at *2. The Court decided to bifurcate trial of the infringement and *de facto* partnership issues, under Rule 42 (b), in order to shorten the length of trial and avoid jury confusion. *Id.*

This case is headed down the same path. If bifurcation of trial is likely, then "jurisdiction should ordinarily be refused." *Gibbs*, 383 U.S. at 727; *see also Caraballo v. South Stevedoring, Inc.*, 932 F. Supp. 1462, 1466 (S.D. Fla. July 3, 1996) (declining to exercise supplemental jurisdiction because predominance of state law claims would engender jury confusion). Accordingly, this Court should exercise its discretion at this time and decline to exercise supplemental jurisdiction over the Shareholder Claims under 28 U.S.C. § 1367(c)(2).

The issue of fairness further weighs against the Court's exercise of supplemental jurisdiction. By way of example, under the Software Claims, the parties may be entitled to the recovery of attorneys' fees. *See e.g.* 17 U.S.C. § 505. It would be profusely unfair, if the Software Claim Defendants are dragged into a drawn out bought of discovery concerning Plaintiffs' *de facto* partnership theories (even though the theory does not involve them), are forced to sit through lengthy testimony at trial (that is irrelevant to the copyright claims against them), and are then required to pay Plaintiffs' attorneys' fees (on top of their own attorneys' fees) for work that has nothing to do with the copyright claims against them.

While, arguably, that door swings both ways and the Software Defendants could recover their attorneys' fees, as a practical matter Plaintiffs – an individual who is also the sole member and employee of plaintiff InfoDeli – are unlikely to have the assets necessary to satisfy an award of attorneys' fees after lengthy and complex litigation involving multiple parties. As a result, by tacking his Shareholder Claims onto copyright claims through supplemental jurisdiction, Plaintiff Breht Burri is hoping he can force the Software Claim Defendants to subsidize his lawsuit against his family with very little downside risk for himself. That strategy is unfair and it is an abuse of supplemental jurisdiction. *See Gibbs*, 383 U.S. at 726 (listing "fairness to litigants" as one of the primary justifications for exercising or declining supplemental jurisdiction). Because the Shareholder Claims in this lawsuit predominate over the original jurisdiction claims, this Court has the power to unravel this strategy by granting this motion and declining to exercise supplemental jurisdiction over the Shareholder Claims.

**CONCLUSION**

For these reasons, the Court should dismiss Plaintiffs' civil conspiracy claim for failure to state a claim and the Shareholder Claims for lack of supplemental jurisdiction.

Dated: August 19, 2015						Respectfully submitted,

						ROUSE HENDRICKS GERMAN MAY PC


						/s/ Daniel E. Blegen
						Daniel E. Blegen			MO# 47276
						Paul M. Flucke			MO# 64849
						1201 Walnut Street, Suite 2000
						Kansas City, MO 64106
						Tel: 816-471-7700
						Fax: 816-471-2221
						E-mail: DanB@rhgm.com
						E-mail: Paulf@RHGM.com

						ATTORNEYS FOR DEFENDANTS
						WESTERN ROBIDOUX, INC., PETER E.
						BURRI, BRIAN P. BURRI, CINDY
						BURRI, AND CONNIE S. BURRI


CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this 19th day of August, 2015 the foregoing document was filed with the Clerk of the Court by using the CM/ECF system, which sent notification of such filing to all counsel of record.

						/s/ Daniel E. Blegen
						Daniel E. Blegen
						ATTORNEY FOR DEFENDANTS
						WESTERN ROBIDOUX, INC., PETER E.
						BURRI, BRIAN P. BURRI, CINDY
						BURRI, AND CONNIE S. BURRI