IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| INFODELI, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No.: 4:15-cv-00364-BCW |
| v. | ) | |
| | ) | |
| WESTERN ROBIDOUX, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF DEFENDANTS WESTERN ROBIDOUX, INC., PETER BURRI, CINDY BURRI, BRIAN BURRI, AND CONNIE BURRI TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants Western Robidoux, Inc. ("WRI"), Peter Burri, Cindy Burri, Brian Burri, and Connie Burri (collectively, the "Burri Defendants"), for their Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint, state as follows:

## JURISDICTION

1.      The allegations contained in this paragraph are legal conclusions to which no response is required, and to the extent a response is required, the Burri Defendants deny the allegations.

2.      Denied.

## VENUE

3.      The allegations contained in this paragraph are legal conclusions to which no response is required, and to the extent a response is required, the Burri Defendants deny the allegations.

## THE PARTIES

1

4.      The Burri Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the paragraph and, therefore, deny all allegations contained therein.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     The Burri Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the paragraph and, therefore, deny all allegations contained therein.

12.     The Burri Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the paragraph and, therefore, deny all allegations contained therein.

13.     The Burri Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the paragraph and, therefore, deny all allegations contained therein.

14.     The Burri Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the paragraph and, therefore, deny all allegations contained therein.

15.     The Burri Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the paragraph and, therefore, deny all allegations contained therein.

16.     The allegations contained in this paragraph are legal conclusions to which no response is required, and to the extent a response is required, the Burri Defendants deny the allegations.

## ALLEGATIONS

### Allegations Specific to Defendant WRI

17.     Admitted.

18.     Admitted.

19.     Admitted.

20.     Admitted.

21.     Admitted.

22.     Admitted.

23.     Admitted.

24.     Admitted.

25.     Denied.

26.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

27.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document..

28.     Denied.

29.     Admitted.

**Allegations Specific to the Burri Family**

30.      Admitted.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Admitted.

**Allegations Specific to Plaintiff InfoDeli**

36.      The Burri Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the paragraph and, therefore, deny all allegations contained therein.

37.     The Burri Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the paragraph and, therefore, deny all allegations contained therein.

38.     The Burri Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the paragraph and, therefore, deny all allegations contained therein.

**Creation of the *de facto* Partnership between InfoDeli, Breht Burri, and WRI**

39.     Denied.

40.     Denied.

41.     Admitted.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

65.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

66.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

67.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

68.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

69.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

70.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

71.     Denied.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Denied.

89.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

90.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

91.     Denied.

92.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Denied.

98.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

99.     The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

100.    The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.

106.    Denied.

107. Denied.

108. The cited document, to the extent it is a real document, speaks for itself and the Burri Defendants deny the allegations of this paragraph to the extent inconsistent with the cited document.

109. Denied.

110. Denied.

**Facts Specific to Defendant Shane Fairchild and/or CEVA**

111. Denied.

112. Denied.

113. Denied.

114. Denied.

**Not a Family Dispute**

115. Denied.

116. Denied.

117. Denied.

118. Denied.

**First Claim for Relief**

**COPYRIGHT INFRINGEMENT**

119. The Burri Defendants incorporate by reference all of the responses to the preceding paragraphs as if set forth in full at this point.

120. Denied.

121. Denied.

122. Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Denied.

127.    Denied.

128.    Denied.

129.    Denied.

130.    Denied.

131.    Denied.

## Second Claim for Relief

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

132.    The Burri Defendants incorporate by reference all of the responses to the preceding paragraphs as if set forth in full at this point.

133.    Denied.

134.    Denied.

## Third Claim for Relief

## TAMPERING WITH COMPUTER DATA

135.    The Burri Defendants incorporate by reference all of the responses to the preceding paragraphs as if set forth in full at this point.

136.    Denied.

137.    Denied.

138.    Denied.

139.    Denied.

140.     Denied.

141.     Denied.

142.     Denied.

143.     Denied.

144.     Denied.

145.     Denied.

146.     Denied.

147.     Denied.

148.     Denied.

149.     Denied.

150.     Denied.

151.     Denied.

152.     Denied.

153.     Denied.

**Fourth Claim for Relief**

**TORTIOUS INTERFERENCE WITH CONTRACT AND**

**<u>TORTIOUS INTEREREFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE</u>**

154.     The Burri Defendants incorporate by reference all of the responses to the preceding paragraphs as if set forth in full at this point.

155.     Admitted.

156.     Admitted.

157.     Denied.

158.     Denied.

159.    Denied.

160.    Denied.

161.    Denied.

162.    Denied.

163.    Denied.

164.    Denied.

165.    Denied.

166.    Denied.

167.    Denied.

168.    Denied.

169.    Denied.

## Fifth Claim for Relief

## FRAUD/FRAUDULENT CONCEALMENT

170-181.        Pursuant to the Court's Order, this Fifth Claim for Relief was dismissed and thus no response is required for the allegations contained in Paragraphs 170-181. To the extent any response is required the Burri Defendants incorporate by reference all of the responses to the preceding paragraphs as if set forth in full at this point and deny all remaining allegations in Paragraphs 170-181.

## Sixth Claim for Relief

## OPPRESSION OF MINORITY SHAREHOLDER

182-191.        Pursuant to the Court's Order, this Sixth Claim for Relief was dismissed and thus no response is required for the allegations contained in Paragraphs 182-191. To the extent any response is require, the Burri Defendants incorporate by reference all of the

responses to the preceding paragraphs as if set forth in full at this point and deny all remaining allegations in Paragraphs 182-191.

**Seventh Claim for Relief**

**<u>BREACH OF JOINT VENTURE AGREEMENT</u>**

192-197.     Pursuant to the Court's Order, this Seventh Claim for Relief was dismissed and thus no response is required for the allegations contained in Paragraphs 192-197. To the extent any response is required the Burri Defendants incorporate by reference all of the responses to the preceding paragraphs as if set forth in full at this point and deny all remaining allegations in Paragraphs 182-191.

**Eighth Claim for Relief**

**<u>BREACH OF THE INFODELI TERMS OF USE AGREEMENT</u>**

198.     The Burri Defendants incorporate by reference all of the responses to the preceding paragraphs as if set forth in full at this point.

199.     Denied.

200.     Denied.

201.     Denied.

202.     Denied.

203.     Denied.

204.     Denied.

205.     Denied.

206.     Denied.

207.     Denied.

208.     Denied.

209.    Denied.

**Ninth Claim for Relief**

## VICARIOUS LIABILITY FOR COPYRIGHT INFRINGEMENT

210.    The Burri Defendants incorporate by reference all of the responses to the preceding paragraphs as if set forth in full at this point.

211.    Denied.

212.    Denied.

213.    Denied.

**Tenth Claim for Relief**

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

214.    The Burri Defendants incorporate by reference all of the responses to the preceding paragraphs as if set forth in full at this point.

215.    Denied.

216.    Denied.

217.    Denied.

218.    Denied.

219.    Denied.

220.    Denied.

221.    Denied.

222.    Denied.

223.    Denied.

224.    Denied.

225.    Denied.

226. Denied.

227. Denied.

**Eleventh Claim for Relief**

**UNFAIR COMPETITION UNDER MISSOURI COMMON LAW**

228. The Burri Defendants incorporate by reference all of the responses to the preceding paragraphs as if set forth in full at this point.

229. Denied.

230. Denied.

231. Denied.

232. Denied.

**Twelfth Claim for Relief**

**ILLEGAL CIVIL CONSPIRACY UNDER MISSOURI LAW**

233. The Burri Defendants incorporate by reference all of the responses to the preceding paragraphs as if set forth in full at this point.

234. Denied.

235. Denied.

236. Denied.

237. Denied.

238. Denied.

239. Denied.

240. All allegations not specifically admitted herein are denied.

**AFFIRMATIVE DEFENSES**

The Burri Defendants, for their affirmative defenses, state as follows:

1.      Plaintiffs' Complaint has failed to state a claim upon which relief can be granted.

2.      Plaintiffs' claims are barred in whole or in part, by the doctrines of waiver, laches, unclean hands and/or estoppel, in that Plaintiffs, upon information and belief, have violated their own obligations to Defendants, failed to make adequate disclosures or otherwise engaged in a course of conduct that induced reliance and precludes Plaintiffs from asserting or relying on the so-called "Joint Venture" agreement and from asserting or relying on other claims in the Complaint.

3.      Plaintiffs' claims are barred by their prior material breach of all relevant contracts.

4.      Plaintiffs have failed to mitigate their damages, if any.   Plaintiffs negligently performed services resulting in customer dissatisfaction and disruption of business thereby injuring themselves and causing the very injury they are attempting to blame on the Defendants.

5.      Plaintiffs' claims are barred by their own negligence and failure to perform in accordance with industry practice as well as agreements under which they were doing business.

6.      Plaintiffs' damages, if any, result from the acts, omissions, or negligence of Plaintiffs themselves and others over whom these Defendants have no control.

7.      Plaintiffs' tort claims against the Burri Defendants are barred by the economic loss doctrine to the extent that contracts exist that cover the relationships at issue.

8.     Plaintiffs' claims for breach of the InfoDeli Terms of Use Agreement is barred in that any agreement to the Terms of Use was obtained under duress from persons without authority to bind Defendants, for inadequate consideration, is unenforceable, unconscionable, unsupported by mutual assent, subordinate to a prior contract or agreement, and/or repudiated by Plaintiffs.  Further, the so-called "Joint Venture" agreement did not exist, did not exist in the format alleged, or is otherwise unenforceable.

9.     Plaintiffs' claims for copyright infringement, contributory copyright infringement, and vicarious liability for copyright infringement are barred in that any use, which use is specifically denied, was fair use.

10.    Plaintiffs' claims for copyright infringement, contributory copyright infringement, and vicarious liability for copyright infringement are barred, in whole or in part, in that Plaintiffs' actions are an abuse or misuse of copyright law.  Among other things, on information and belief Plaintiffs wrongfully prohibited or attempted to prohibit activities protected by the Copyright Act or important public policies.

11.    Plaintiffs' claims for copyright infringement, contributory copyright infringement, and vicarious liability for copyright infringement are barred in that the Defendants had an express or implied license to use and distribute the copyrighted work.

12.    Plaintiffs' claims under the Copyright Act are barred, in whole or in part, because the copyrights at issue do not meet the registration requirements of the Copyright Act, in that, upon information and belief, Plaintiffs included inaccurate information in their application for copyright registration with knowledge that it was inaccurate and the inaccuracy of the information, if known, would have caused the Register of the Copyrights to refuse registration.

13.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of merger, because, on information and belief, some or all of the ideas or expressions in the copyrights, platforms, or programs at issue can be expressed in only one fashion.

14.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of *scenes a faire*, because among other things, on information and belief, Plaintiffs are seeking protection for (1) elements flowing naturally from a work's theme; and/or (2) elements insufficiently imbued with originality.

15.      Plaintiffs' claims are barred, in whole or in part, because among other things, on information and belief, elements of the platforms or programs at issue are from or available in the public domain.

16.      Plaintiffs' claims are barred, in whole or in part, because among other things, on information and belief, the allegedly infringing software platform was independently created.

17.      Plaintiffs' claims are barred, in whole or in part, because among other things, on information and belief, elements of the copyrights, platforms, or programs at issue are dictated by external considerations.

18.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of acquiescence.  Among other things, Plaintiffs failed to make adequate disclosures or otherwise engaged in a course of conduct that precludes Plaintiffs from asserting or relying on the so-called "Joint Venture" agreement, which Defendants deny existed, and from asserting or relying on other claims in the Complaint.

19.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered any cognizable injury or damages.

20.     Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs' alleged copyrights are invalid and/or unenforceable, because among other things, on information and belief the copyright covers expressions or subject matters beyond the scope of a legitimate copyright, or because Plaintiffs lack valid ownership interests in a legitimate and enforceable copyright.  For instance, due to his knowledge of WRI's contract with BIVI, Breht Burri knew that BIVI retained ownership to all information, design, materials and data provided to WRI by BIVI and that BIVI or WRI retained the intellectual property rights, including the rights to any copyrights, for any works created, utilized, or modified in connection with or in performing services under WRI's agreement with BIVI.  Further, because Breht Burri was an attorney who was familiar with the requirements of WRI's contract with BIVI, and a member of the Burri Family, WRI relied on Breht's representations that the fulfillment platform created for BIVI was the property of WRI or BIVI.  Based on Breht's representations that WRI or BIVI owned the fulfillment platform, WRI paid for all invoices related to the development of the BIVI fulfillment platform with the understanding that that work was performed on a work for hire basis for the benefit of WRI, paid for and owned the hardware used to operate the fulfillment platform, paid for and owned the third-party software used to create and operate the fulfillment platform, and paid compensation to Breht Burri with the understanding that the fulfillment platform was the property of BIVI or WRI.  Similarly, Breht Burri represented to WRI that the fulfillment platform for Ceva and the Vectrarebate.com website were owned by WRI, and that Breht Burri was acting as an employee of WRI during the time period he was working on the Ceva fulfillment platform and Vectrarebate.com website.  Based on these representations, WRI paid for the invoices related to the development of the Ceva fulfillment platform and Vectrarebate.com website with the understanding that the work was performed on a work for

hire basis for the benefit of WRI, paid for and owned the hardware used to create and operate the fulfillment platform and Vectrarebate.com website, paid for and owned the third-party software used to create and operate the Ceva fulfillment platform and Vectrarebate.com website, and paid compensation to Breht Burri with the understanding that the Ceva fulfillment platform and Vectrarebate.com website were owned by WRI.

21.    Plaintiffs' claims are barred, in whole or in part, because, any alleged damages or injuries suffered by Plaintiffs were caused by the acts or omissions of persons or entities other than Defendants, and those acts or omissions constituted an intervening and superseding cause.

22.    Plaintiffs' claims are barred, in whole or in part, because the alleged infringement was not caused by a volitional act attributable to Defendants.

23.    Plaintiffs' claims are barred, in whole or in part, because any alleged acts by Defendant that supposedly violated Plaintiffs' rights were committed with a lack of knowledge and/or a lack of willful intent.

24.    Plaintiffs' claims are barred, in whole or in part, because among other things, on information and belief, the allegedly infringing software or platform was independently created.

25.    Plaintiffs' claims are barred, in whole or in part, because among other things, on information and belief, those claims are based on unprotected ideas rather than protected elements or expressions.

26.    Plaintiffs' claims are barred, in whole or in part, because Defendants acted in good faith, had a reasonable belief in non-infringement, did not willfully infringe, and/or at most engaged in innocent infringement, including as set forth in 17 U.S.C. §§ 401 *et seq*.

27.     Plaintiffs' claims for actual damages or similar forms of recovery are barred, in whole or in part, because there is no causal link between the alleged infringement or any wrongful conduct by Defendants and the alleged damages, the alleged damages would have occurred without the alleged infringement, recovery of the alleged damages would constitute a double recovery, the alleged damages are offset or fail to include deductible items, and/or the alleged damages are too remote or speculative to be ascertainable and recoverable.

28.     Plaintiffs' claims for lost profits or similar forms of recovery are barred, in whole or in part, because there is no causal link between the alleged infringement and the alleged profits or revenues, the alleged profits or revenues are attributable to factors other than the alleged infringement, the alleged profits or revenues must be apportioned or allocated, the alleged profits or revenues are not reasonably related to the alleged infringement, the alleged profits or revenues are too remote or speculative, and/or the alleged profits or revenues are offset by or fail to include deductible items.

29.     Plaintiffs' claims are barred, in whole or in part, because any adverse judgment may be subject to a common law or statutory set-off or contribution, including without limitation any set-off or contribution warranted under MO. REV. STAT. § 537.060.

30.     Plaintiffs' claims are barred, in whole or in part, because on information and belief, any copyright infringement by Defendants (which infringement is denied) was *de minimus* in nature.

31.     Pursuant to 17 U.S.C. § 412 Plaintiffs' claims are barred, in whole or in part, from recovering statutory damages or attorneys' fees because, on information and belief, any alleged infringement, which is specifically denied, commenced after first publication of the

work and before the effective date of registration and Plaintiffs' registration was not made within three months after the first publication of the work.

32.     Defendants incorporate by reference all applicable defenses asserted by any other Defendant in this matter.

33.     Defendants reserve the right to advance additional defenses that may be identified in the course of further investigation, discovery, or litigation in this action.

## COUNTERCLAIMS

Counterclaimant Western Robidoux, Inc. ("WRI"), states the following Counterclaims against Breht C. Burri and InfoDeli, LLC ("InfoDeli").

## I. PARTIES

1. Counterclaimant WRI is a Missouri corporation in good standing, with its principal place of business located at 4006 S. 40th Street, St. Joseph MO 64503.

2. InfoDeli is a Missouri limited liability company, duly licensed and in good standing, with its principal place of business located at 2107 Grand Blvd., Suite #208, Kansas City, MO 64108.

3. Breht C. Burri is a resident of the state of Missouri with a home address of 5637 Gresham Circle, Parkville MO 64152.

## II. JURISDICTION

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a), because the counterclaims are between the parties to the underlying action and arise from the same case or controversy. In addition, the Court has subject matter jurisdiction for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*

5. This Court has personal jurisdiction over counterclaim-defendants InfoDeli and Breht Burri because they have consented to this Court's jurisdiction by filing the underlying lawsuit and because InfoDeli is a Missouri corporation and Breht Burri is domiciled in the state of Missouri.

## III. FACTUAL ALLEGATIONS

6.     WRI is a commercial printing company that was incorporated by Milton "Roger" Burri in 1979.  Roger was the husband of Connie Burri.  Together Connie and Roger operated WRI.

7.     Starting around 1989, WRI began doing business with Boehringer Ingelheim Vetmedica, Inc. ("BIVI").  Connie was the primary business contact for BIVI at WRI, and over the years Connie developed a strong relationship with her contacts at BIVI.

8.     Throughout their careers, Brian Burri and Peter Burri, the sons of Connie and Roger Burri, worked at WRI and assisted their parents in the operation of the printing business.

9.     Unlike his brothers Brian and Peter, except for a brief stint working for WRI after college, Counterclaim Defendant Breht Burri elected to not enter the family printing business at WRI at the start of his career.  Instead, Breht moved to California, dabbled in the practice of law, then started investing in cybersquatting schemes, and, at some point, established a website development services company named Toobaroo.  As explained later, none of these career paths were successful.

10.     In early 2008, one of Connie's contacts at BIVI approached her about WRI providing fulfillment services to BIVI. In addition, due to internal organization changes at BIVI, Connie was told that BIVI wanted to document its business relationship with WRI in a more formal agreement.  As a result of this conversation, WRI entered contract negotiations with BIVI for general printing, design, mailing services and fulfillment.  With the exception of providing fulfillment services, this new agreement was essentially a continuation of the business arrangement between WRI and BIVI that had existed for almost 20 years before the contract

negotiations started. Because Breht has a background in law, WRI had Breht review the BIVI agreement and provide his input on the contract before it was executed.

11.     As a result of his review of this contract, Breht was aware of the language contained in § 10 of that agreement titled "Intellectual Property" which states in part:

> 10.2   WRI agrees that any and all creations designed, developed, produced, or supplied by WRI or its subcontractors, if any, in connection with this Agreement shall be considered "works made for hire" under the copyright laws of the United States and shall be the sole and exclusive property of BIVI…
>
> 10.3   WRI agrees that despite any notices or markings to the contrary: (i) BIVI owns the right, title, interest in and to and has the unrestricted right to reproduce and utilize any and all work products created, invented, developed or produced pursuant to this Agreement; and (ii) BIVI shall retain ownership of all information, design, materials and data provided to WRI, unless otherwise provided herein.
>
> 10.4   WRI shall retain all of its rights in its standard drawing details, specifications, data bases, computer software and other proprietary property, whether developed, utilized or modified in performing the Services under this Agreement.

Thus, Breht was aware that BIVI retained ownership of all information, design, materials and data provided to WRI by BIVI and that BIVI or WRI retained the intellectual property rights, including the rights to any copyrights, for any works created, utilized, or modified in connection with or in performing the services under WRI's agreement with BIVI.

12.     On or about February 1, 2008 WRI entered into the contract with BIVI.

13.     Based on Breht's status as an attorney, his familiarity with the language contained in the BIVI agreement, and Breht's membership in the Burri family, WRI was led by Breht to believe that any intellectual property rights related to the BIVI fulfillment platform were owned by either WRI or its client, BIVI.

14.     In reliance on Breht's representations that WRI, or BIVI owned the intellectual property rights to the BIVI fulfillment platform, WRI paid the full cost of developing

the BIVI fulfillment platform, including paying the invoices for third-party programmers, paying for all necessary software licenses, and paying for all the hardware that created and hosted the fulfillment platform.

15.     Following the death of her husband on May 23, 2009, Connie Burri became the sole shareholder of WRI.

16.      Within months after Roger Burri's passing, Breht Burri sought financial assistance from his mother and brothers, because Breht's finances were in dire straits.

17.     On or about July 29, 2009, Toobaroo's primary, and perhaps only paying client, BIVI, fired Breht for poor performance.[1]   It was later revealed that Breht was also in trouble with the IRS and while the details of Breht's tax situation are not known, Breht eventually asked Connie for help paying over $20,000 in back taxes.

18.     Upon information and belief, Breht's cybersquatting activities were also not generating significant income for Breht.   Breht was later named as a defendant in a cybersquatting lawsuit and, because he could not afford to pay his own legal fees, his mother Connie helped pay his legal bills.

19.     Given Breht's dreadful financial circumstances, Connie, Peter, and Brian agreed to let Breht join WRI.   Throughout this period, Breht represented to WRI that he would join WRI as an employee and that for all intents and purposes he was an employee of WRI, but because of his tax predicament with the IRS, it would be advantageous if he could be compensated as an independent contractor on a temporary basis until he could resolve his personal financial issues.   At all times, Breht represented to WRI that he was in essence an employee of WRI, and he would regularly reassure his mother that he would maintain regular

---

[1] BIVI initially hired Toobaroo to perform website services because Connie Burri referred one of her contacts at BIVI to her son's company.

hours at WRI's offices in St. Joseph Missouri, even though he often failed to follow through on those promises.

20.     When Breht joined WRI, part of his responsibilities involved the operation of WRI's online fulfillment platform for BIVI. This task involved the daily compiling of orders placed through the online fulfillment platform and sending them to WRI's fulfillment department for pulling, packaging, and shipping. It also involved Breht acting as an administrator for the fulfillment platform.

21.     Later in 2009 WRI amended its board of directors to increase the number of directors to four. As a result, Connie's three sons Peter, Brian and Breht joined her on WRI's board of directors. Later that same year, Connie gave her sons shares in WRI as part of her estate planning.

22.     In late 2011, WRI began negotiations with Ceva Animal Health, LLC ("CEVA") for WRI to provide fulfillment services in connection with Ceva's printed and digital marketing materials. Breht was directly involved in these negotiations on behalf of WRI.

23.     WRI executed its agreement with Ceva on or about September 30, 2011 with an effective date of August 15, 2011.

24.     After WRI executed its agreement with Ceva, Breht was given responsibility for the operation of WRI's online fulfillment platform for Ceva. And, later, he was given responsibility for the operation of the Vectrarebate.com website for Ceva. Once again, this task involved daily compiling of orders placed through the online fulfillment platform and Vectrarebate.com website, then sending them to WRI's fulfillment department for pulling, packaging, and shipping. It also involved Breht acting as an administrator for the Ceva fulfillment platform and Vectrarebate.com website.

25.     Once again, Breht represented to WRI that the Ceva fulfillment platform and the Vectrarebate.com website were owned by WRI. For instance, in August 2012, Breht emailed Cindy and Connie asking WRI to pay for expenses related to upgrading software and servers for the fulfillment platforms and Vectrarebate.com website, to which Connie replied "Just make sure all this expensive software is owned by Western Robidoux." A few days later Connie sent another email to Breht saying, "I would like to talk with you today. I was serious about ownership of all this software we are buying."

26.     In 2013, Breht became upset about his level of compensation at WRI. On January 28, 2014 Breht wrote an email to WRI in which he complained about his compensation and threatened to stop processing the orders that came through the Vectrarebate.com website, and fulfillment platforms for BIVI and Ceva. Breht made this threat knowing that he could use his position as an administrator to block WRI's access to its fulfillment platforms and the Vectrarebate.com website, thereby sabotaging WRI's business relationship with BIVI and Ceva.

27.     Following this threat, Breht began a "slowdown strike" in which he would take a long time to compile the orders placed through WRI's online fulfillment platforms and the Vectrarebate.com website or ignore support requests related to the fulfillment platforms and website. For instance, in early February 2014, Breht took 12 days to compile and send Ceva's Vectra Rebate coupon orders to WRI's printing department in contravention of WRI's promise to Ceva that it would process and ship all Vectra Rebate coupon orders within five days.

28.     As a result of these developments, WRI began exploring the possibility of having Engage Mobile Solutions, LLC ("Engage Mobile") develop new and more modern online fulfillment platforms and websites, and then take over as administrator of WRI's online

fulfillment platforms and the Vectrarebate.com website. To that end, WRI first met with Engage Mobile on February 27, 2014.

29. On or about March 11, 2014, after WRI met with Engage Mobile, Breht blocked access to WRI's fulfillment platforms by placing a "Terms of Use" agreement and "Privacy Policy" on the login page of the BIVI and Ceva fulfillment platforms. As a result, WRI, Ceva, or BIVI would need to agree to these agreements before they could access the fulfillment platforms. Neither of these agreements contained the standard language you would expect in these types of agreements. By way of example, the "Terms of Use" agreement purportedly required anyone who wanted access to WRI's fulfillment platforms, to first agree to a one-sided license with InfoDeli, one of Breht's companies. Among other self-serving provisions, the "Terms of Use" agreement allowed InfoDeli to deny users access if the user did not pay a licensing fee directly to InfoDeli, and limited the rights and legal remedies of users against InfoDeli.

30. After cutting off access to WRI's fulfillment platforms, Breht began soliciting BIVI and Ceva for their business. On March 13, 2014 Breht, through his attorney Pete Smith, approached Ceva about Ceva directly contracting with InfoDeli for its fulfillment business and Vectrarebate.com website. Then on March 18, 2014, Breht emailed BIVI about "obtaining a direct license to use the InfoDeli Literature Store Service."

31. Following these developments, WRI hired Engage Mobile to create new fulfillment platforms to process orders for BIVI and Ceva and a new Vectrarebate.com website in order to minimize any interruption to WRI's business with BIVI and Ceva.

32. Each allegation stated above is incorporated into every count below. In addition, allegations in each count are incorporated into all other counts.

**COUNT I**
**CONVERSION**

33.     WRI is the owner of, or was otherwise entitled to possession of, the fulfillment platforms used to provide fulfillment services to both BIVI and Ceva and the Vectrarebate.com website.

34.     Breht Burri or InfoDeli, whether acting alone or in concert, took possession or control of the fulfillment platforms with intent to exercise some control over them, by blocking access to the fulfillment platforms with a "Terms of Use" agreement.

35.     By making agreement to the "Terms of Use" a condition of access to the fulfillment platforms, Breht Burri or InfoDeli, whether acting alone or in concert, deprived WRI of the right to use and possess the fulfillment platforms.

36.     In addition to the fulfillment platforms themselves, WRI is the owner, or was otherwise entitled to possession of, the data, documents, images, files, orders, order histories, databases, database schema and other information (collectively the "WRI Files") contained within the fulfillment platforms and the Vectrarebate.com website.  WRI also paid for and is the owner of, or was otherwise entitled to possession of, the hardware, servers and software (collectively the "WRI Hardware") on which the WRI fulfillment platforms and Vectrarebate.com website were created and operated.

37.     Breht Burri or InfoDeli, whether acting alone or in concert, took possession or control of the WRI Files and WRI Hardware with intent to exercise control over them, by blocking WRI's access to the WRI Files and use of the WRI Hardware with the "Terms of Use" agreement they placed on the fulfillment platforms.

38.     By making agreement to the "Terms of Use" a condition of access to the fulfillment platforms, Breht Burri or InfoDeli, whether acting alone or in concert, deprived WRI

of the right to use and possess the WRI Files and WRI Hardware. Further, Breht has refused to relinquish possession or control of the WRI Hardware despite a request from WRI's attorney for him to do so.

39. After Breht Burri or InfoDeli, whether acting alone or in concert, blocked access to the fulfillment platforms using the "Terms of Use" agreement, WRI's attorney demanded the immediate removal of the "Terms of Use" page so that WRI and its clients could resume their use of the fulfillment platforms, the WRI Hardware and the WRI Files. Breht Burri and InfoDeli refused to comply with this request and continued to block access to the fulfillment platforms, WRI Hardware, and the WRI Files with the "Terms of Use" agreement.

40. WRI has been severely damaged by Breht Burri and InfoDeli's conduct as it lost revenue related to its business with BIVI and Ceva, incurred additional expenses related to the development of new fulfillment platforms and a new Vectrarebate.com website, had to lease new space on Amazon's servers to support the new fulfillment platforms and new Vectrarebate.com website, and suffered damaged goodwill and business relationships between WRI and its two largest clients.

41. As a result of the foregoing, WRI has been damaged in an amount to be determined at trial.

42. Breht Burri or InfoDeli, whether acting alone or in concert, acted knowingly, willfully, wantonly, maliciously, intentionally, or recklessly in disregarding the rights of WRI, in an attempt to destroy WRI's business and steal two of WRI's most valued clients.

43. The actions of Breht Burri or InfoDeli, whether acting alone or in concert, are outrageous, and thus WRI should be entitled to an award of punitive damages as well.

WHEREFORE, WRI seeks recovery from Breht Burri and InfoDeli for conversion and prays that the Court award damages to compensate it for its losses, punitive damages, attorney fees, costs, and all other relief available under the law.

## COUNT II
### VIOLATION OF THE MISSOURI COMPUTER TAMPERING ACT

44.     WRI is the owner or lessee of the computer system, computer network, computer program, computer service or data otherwise referred to herein as the fulfillment platforms and Vectrarebate.com website.

45.     Breht Burri or InfoDeli, whether acting alone or in concert, knowingly and without authorization or without reasonable grounds, by placing the "Terms of Use" page on the fulfillment platforms and otherwise denying WRI access to the fulfillment platforms, and WRI Files, took data, programs or supporting documentation residing or existing internal or external to a computer, computer system, or computer network in violation of MO. REV. STAT. § 569.095 (3).

46.     Breht Burri or InfoDeli, whether acting alone or in concert, knowingly and without authorization and without reasonable grounds, by placing the "Terms of Use" page on the fulfillment platforms and otherwise denying WRI access to the fulfillment platforms, and WRI files, and thereby, upon information and belief, received, retained, used, or disclosed data they knew or believed was obtained in violation of the Missouri Computer Tampering Act and thereby constitutes a violation of MO. REV. STAT. § 569.095 (6).

47.     Breht Burri or InfoDeli, whether acting alone or in concert, knowingly and without authorization and without reasonable grounds, modified or destroyed data or programs or supporting documentation residing or existing external to a computer, computer system, or

computer network by placing the "Terms of Use" page on the fulfillment platforms in violation of Mo. Rev. Stat. § 569.095 (2).

48.     Upon information and belief after they placed the "Terms of Use" page on the fulfillment platforms, Breht Burri or InfoDeli, whether acting alone or in concert, knowingly and without authorization and without reasonable grounds, accessed WRI's fulfillment platform, the Vectrarebate.com website or WRI's computer system and intentionally examined information about another person in violation of Mo. Rev. Stat. § 569.095 (5).

49.     WRI seeks its compensatory damages as allowed by statute, including but not limited to lost profits, actual damages, non-economic, and economic damages suffered by it.

50.     In addition, WRI has been forced to incur attorney fees to prosecute this claim and is therefore entitled to recover its attorney fees and costs pursuant to Mo. Rev. Stat. § 537.525 (2).

51.     Breht Burri or Infodeli, whether acting alone or in concert, acted knowingly, willfully, wantonly, maliciously, intentionally, and recklessly in disregarding the rights of WRI, in an attempt to destroy WRI's business and steal two of WRI's most valued clients.

52.     Breht Burri's or InfoDeli's actions, whether acting alone or in concert, are outrageous, and thus WRI should be entitled to an award of punitive damages as well.

WHEREFORE, WRI seeks recovery from Breht Burri and InfoDeli for violations of the Missouri Computer Tampering Act and prays that the Court award damages to compensate it for its losses, punitive damages, attorney fees, costs, and all other relief available under the law.

## COUNT III
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030 *et seq.*)

53.     Breht Burri knowingly and intentionally exceeded his authorized access to the fulfillment platforms by placing the "Terms of Use" page on the fulfillment platforms thereby barring WRI and its clients from accessing WRI's fulfillment platforms.

54.     Upon information and belief InfoDeli, without authorization, knowingly and intentionally accessed WRI's fulfillment platforms and placed a "Terms of Use" page on the fulfillment platforms thereby barring WRI and its clients from accessing WRI's fulfillment platforms.

55.     Breht Burri and InfoDeli's conduct, whether acting alone or in concert, caused WRI to incur damages in the form of responding to the unauthorized access, as well as responding to the access in excess of authorization.

56.     After Breht Burri or InfoDeli, whether acting alone or in concert, blocked access to WRI's fulfillment platforms with the "Terms of Use" page, WRI incurred substantial expense by hiring Engage Mobile to develop new fulfillment platforms, and a new Vectrarebate.com website, and incurred additional costs related to fulfilling client orders manually, and WRI's damages are still ongoing as WRI continues to expend time, money, resources and attorneys' fees in order to regain access and possession of WRI's original fulfillment platforms, the Vectrarebate.com website, and the WRI Files.

57.     As a result of Breht Burri or InfoDeli's unauthorized access or access in excess of authorization of WRI's fulfillment platforms and the Vectrarebate.com website, WRI has suffered damages and a loss of no less than $5,000 in the last year, including but not limited to its costs to respond to this offense.

58.     As a result of the foregoing, WRI seeks compensatory damages in an amount to be determined at trial.

59. Breht Burri and InfoDeli, acted knowingly, willfully, wantonly, maliciously, intentionally, and recklessly in disregarding the rights of WRI.

60. Breht Burri and InfoDeli's actions are outrageous, and thus WRI should be entitled to an award of punitive damages as well.

WHEREFORE, WRI seeks recovery from Breht Burri and InfoDeli for violations of the Computer Fraud and Abuse Act and prays that the Court award damages to compensate it for its losses, punitive damages, attorney fees, costs, and all other relief available under the law.

## COUNT IV
## REPLEVIN

61. As a result of Breht Burri and InfoDeli's conduct, WRI has been harmed and is entitled to return of the WRI fulfillment platforms, the Vectrarebate.com website, the WRI Files, the WRI Hardware, punitive damages, interest, and/or costs, along with all other relief allowed by law.

WHEREFORE, WRI seeks recovery from Breht Burri and InfoDeli and prays that the Court award WRI the return of the WRI fulfillment platforms, the Vectrarebate.com website, the WRI Files, the WRI Hardware, damages to compensate it for its losses, punitive damages, interest, costs, and all other relief available under the law.

## COUNT V
## MALICIOUS TRESPASS

62. On information and belief, Breht Burri and InfoDeli were aware of the value of WRI fulfillment platforms, the Vectrarebate.com website, and the WRI Files.

63. On information and belief, Breht Burri and InfoDeli were aware that by blocking WRI's access to the WRI fulfillment platforms, the Vectrarebate.com website, and the WRI Files it would harm WRI by, including without limitation, interfering with WRI's ability to perform under its contracts with BIVI and Ceva, by delaying its ability to fulfill orders or

rebates, to provide customer service for its customers, or to maintain its goodwill with BIVI and Ceva.

64.     Breht Burri and InfoDeli's conduct was malicious and performed with knowledge of actual or potential harm to WRI, with an intent to harm WRI.

65.     As a result of Breht Burri and InfoDeli's conduct, WRI has been harmed and is entitled to actual damages, punitive damages, interest, and/or costs, along with all other relief allowed by law, including without limitation double the value of WRI's property pursuant to MO. REV. STAT. § 537.330.

WHEREFORE, WRI seeks recovery from Breht Burri and InfoDeli and prays that the Court award WRI damages to compensate it for its losses, punitive damages, interest, costs, and all other relief available under the law.

## COUNT VI
## TORTIOUS INTERFERENCE WITH CONTRACT/BUSINESS EXPECTANCY

66.     Breht Burri and InfoDeli knew that WRI had contractual or expected business relationships with Ceva and BIVI for pulling, packaging, and shipping and that WRI had a contractual obligation to perform these services within a contractually defined time period.

67.     By placing the "Terms of Use" and "Privacy Policy" pages on the login page of the fulfillment platforms, and intentionally delaying the processing of orders, Breht Burri and InfoDeli intentionally interfered with these contractual or expected relationships, by causing delays and other disruptions in the pulling, packing, and shipping of orders as required under WRI's contracts with BIVI and Ceva.

68.     Breht Burri and InfoDeli's interference was not supported by any legal justification.  Breht Burri and InfoDeli used improper means to interfere with BIVI's and Ceva's

contractual and expected relationships, including without limitation the tortious conduct described in these counterclaims.

69.     As a result of Breht Burri and InfoDeli's conduct, WRI has been harmed and is entitled to actual damages, lost profits, punitive damages, interest, and/or costs, along with all other relief allowed by law.

WHEREFORE, WRI seeks recovery from Breht Burri and InfoDeli and prays that the Court award WRI damages to compensate it for its losses, punitive damages, interest, costs, and all other relief available under the law.

## COUNT VII
## TRESPASS TO CHATTELS

70.     By withholding access to WRI's fulfillment platforms, the Vectrarebate.com website, the WRI Hardware, and the WRI Files, Breht Burri and InfoDeli interfered with WRI's right to use and enjoy its personal property.

71.     Breht Burri and InfoDeli did not have permission to interfere with WRI's fulfillment platforms, Vertrarebate.com website, the WRI Hardware, and the WRI Files, and they had no legal justification for doing so.

72.     As a result of Breht Burri and InfoDeli's conduct, WRI has been harmed and is entitled to actual damages, lost profits, nominal damages, punitive damages, interest, and/or costs, along with all other relief allowed by law.

WHEREFORE, WRI seeks recovery from Breht Burri and InfoDeli and prays that the Court award WRI damages to compensate it for its losses, punitive damages, interest, costs, and all other relief available under the law.

## JURY DEMAND

WRI demands a jury trial on all issues triable to a jury.


Dated: March 23, 2016                                    Respectfully submitted,

                                        ROUSE HENDRICKS GERMAN MAY PC


                                        /s/ Daniel E. Blegen
                                        Daniel E. Blegen              MO#  47276
                                        Paul M. Flucke               MO#  64849
                                        1201 Walnut Street, Suite 2000
                                        Kansas City, MO 64106
                                        Tel: 816-471-7700
                                        Fax: 816-471-2221
                                        E-mail: DanB@rhgm.com
                                        E-mail: Paulf@RHGM.com

                                        ATTORNEYS FOR DEFENDANTS
                                        WESTERN ROBIDOUX, INC., PETER E.
                                        BURRI, BRIAN P. BURRI, CINDY
                                        BURRI, AND CONNIE S. BURRI

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this 23rd day of March, 2016 the foregoing document was filed with the Clerk of the Court by using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Daniel E. Blegen _____
Daniel E. Blegen
ATTORNEY FOR DEFENDANTS
WESTERN ROBIDOUX, INC., PETER E.
BURRI, BRIAN P. BURRI, CINDY
BURRI, AND CONNIE S. BURRI