# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

INFODELI, LLC, *et al.*,                     )
                                             )
                    Plaintiffs,              )
                                             )
v.                                           )     Case No.      4:15-CV-00364-BCW
                                             )
WESTERN ROBIDOUX, INC., *et al.*,            )
                                             )
                    Defendants.              )

## ORDER

Before the Court is Defendants' Motion for Summary Judgment on Plaintiffs' Copyright Infringement Claim. (Doc. #398). The Court, being duly advised of the premises, grants said motion.

In the motion before the Court, Defendants argue there is no genuine issue of material fact and they are entitled to judgment as a matter of law relative to Plaintiffs' claim against them for copyright infringement. In the operative complaint (Doc. #284), Plaintiffs InfoDeli, LLC and Breht C. Burri ("InfoDeli") allege Defendants are liable for infringement of eight copyright registrations, generally referenced in the collective as the InfoDeli Software Platform ("the Platform"). InfoDeli has separate copyright registrations for versions of the Platform, InfoDeli 2.0, 4B, 4C, and 5.0, and separate registrations for the hypertext markup language (HTML) code for each of the four versions of the Platform (2.0 HTML, 4B HTML, 4C HTML, and 5.0 HTML). InfoDeli alleges infringement based on Defendants' reference to the Platform in the creation of three websites that function in a manner similar to the Platform, thus eliminating

1

Defendants' reliance on the Platform (and thus, InfoDeli's intellectual property) to serve their customers' needs.

## UNCONTROVERTED FACTS

The Platform is a database and web-based information delivery system that allows customers to order, manage, and distribute marketing materials and provide product fulfillment through an internet browser. InfoDeli owns the eight copyright registrations at issue, which are listed as follows: (1) InfoDeli 2.0 (Registration TXu 1-866-832; (2) InfoDeli 2.0 HTML (Registration TXu 1-909-698); (3) InfoDeli 4B (Registration TXu 1-959-265); (4) InfoDeli 4B HTML (Registration TXu 2-002-335); (5) InfoDeli 4C (Registration TXu 1-959-227); (6) InfoDeli 4C HTML (Registration TXu 2-002-336); (7) InfoDeli 5.0 (Registration TXu 1-866-831); and (8) InfoDeli 5.0 HTML (Registration TXu 1-905-562). InfoDeli 2.0, 4B, 4C, and 5.0 are registered as computer programs and InfoDeli 2.0 HTML, 4B HTML, 4C HTML, and 5.0 HTML are registered as HTML code underlying the corresponding version of the Platform. InfoDeli 2.0 and 2.0 HTML were registered in 2005, and the others were registered in 2013.

Breht C. Burri is the sole member of InfoDeli, LLC, and was the sole member of InfoDeli's predecessor company, Toobaroo. InfoDeli "creates and licenses Internet (or web-based) database software and systems." (Doc. #287). In 1997, Toobaroo began providing programming services for Defendant Boehringer Ingelheim Vetmedica, Inc. ("BIVI"). In 2002, Burri created the precursor software for the Platform. Toobaroo assigned its rights in the software to InfoDeli.

In 2003, InfoDeli launched the first iteration of the Platform to provide online fulfillment services[1] for BIVI customers. In 2005, the BIVI Literature Store launched, based on InfoDeli 2.0

---

[1] Generally, a product fulfillment services involve the printing, housing, and distribution of materials for clients.

and 2.0 HTML. The copyright registrations relevant to the BIVI Literature are InfoDeli 2.0 and 2.0 HTML, InfoDeli 4B and 4B HTML, and InfoDeli 5.0 and 5.0 HTML.

In 2009, Burri began working in conjunction with his family's business, a printing company, named WRI. As a part of this "joint venture," InfoDeli provided WRI with the use of the Platform for fulfillment services, and WRI began doing fulfillment for BIVI.

WRI's fulfillment services for BIVI would generally occur as follows: WRI would store promotional and marketing items relative to the products carried by BIVI; BIVI staff would order promotional materials, each with a corresponding alphanumeric item or package code, through the BIVI Literature Store; the Platform underlying the BIVI Literature Store would process the order; and WRI would ship the promotional items requested for distribution.

In 2011, Ceva began a relationship for fulfillment services with WRI, leading to the launch of the Ceva Literature Store. The copyright registrations relevant to the Ceva Literature Store are InfoDeli 2.0 and 2.0 HTML, InfoDeli 4C and 4C HTML, and InfoDeli 5.0 and 5.0 HTML. The Ceva Literature Store allowed WRI to provide fulfillment services to Ceva similar to the manner in which WRI provided fulfillment services to BIVI.

As part of fulfilment services for BIVI and Ceva, certain authorized users within BIVI and Ceva could have access to certain parts of the fulfillment Platform. The Platform's customized database scheme granted certain users at BIVI and Ceva certain rights and permissions, which involved assigning each user a certain level of authorization. For example, BIVI and Ceva sales representatives would have different permissions to access the Platform than would distributors, sales managers, senior management or system administrators.

Vectra is one of the products that Ceva carries and a product for which Ceva ran a coupon and/or sample program. For this coupon/sample program, InfoDeli in association with

3

WRI launched vectrarebate.com[2] in late 2012, which allowed Ceva customers to redeem coupons for Vectra online. Similar to WRI's other fulfillment services, Ceva customers could enter a coupon code and provide demographic information directly through vectrarebate.com, after which the website would process the particular coupon code and WRI would retrieve the requested product or discount from its warehouse, and then ship it to the Ceva customer who redeemed the coupon. The copyright registrations pertaining to vectrarebate.com are InfoDeli 2.0 and 2.0 HTML, InfoDeli 4C and 4C HTML, and InfoDeli 5.0 and 5.0 HTML.

In 2013, the relationship between InfoDeli and WRI began to break down, and WRI hired Engage to develop software to function in the same manner as the Platform. In connection with its work for WRI, Engage used Magento, an open source[3] ecommerce platform created by a third-party. Engage purchased certain Magento plug-ins / modules to enhance the function of the default Magento software. Engage used the modified version of Magento to create for BIVI, the BIVI Webstore, and for Ceva, the Ceva Webstore.

To make the BIVI Webstore and Ceva Webstore function, the user-facing parts of these projects needed to be associated with underlying data. WRI provided the data, and specifically underlying image files, for Engage's use in the BIVI Webstore and the Ceva Webstore, and Engage populated the new websites using image files of the products available from BIVI and Ceva.

WRI also hired Engage to create a rebate website for one of Ceva's products, Vectra. To create the VectraRebate website ("the CVRW"), Engage used a program other than Magento. WRI provided Engage the coupon codes previously used and put into circulation, as well as the

---

[2] Vectrapromo.com and vectrarebate.com would redirect to vectrarebate.com
[3] "Open Source software projects invite computer programmers from around the world to view software code and make changes and improvements to it. Through such collaboration, software programs can often be written and debugged faster and at lower cost than if the copyright holder were required to do all of the work independently." Jacobsen v. Katzer, 535 F.3d 1373, 1378 (Fed. Cir. 2008).

coupon codes already redeemed. Engage used the data from WRI to populate a new database, such that Ceva customers who had received coupons before the launch of the CVRW could redeem their coupons on the new website. Other underlying data prevented the re-use of previously redeemed coupon codes on the CVRW. After the CVRW launched, Defendants generated new coupon codes through a different method.

## LEGAL STANDARD

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

A party who moves for summary judgment bears the burden to establish that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). When considering a motion for summary judgment, the court must evaluate the evidence in the light must favorable to the nonmoving party and the nonmoving party is entitled to "the benefit of all reasonable inferences." Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991).

In the copyright context, "[s]ummary judgment is not favored, but when substantial similarity is the sole issue it is appropriate if the works are so dissimilar that reasonable minds could not differ as to the absence of substantial similarity in expression." Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 120 (8th Cir. 1987) (holding the creations at issue were not substantially similar in expression, and "any remaining apparent similarities are either noncopyrightable ideas, scenes a faire, or of an insubstantial nature.") ("Hartman II"); Walker v. Time Life Films, Inc., 784 F.2d 44, 48 (2d Cir. 1986), cert. denied, 476 U.S. 1159 (1986) (citing

Case 4:15-cv-00364-BCW   Document 505   Filed 12/18/17   Page 5 of 26

Warner Bros. v. Am. Broad. Co., 729 F.2d 231, 239 (1983) ("To determine whether the grant of summary judgment was proper, [the court] must decide whether the lack of substantial similiarity between the protectable aspects of the works was 'so clear as to fall outside the range of disputed fact questions' requiring resolution at trial.'")). Stated differently, "a district court may determine infringement as a matter of law on a motion for summary judgment either when the similarity concerns only noncopyrightable elements of plaintiff work, or when no reasonable trier of fact could find the works substantially similar." Walker, 784 F.2d 48 (citing Warner Bros., 720 F.2d at 240).

## ANALYSIS

Defendants argue they are entitled to summary judgment on InfoDeli's copyright infringement claim because there is no genuine issue of material fact that, as a matter of law, Defendants did not copy protectable elements of the Platform. Specifically, Defendants assert that the aspects of the Platform allegedly infringed upon by the BIVI Webstore, Ceva Webstore, and the CVRW are not expressive aspects of the Platform, such that even assuming copying occurred, no copyright infringement occurred. Defendants further argue any infringement of protectable elements of the Platform, if any, was de minimis, and assert a right to modify the BIVI Literature Store, as well as a right to access the BIVI Literature Store and Ceva Literature Store after March 12, 2014.

The Copyright Act protects "original works of authorship fixed in any tangible medium of expression," including literary works. 17 U.S.C. § 102(a). Computer programs, like the ones at issue in this case, are considered literary works and are thus copyright protectable to the same extent as other original manners of expression. H.R. Rep. No. 1476, 94th Cong., 2d Sess. 54. Therefore, the fundamental principle that copyright does not protect an idea, but rather only the

expression of the idea, applies to the eight registrations for which InfoDeli alleges infringement. Comput. Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 703 (2d Cir. 1992).

"[T]he computer programmer's expression of an idea merits protection, but the actual processes or methods embodied in the program are not within the scope of copyright law." eScholar, LLC v. Otis Educ. Sys., Inc., No. 04 Civ. 4051(SCR), 2005 WL 2977568, at *8 (S.D.N.Y. 2005) (citing H.R. REP. NO. 1476, 94th Cong., 2d Sess. 54, reprinted in 1976 U.S.C.C.A.N. 5659, 5670. "[L]evels of a program that are most abstract, such as its main purpose, are unprotectable ideas." eScholar, 2005 WL 2977569, at *17 (citing Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 836 (10th Cir. 1993).

By contrast, a computer program's literal elements, like its source code and its object code,[4] "are almost always found to be protectable expression." eScholar, 2005 WL 2977569, at *17 (citing Altai, 982 F.2d at 702). Additionally, a program's non-literal elements[5], like "the program's structure, including general flow charts and the more specific organization of the program, including inter-modular relationships parameter lists, and macros" may also be entitled to copyright protection, "depend[ing] on whether, on the particular facts of each case, the component in question qualifies as an expression of an idea, or an idea itself." Id. (citing Johnson Controls Inc. v. Phoenix Control Sys., Inc., 886 F.2d 1173, 1175 (9th Cir. 1989); Gates Rubber, 9 F.3d at 702 (explaining that "intermediate levels of abstraction, such as structure, sequence,

_____

[4] "The literal elements of the program are the source code and object code." eScholar, 2005 WL 2977569, at *8 n.7. Source code is "the spelled-out program commands that humans can read and a series of instructions written in a computer language . . . ." eScholar, 2005 WL 2977569, at *8 n.7 (citations omitted). Object code is "the binary language comprised of zeros and ones through which the computer directly receives its instructions," which "dictates how a computer behaves." eScholar, 2005 WL 2977569, at *8 n.7 (citations omitted).

[5] "The non-literal elements include the program's structure and the various steps a programmer employs prior to actually writing the instructions or source code." eScholar, 2005 WL 2977569, at *8 (citing Cognotec Servs., Ltd. v. Morgan Guar. Tr. Co. of N.Y., 862 F. Supp. 45, 49 n.3 (S.D.N.Y. 1994)).

7

organization, and the like, are less prone to generalizations" about whether they are non-protectable ideas or protectable expression).

Although "[d]rawing the line between idea and expression in the computer programs context is particularly complicated and tricky business," in no event is a computer program entitled to more copyright protection than any other tangible meaning of expression. eScholar, 2005 WL 2977569, at *18 (citing Altai, 982 F.2d at 704; Baker v. Selden, 101 U.S. 99, 104 (1879)). As a result, InfoDeli's infringement claim is necessarily limited by the following general copyright principles. H.R. Rep. No. 1476, 94th Cong., 2d Sess. 54, reprinted in 1976 U.S.C.C.A.N. 5659, 5670.

First, copyright protection extends only to a work's original aspects; that is, only the aspects that were independently created and not copied, and have some degree of creativity, are protected in copyright. Feist Publn's Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 345 (1991). Second, facts are discovered and not created, such that they are available for public use and no one may claim authorship. Id. at 347.

Third, while no one may claim ownership of facts, a database or "factual compilation is eligible for copyright if it features an original selection or arrangement of facts," "as distinguished from the preexisting material" underlying the database. Id. at 345, 359. Fourth, though a method of operation, which instructs the computer to perform a certain function or the user to operate the computer in a certain way, is not protectable in copyright, the instructions themselves are copyrightable. eScholar, 2005 WL 2977569, at *18.

Fifth, under the merger doctrine, the expression of an idea which is the only way to express that particular idea is not entitled to copyright protection. Oracle Am., Inc. v. Google Inc., 750 F.3d 1339, 1360 (Fed. Cir. 2014). In the computer context, merger means that if using a

8

specific code sequence is the only way to make the computer perform a certain function, then that specific code sequence is not copyright protected, even if another person previously claimed copyright over that specific code sequence. Id.

Finally, the scenes a faire doctrine excludes from copyright protection expressive elements related to a particular theme when those expressive elements are the essence of that theme, in that the theme will be inadequately communicated without the use of those particular expressive elements. Oracle, 750 F.3d at 1363 (citing Apple Comput., Inc. v. Microsoft Corp., 35 F.3d 1435, 1444 (9th Cir. 1994). "In the computer context, the scenes a faire doctrine denies protection to program elements that are dictated by external factors such as the mechanical specifications of the computer on which a particular program is intended to run or widely accepted programming practices within the computer industry." Id. (citing Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 964 (2d Cir. 1997). InfoDeli's copyright infringement claim is subject to these principles.

"In order to prevail on a copyright infringement claim, [InfoDeli] must be able to prove that it owns valid copyrights in the works infringed," and "that the defendant has copied, displayed, or distribute protected elements of the copyrighted work without authorization." Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1039, 1042 (8th Cir. 2003) (citing Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 941 (8th Cir. 1992)); Kennedy v. Gish, Sherwood & Friends, Inc., 143 F. Supp. 3d 898, 904 (8th Cir. 2015) (citing Mulcahy v. Cheetah Learning LLC, 386 F.3d 849, 852 (8th Cir. 2004)).

With respect to the first element, InfoDeli is entitled to the inference of validity and ownership of the Platform because InfoDeli holds the certificates of registrations in the Platform's eight underlying copyrights. 17 U.S.C. § 410(c) ("In any judicial proceedings the

9

certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

In light of this statutory presumption, the copying element is dispositive. InfoDeli argues Defendants' summary judgment motion must be denied because Defendants have conceded copying. With all reasonable factual inferences drawn in InfoDeli's favor, the Court, *for purposes of this motion only*, analyzes the second element of InfoDeli's copyright infringement claim from the perspective that copying did occur.

However, "[n]ot all copying is actionable . . . : it is a constitutional requirement that plaintiff bringing an infringement claim must prove 'copying of constituent elements of the work that are original." Kohus v. Mariol, 328 F.3d 848, 855 (6th Cir. 2003) (citing Feist, 499 U.S. at 361). Thus, even if InfoDeli is entitled to the reasonable factual inference that Defendants copied off the Platform, InfoDeli is not entitled to any inference that any copying that occurred was legally significant. Stated differently, the only copying that matters for purposes of a copyright infringement claim is the copying of protectable elements, and the scope of the Platform's protection is limited by general copyright principles. Schoolhouse, Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002).

It is for these reasons that the Court is unpersuaded by InfoDeli's argument that Defendants enjoyed an "enormous headstart" with respect to the BIVI Webstore, Ceva Webstore, and the CVRW. The Feist court considered and rejected this argument:

> It may seem unfair that much of the fruit of the compiler's labor may be used by others without compensation. As Justice Brennan has correctly observed, however, this is not "some unforeseen byproduct of a statutory scheme." It is, rather, the essence of copyright, and a constitutional requirement. The primary objective of copyright is not to reward the labor of authors, but to promote the Progress of Science and useful Arts." To this end, copyright assures authors the

right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work. This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship. [. . . .] This result is neither unfair nor unfortunate. It is the means by which copyright advances the progress of science and art.

449 U.S. at 349 (citations and quotations omitted).

The Court thus considers whether, with all reasonable factual inferences drawn in InfoDeli's favor, Defendants are entitled to summary judgment on the basis that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law that they did not copy any copyright-protected aspects of the Platform.

Where, as in this case, the record does not contain direct evidence of copying of copyright-protected elements, a plaintiff makes a prima facie showing by establishing that: (1) the defendant had access to the work allegedly infringed; and (2) substantial similarity, both in idea and expression, between plaintiff's work allegedly infringed upon, and defendant's work that is allegedly infringing. Hartman II, 833 F.2d at 120.

For purposes of the instant motion, Defendants concede they had access to the Platform. Therefore, Defendants' motion for summary judgment turns on the issue of substantial similarity among the Platform's relevant copyrights and the BIVI Webstore, the Ceva Webstore, and the CVRW.

"Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 120 (8th Cir. 1987) indites the law in th[e Eighth] Circuit pertaining to substantial similarity." Nelson v. PRN Prod., Inc., 873 F.2d 1141, 1143 (8th Cir. 1989). In Hartman II, the plaintiff alleged infringement of "copyrighted graphics and script entitled 'The Adventures of Rainbow Island,'" by the defendant's animated character, Rainbow Brite. 833 F.2d at 119. Although the infringement at issue in Hartman II

involved graphics and story lines, the Eighth Circuit set forth the following test to assess substantial similarity in the context of copyright infringement:

> Determination of substantial similarity involves a two-step analysis. There must be substantial similarity not only of the general ideas but of the expressions of those ideas as well. First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works. Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression.

Hartman II, 833 F.2d at 120 (citations and quotations omitted) (finding lack of infringement where plaintiff's "work consisted almost entirely of noncopyrightable general themes or ideas and in any event that the expression . . . of any similar ideas did not satisfy the intrinsic test of expression.").

The first step of this test analyzes similarity of ideas. Id. The extrinsic test "focuses on any alleged similarities in objective details such as a comparison of the plot, the theme, the dialogue, mood, setting, pace and sequence." Hartman v. Hallmark Cards, Inc., 639 F. Supp. 816. 819 (W.D. Mo. 1986) ("Hartman I"). "Because this extrinsic test depends on such objective criteria such as the type of artwork involved, the materials used the subject matter, and the setting for the subject, expert opinion evidence may be considered." Rottlund Co., Inc. v. Pinnacle Corp., 452 F.3d 726, 731 (8th Cir. 2006). Notably, "a similarity of idea presents no infringement question; only when defendants own expression descends so far into what is concrete in a work as to invade its expression does he violate the plaintiff's right and infringe the copyright." Hartman I, 639 F. Supp. at 821.

The second step of the test analyzes similarity of expression. Id. at 819. This intrinsic step compares "the total concept and feel of the works," which involves "treatment, details, scenes, events, and characteristics." Id. The instrinsic test is "the essence of infringement" and "depends

upon a side by side comparison of the copyrighted material . . . by the observations and impressions of the average reasonable reader and spectator." Id. (citations and quotations omitted); Rottlund Co., 452 F.3d at 731 ("Expert opinion and analytical dissection are not appropriate to establish or rebut similarity of expression.").

"The difficult task in an infringement action is to separate the nonprotected idea from the protected expression." Hartman I, 639 F. Supp. at 19. This difficulty is perhaps exacerbated in the context of computer software, which "ordinarily contains both copyrighted and unprotected or functional elements." Rouse v. Walter & Assocs., L.L.C., 513 F. Supp. 2d 1041, (2007) (citing Sony Comput. Entm't, Inc. v. Connectix Corp., 203 F.3d 596, 599 (9th Cir. 2000)). Although not expressly adopted by the Eighth Circuit, "[t]he most comprehensive test utilized by courts [in the context of software infringement] is known as the Abstraction-Filtration-Comparison test, which essentially dissects the software down to its varying levels, filters out the nonprotectable elements, and examines the remaining elements." Id. (citing Kohus, 328 F.3d at 855; Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d at 842-45; Altai, 982 F.2d at 702). In the seeming absence of controlling authority directly on point, the Court relies on persuasive authority, and the parties' apparent agreement that application of the abstraction-filtration-comparison test is proper in this case.

First, the abstraction step separates ideas from expressions. eScholar, 2005 WL 2977569, at *24. This separation requires analytical "dissect[ion] of the allegedly copied program's structure and isolat[ion of] each level of abstraction contained within it." Id. (citing Altai, 982 F.2d at 707. Notably, "in cases where the copyright holder presents the court with a list of features that it believes to be protectable, the court (i.e. original and outside of 17 U.S.C. §

102(b)), the court need not abstract other such features." <u>eScholar</u>, 2005 WL 2977579, at *24 (citing <u>MiTek Holdings Inc. v. Arce Eng'g Co., Inc.</u>, 89 F.3d 1548, 1555 (11th Cir. 1996).

After abstraction is filtration. <u>eScholar</u>, 2005 WL 2977579, at *24. "The filtration step requires the court to examine the material gleaned from the abstraction test to determine if it is protectable." <u>Id.</u> A court, at each abstraction level, must determine whether a feature's inclusion is subject to copyright protection. <u>Altai</u>, 982 F.2d at 707. Stated differently, each allegedly infringed feature must be examined to confirm that it is not an idea, fact, dictated by efficiency so as to be necessary (merger), or required by factors external to the program (scenes a faire). <u>Id.</u>

After filtration of unprotected aspects, then the work allegedly infringed is compared with the work allegedly infringing. <u>Id.</u> at 710. At the comparison step, "the court's substantial similarity inquiry focuses on whether the defendant copied any aspect of this protected expression, as well as an assessment of the copied portion's relative importance with respect to the plaintiff's overall program." <u>eScholar</u>, 2005 WL 2977579, at *26.

In this case, InfoDeli alleges infringement of the non-literal elements of the Platform. (Doc. #284). "Non-literal components include the software's function, structure, sequence, organization, and the user interface." <u>Two Palms Software, Inc. v. Worldwide Freight Mgmt., LLC</u>, No. 4:10-cv-1045(CEJ), 2012 WL 2419927, at *2 (E.D. Mo. June 26, 2012).

The parties agree that the opinion of InfoDeli's designated expert, Jason Eaddy, is dispositive. Eaddy opines that the Platform was infringed by Defendants, relative to the Platform's structure and sequence, the underlying database schema information, and data, to the extent the data is protectable. Further, with respect to the CVRW only, Eaddy opines an additional infringing use of an image file. For purposes of extrinsic analysis / abstraction step,

the Court considers Eaddy's proposed testimony to isolate the aspects of the Platform upon which InfoDeli alleges infringement.

### 1. BIVI Webstore

Defendants argue they are entitled to summary judgment on InfoDeli's claim with reference to the BIVI Webstore for four reasons. Defendants argue that despite InfoDeli's broad allegations that the BIVI Webstore infringes on the Platform's schema, the material facts establish only four aspects of the Platform that also appear in the BIVI Webstore, and those four aspects are not subject to copyright protection. The four aspects of the Platform are these: (1) the field names used in the Platform's "products table"; (2) the names of files containing images of products identified by a particular product number with .jpg appended ("product_id" values); (3) the Platform's access rights values; and (4) the Platform's implementation of access rights.

The Court first must dissect the Platform's structure to assess its levels of abstraction. Eaddy opines that InfoDeli 4B is infringed by the BIVI Webstore because InfoDeli 4B defines a schema for a products table. "Tables are the top level grouping data within the schema of a relational database." (Eaddy Report) "A relational database is an ordered collection of data, arranged via relationships between the data." (Eaddy Report) "This arrangement is defined as the database's schema, which defines the model by which data is stored in the tables of the database." (Eaddy Report) "If two databases serve the same function, their schemas will undoubtedly have similarities as a result." (Eaddy Report). Eaddy further states, "[a]mong other things, database designers make creative choices regarding the names of tables, fields contained within tables, names of those fields, the type of data stored within a field, and the order in which the fields are defined."

Case 4:15-cv-00364-BCW   Document 505   Filed 12/18/17   Page 15 of 26

InfoDeli argues that the Court must take a broad view of its infringement claim because Defendants used data compiled and organized by InfoDeli, resulting in infringement of the Platform's schema. However, the issue of substantial similarity requires the Court to consider the Platform in terms of "levels of abstraction," and the Court may rely on a plaintiff's "list of features that it believes to be protectable." eScholar, 2005 WL 2977579, at *26. In this case, Eaddy's report sets forth infringement of the Platform's schema, database arrangement, and protectable data. These broad "abstractions" are deconstructed into the four objective details identified in Defendants' motion for summary judgment. With all reasonable inferences drawn in InfoDeli's favor, each of these four aspects is an original expression to which copyright protection might apply. Therefore, the Court applies the filtration and comparison analysis for these four aspects of the Platform.

### a. Field Names

The Platform's products table has 64 field names, like product_id, category_id, document_group, type_id, and type, that are specifically associated with and related to certain defined data. The 64 field names describe what data corresponds with which each field. The BIVI Webstore also uses a products table with field names associated with certain underlying defined data, and 8 of the field names in the products table are the same as 8 of the 64 field names used in the Platform products table.

In this case, the 8 field names at issue are column headers: item_number; packaging; premium_item_flag; type_id; type; brand; brand_name; and product_id. These field names are descriptive of the data that appears under each column heading. If a word describes a function, and that word is the only or most efficient way to refer to that function, then the expression

merges with the idea and the word is not protectable in copyright. Schoolhouse, 275 F.3d at 729. Therefore, the Platform's products table field names are not protectable in copyright.

If, however, the Platform's 64 field names were copyrightable, only 8 of them appear in the BIVI Webstore. Even if the BIVI Webstore uses 8 of the same field names, such overlap is not substantial. Id. Moreover, to the extent InfoDeli argues that the arrangement of the field names in the Platform's products table reflects arrangement of the underlying data, the BIVI Webstore's field names do not appear in the same order and/or arrangement, such that a reasonable mind would not consider the two products tables substantially similar in expression.

### b. Product_id Values

The Platform's file names for product images are identified by a particular number that corresponds with the product with .jpg at the end. InfoDeli does not claim infringement of the product images themselves; rather, the claim is that the BIVI Webstore co-opted the product_id value corresponding with a certain product.

To the extent Defendants argue the product_id value system is not subject to copyright protection as a method of operation, the Court is unpersuaded. While true that a method of operation is excluded from copyright protection, this principle means that InfoDeli cannot claim copyright over using product numbers in image file names as an organizational structure. Toro Co. v. R&R Prods. Co., 787 F.2d 1208, 1212 (8th Cir. 1986) (citing 17 U.S.C. § 102). However, copyright protection may still apply to the file names and/or format themselves, and their correlation with a particular product. eScholar, 2005 WL 2977569, at *19

The uncontroverted facts establish that the Platform's image file names consist of a number that corresponds with a product that is identified by the number appearing in the image file name, with .jpg appended. The record does not suggest that a particular product type is

17

assigned a particular number, or that a particular type of number is correlated with a certain category of products. As a result, the Platform's image file names consisting of a number that corresponds with a product number does not bear the requisite level of creativity to give rise to copyright protection. <u>Toro</u>, 787 F.2d at 1213. Without record evidence suggesting that the Platform's product number and file name arose from a particular system beyond one that counted the products available through the Platform, the Court concludes that the Platform's image file names are akin to the alphabetical arrangement at issue in <u>Feist</u>. 499 U.S. at 364 (holding alphabetical arrangement of subscriber information lacked a de minimis quantum of creativity to qualify for copyright protection). Even if InfoDeli's product_id values used a meaningful pattern, is not clear from the record. Thus, InfoDeli's product_id values as file names are not protected in copyright.

> ### c. Access Rights Values

The Platform has an access rights feature that restricts what products a user can see as available and the max number a user can order. This feature of the Platform is dictated by two columns in the "access_levels," table: the "access_group" column, and the "access_id" column. The access_group column describes the type of user, which dictates which category promotional products are displayed to each user type. The values in the access_group column, which dictate which products show, include user types like "BI Pet Admin," and "BI Cattle Sales." The access_id column are values that appear as numerals, which corresponds with a particular access_group user type. The access_group and access_id are combined in the customer_group_code field, which is another column in the access_level table. InfoDeli's assertion, based on Eaddy's report, is that all of the values appearing in the BIVI Webstore's

customer_group_code column, which are a combination of the access_group value and access_id value, match the values in the Platform's access_levels table.

With respect to the filtration step, the Court refers back to 17 U.S.C. § 102, which provides copyright protection to original works of authorship that have a minimal degree of creativity. Even in the context of a database which is considered a compilation, the protectable aspects are limited to the arrangement and coordination of the underlying data, such "that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. While a factual compilation may be eligible for copyright if it has an original selection or arrangement of facts, the copyright protection is limited only to the particular arrangement; the protection never extends to the facts themselves. Feist, 499 U.S. at 345. However, the particular arrangement or coordination to which copyright protection might apply must meet the prerequisites of having been independently created by the compiler and having a minimum degree of creativity. Id. at 348.

In this case, the access_group values are descriptive of the divisions of BIVI's products, and the access_id values are numerical. For copyright protection to potentially apply, short words or phrases must be creative. Oracle Am., Inc. v. Google Inc., 750 F.3d 1339 (2014). Additionally, sequential Arabic numbers are not subject to protection. W. Publ'g Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1226 (8th Cir. 1986). In isolation, none of the access_levels table values are original works of authorship developed through creative means. Id. The Court still must consider, however, whether the specific arrangement and coordination of the access_levels table and underlying data of the Platform is organized in a manner that might be copyright protected. Oracle, 750 F.3d at 1362 (noting that a compilation made of nonprotectable elements can enjoy copyright protection).

In disputing Defendants' uncontroverted facts, InfoDeli copied the Platform's access_levels table as set forth in Eaddy's report. While Eaddy opines that the structure and sequence of InfoDeli's access_levels table was infringed upon, InfoDeli's response to Defendants' statement of material facts does not create a genuine issue of fact. While the table shows that the BIVI Webstore's customer_group_codes match the Platform's in 26 out of 30 instances; the access_group and access_id values are not aspects for which copyright protection applies and InfoDeli has not put forth evidence, beyond conclusory assertions, that the relationship and arrangement among the data in the access_levels table is minimally creative and original, as opposed to dictated by the customer and the products available at any given time. Defendants are entitled to summary judgment on this point.

### d. Quantity Value Implementation

The Platform's "my_maximumorderedquantity_items" table associates a quantity value with each customer_group_id field. The function of this quantity value in the Platform is to limit the amount of a product available to a specific user. InfoDeli refers to this quantity limit and relationship among data tables as the quantity_value implementation. In the BIVI Webstore, the same function is referred to as the "access_factor implementation."

Defendants argue InfoDeli may not claim copyright protection over limiting the amount of products that are available for a specific user to order. InfoDeli agrees that the idea of limiting the amount of products that are available for a specific user is not subject to copyright protection, but InfoDeli's infringement claim relative to the quantity_value feature relates to the Platform's system of association between the user and quantity data.

"Because computer programs can have creative elements but are also fundamentally functional, software tends to enjoy relatively weak protection and is subjected to a high standard

of similarity before there will be infringement. For example, a plaintiff is not entitled to copyright protection for features such as calculators and other methods of operation." Wyatt Tech. Corp. v. Malvern Instruments Inc., No. CV 07-08298 DDP (MANx), 2009 WL 2365647, at *4 (C.D. Cal. July 29, 2009) (citing 17 U.S.C § 102), aff'd, 2013 WL 2099193 (9th Cir. 2013)). In the Court's view, the Platform's quantity_value feature is data associated with a particular user type. To the extent the quantity of products was subject to change depending on user type, this idea is not amenable to copyright. The record does not suggest any independent creative choice associated with the number of products available to each user type or customer_group_id. Further, despite InfoDeli's argument that the quantity_data feature is protectable expression, as opposed to an unprotectable idea, record evidence does not establish how the association of a quantity limit with a particular user type is protectable expression. Though Defendants bear the burden to establish a right to summary judgment, InfoDeli's argument that the Platform's "expression of how Plaintiffs' InfoDeli system implements that idea is protectable" lacks meaningful evidentiary support rendering it conclusory in nature. The Platform's quantity_value feature is not protectable in copyright.

## 2. Ceva Webstore

Defendants argue they are entitled to summary judgment on InfoDeli's claim with reference to the Ceva Webstore based on its use of field names in the products table, product_id values to identify image files, and access_factor implementation. Defendants set forth the same arguments in favor of summary judgment relative to the Ceva Webstore as relative to the BIVI Webstore in the section above. For the same legal reasons that the Court concludes Defendants are entitled to summary judgment to the extent InfoDeli alleges infringement relative to the BIVI Webstore, the same is true with respect to InfoDeli's allegations of infringement relative to the

Ceva Webstore. Because there is no genuine issue material fact that the Platform's field names, product_id values as file names, and quantity_value implementation are not entitled to copyright protection, Defendants are entitled to summary judgment on InfoDeli's copyright infringement claim relative to the Ceva Webstore.

### 3. Ceva Vectra Rebate Website ("CVRW")

Defendants argue they are entitled to summary judgment on InfoDeli's copyright infringement claim relative to the CVRW. Like Defendants' arguments relative to the BIVI and Ceva Webstores, Defendants argue that InfoDeli's claim that the Platform is infringed by the CVRW is improperly based on unprotectable aspects of the Platform. These unprotectable aspects as set forth in Defendants' motion are the following: (1) the field names, structure, and values in the Platform's "marketing_data" and "resellers" table; (2) a marketing image created by InfoDeli for use with vectrarebate.com; and (3) the user display of vectrarebate.com.

As with the BIVI and CEVA webstores, the Court considers the Platform's levels of abstraction, relative to InfoDeli's vectrarebate.com. The Court draws all reasonable inferences in InfoDeli's favor, in considering the Platform's allegedly infringed features as identified in Eaddy's expert report and isolated in a meaningful way by Defendants, through the filtration and comparison steps to determine substantial similarity.

### a. Marketing Data Table and Resellers Table

The vectrarebate.com website, which depends on InfoDeli 4C and 5.0, relies on a "marketing_data table." The marketing data table sets forth 29 fields upon which InfoDeli alleges infringement by the "coupon_redemption table" underlying the CVRW. The Platform's marketing data table and the CVRW coupon redemption table each contain data about which Ceva customer offered coupons for Vectra, who redeemed the coupons, and associated

marketing data. As set forth in Eaddy's report, the CVRW's coupon_redemption table contains 29 fields containing field names that are arranged in the same manner as the vectrarebate.com marketing data table.

Defendants assert that the marketing data table is outside the scope of the Platform registrations allegedly infringed because the marketing data table is made up data across several tables within different iterations of the Platform, such that the marketing data table is a new arrangement, selection, and coordination of underlying data that is not protected by any particular copyright registration. The Court finds this argument persuasive, since copyright registration may never extend to data, but only to the data's arrangement. Feist, 499 U.S. at 349-50. However, because InfoDeli is entitled to the benefit of all reasonable factual inferences, the Court considers filtration and comparison relative to the marketing_data table because even if the table combines aspects of more than one registration, InfoDeli is entitled to an inference of validity for each registration from which the marketing_data table may be sourced.

The marketing_data table uses field names like user_id, ship_city, ship_phone, linitemid,quantity, model_no, and pet_id. Though the field names have underlying associated data, the field names are descriptive of the marketing information underlying that field. As with the field names used in the BIVI and Ceva Literature Stores, the field names in the marketing_data table, in spite of each name's associated data, are not copyrightable by operation of the merger doctrine. Schoolhouse, 275 F.3d at 729. Similarly, the Court finds the field names and associated data in the Platform's reseller's table are not entitled to copyright protection. Id.

To the extent InfoDeli alleges infringement relative to the Vectra coupons offered, distributed, or redeemed, the record does not suggest the coupon codes were the product of InfoDeli's independent creation. Rather, Ceva offered Vectra coupons to its customers, for which

23

InfoDeli designed a recordkeeping system. Defendants are entitled to summary judgment with respect to Ceva's coupon codes. To the extent InfoDeli alleges infringement of the Platform's recordkeeping system relative to the Vectra coupon codes, InfoDeli has not put forth evidence beyond conclusory assertions that the Platform's functionality relative to the coupon codes is infringed by the CVRW. The purpose of copyright protection is to not to reward an author's "sweat of the brow" or to protect against a competitor's head start, but rather to encourage advancement of the science and useful arts. Feist, 499 U.S. at 350.

### b. Marketing Image

The Vectrarebate website display included an image of horizontal row of Vectra tubes that InfoDeli asserts was improperly used in the CVRW. A copyright registration extends to a screen display or image only if the materials submitted include a visual reproduction of the image expression. Schultz v. Lost Nation Booster Club, No. 3:13-cv-68-RAW, 2014 WL 10038777 (citing 37 C.F.R. § 202.20(c)(2)(vii)(C) ("[w]here the application to claim copyright in a computer program includes a specific claim in related computer screen displays, the deposit . . . shall consist of: (1) [v]isual reproductions of the copyrightable expression in the form of printouts, photographs, or drawings . . . .")). None of the Platform's underlying registrations include an image display. Even assuming Defendants copied or used the marketing image, the image is not within the scope of any of the eight registrations allegedly infringed. Defendants are entitled to summary judgment with respect to the marketing image.

### c. VectraRebate Display

Defendants assert they are entitled to summary judgment on the basis that "screen captures" of vectrarebate.com copied on March 12, 2014 did not amount to infringement because the website's user display is not included in the 4C HTML copyright registration.

Based on the uncontroverted facts, the scope of the 4C HTML copyright registration is "new and revised HTML code." HTML code is programming language that dictates "the visual appearance of a website." ACTONET, Ltd. v. Allou Health & Beauty Care, 219 F.3d 836, 847 (8th Cir. 2000). The 4C HTML registration is limited to the Platform's new and revised HTML code, and does not claim ownership over a website. While, in general, a user-facing display is protectable as a non-literal aspect of a computer program, the Platform's display, in any iteration, is not at issue in this case. eScholar, 2005 WL 2977579, at *17. InfoDeli does not allege Defendants copied HTML code; rather, InfoDeli asserts Defendants made copies of how that underlying HTML code was perceived by someone who visited vectrarebate.com. With all reasonable inferences in InfoDeli's favor, and assuming Defendants took screen captures of the vectrarebate.com website with the intent to replicate it in a competing website, there is no genuine issue of material fact that the 4C registration does not claim ownership in a website, and the record does not establish that Defendants copied any HTML code or otherwise infringed the eight Platform registrations. For all of these reasons, Defendants are entitled to summary judgment with respect to InfoDeli's claim of copyright infringement as it relates to the CVRW.

Consequently, in light of the applicable summary judgment standard and the record, Defendants are entitled to summary judgment with respect to InfoDeli's claim of copyright infringement. Even if Defendants copied the Platform, the aspects of the BIVI Webstore, Ceva Webstore, and the CVRW that InfoDeli asserts were taken from the Platform are not entitled to copyright protection. Because the Court grants Defendants' motion for summary judgment on the basis that the record does not support a conclusion of substantial similarity among protectable elements of the Platform and the BIVI Webstore, Ceva Webstore, and the CVRW, the Court declines to consider Defendants' remaining arguments. Accordingly, it is hereby

ORDERED Defendants' Motion for Summary Judgment on InfoDeli's claim for copyright infringement (Doc. #398) is GRANTED.

IT IS SO ORDERED.


Dated: <u>December 18, 2017</u>          /s/ Brian C. Wimes_____
                                        JUDGE BRIAN C. WIMES
                                        UNITED STATES DISTRICT COURT