# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| INFODELI, LLC and BREHT C. BURRI,<br><br>Plaintiffs,<br><br>v.<br><br>WESTERN ROBIDOUX, INC.,<br>CINDY BURRI, BRIAN BURRI, PETER BURRI, CONNIE BURRI,<br><br>ENGAGE MOBILE SOLUTIONS, LLC.,<br>DARRIN CLAWSON. MATTHEW BARKSDALE. NATHAN HALEY, JAMES ROBERTSON,<br><br>CEVA ANIMAL HEALTH, LLC.,<br>SHANE FAIRCHILD,<br><br>BOEHRINGER INGELHEIM VETMEDICA, INC.,<br><br>ELIZABETH CORBIN,<br><br>SAI CHOW and ANTONIO LOVE<br>Defendants | )<br>)<br>)<br>)<br>)<br>) Case No. 4:15-cv-00364-BCW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## EXPERT REPORT OF DANIEL S. LEVY, Ph.D.
March 18, 2019
Privileged and Confidential

# Contents

1) STATEMENT OF RESEARCH .................................................................................. 1

2) SUMMARY OF FINDINGS .................................................................................... 2

3) QUALIFICATIONS ................................................................................................. 3

4) INFORMATION RELIED UPON ........................................................................... 4

5) BACKGROUND ...................................................................................................... 4

6) ANALYSIS .............................................................................................................. 6

    A. Value of InfoDeli Software and Databases: Software and Database Component ............. 7

      i.   Software and Database Construction and Installation Costs ............................................... 8

      ii.  Cost to Maintain InfoDeli Relationship during Software Construction and Installation ... 9

      iii. Value of InfoDeli Software and Databases: Interim InfoDeli Continuity Component .... 11

    B. Damage from Tortious Interference ....................................................................... 13

    C. Damage from Breach of Contract .......................................................................... 15

APPENDIX 1 – INFORMATION RELIED UPON .................................................... 17

APPENDIX 2- CURRICULUM VITAE ...................................................................... 18

APPENDIX 3 – VALUE OF INFODELI PLATFORM AND EQUAL SHARE
COMPENSATION: 14-15 MONTHS .......................................................................... 22

## 1) Statement of Research

I have been retained by counsel for InfoDeli, LLC and Breht C. Burri (together "InfoDeli") in the matter of *InfoDeli, LLC et al v Western Robidoux, Inc. et al*, Case No. 4:15-cv-00364-BCW. It is my understanding that Plaintiffs have brought claims related to tampering with computer data under RSMo. 569.095, claims related to tortious interference with contract and tortious interference with prospective economic advantage, and claims related to breach of contract.[1] It is my understanding that InfoDeli claims (1) that Darrin Clawson, Matthew Barksdale, Nathan Haley, James Robertson, Elizabeth Corbin, Sai Chow, Tony Love, Connie Burri, Brian Burri, Cindy Burri, Peter Burri, Matthew Barksdale, Shane

---

[1] InfoDeli, LLC. et al. v. Western Robidoux, Inc. et al, Case No. 4:15-cv-00364-BCW, Second Amended Complaint, Third Claim for Relief and Fourth Claim for Relief (Amended)("SAC"). For Computer Tampering, see for example SAC ¶¶ 190-221. For tortious interference, see for example SAC ¶¶ 212-227. See for example for breach of contract, SAC ¶¶ 228-239.

1

Fairchild, Boehringer Ingelheim Vetmedica, Inc. ("BIVI"), CEVA Animal Health, LLC ("CEVA"), Engage Mobile ("Engage"), and Western Robidoux Inc. ("WRI") ("Defendants-A") tampered with computer data, (2) that Connie Burri, Brian Burri, Cindy Burri, Peter Burri, CEVA, and Shane Fairchild ("Defendants- B") tortuously interfered with contracts and with prospective economic advantage Mr. Breht Burri had with WRI, for services related to BIVI and CEVA,[2] and that (3) BIVI, CEVA, WRI and Shane Fairchild ("Defendants- C") violated the Terms of Use of the InfoDeli system in furtherance of replicating the InfoDeli software.

Related to these claims, I have been asked to provide an opinion about the value of the software and databases that InfoDeli, LLC provided to CEVA and to BIVI, as of approximately March 2014. In addition, I have been asked to estimate the value of the ongoing business relationship Breht C. Burri had with CEVA and BIVI, as of approximately March 2014.

## 2) Summary of Findings

A range of values can be estimated for the value of the InfoDeli software and databases used by WRI to provide services and information to CEVA and BIVI. Although WRI, CEVA, and BIVI obtained high benefits from using the InfoDeli software, a more conservative estimate of the value of the InfoDeli software and databases is the cost required to replace both the InfoDeli software and databases from scratch, without the advantage of observing the program functionality or capturing the content of the website source code from the InfoDeli website, database schema and design, database entries, and graphical content files. I have constructed a range of scenarios of the costs required to perform this task. The duration over which such software construction and installation is performed has a significant effect on the cost of the software. Reduction in the time to develop and install software can greatly increase the cost. It is my understanding that not only was the InfoDeli platform (including software, databases, stored content (e.g., graphical content) and schemas) of great value to WRI, but that as circumstances unfolded, WRI had the urgent need (described as a crisis in the Engage proposal to WRI[3]) to replace the InfoDeli platform

---

[2] SAC, Third Claim for Relief and Fourth Claim for Relief (Amended).
[3] Deposition of Cindy R. Burri, September 27, 2016, Exhibit 5.

2

within weeks or a few months. As discussed in greater detail below, a conservative estimate of the cost required to construct the InfoDeli software, databases and schemas in the time required is $2,548,383 to $2,844,725.

In addition, I understand that plaintiff believes that the actions of Defendants-B tortuously interfered with its relationship with WRI in service of BIVI and CEVA, the value of which plaintiff claims would be equal to that of each of the Burri brothers' compensation on a yearly basis. The value of that compensation from April 1, 2014 to April 31, 2018 would have been $2,334,680.

Also I understand that plaintiff believes that actions of Defendants-C breached the terms of use of the InfoDeli software. As discussed in greater detail below, a conservative estimate of the cost required to construct the InfoDeli software, databases and schemas in the time required is $2,548,383 to $2,844,725.

## 3) Qualifications

I am the National Managing Director and a founder of Advanced Analytical Consulting Group, Inc. ("AACG"). I have a Ph.D. in Economics from The University of Chicago. I have designed and implemented economic, statistical and software models for academic research, business analyses and litigations over the course of more than 35 years. I have provided testimony involving surveys, sampling, statistics, econometrics, economics, and business, among other topics, before state and Federal courts. I have served as an expert for the US Department of Justice, the US Securities and Exchange Commission, the New York State Attorney General and served as an Expert Arbitrator for the Internal Revenue Service. I have testified in a range of matters over a number of years. A copy of my curriculum vitae is listed in Appendix 2.

My billing rate for this case is $650 per hour. The rates of my staff assigned to this project, which worked at my direction and under my supervision, range from $190 to $650. Compensation for AACG is not contingent on the outcome of the proceedings.

## 4)     Information Relied Upon

My opinions are based upon the review and analysis of various documents and data provided to me in this matter (see Appendix 1 and footnotes herein), academic references, and my education and experience in research and consulting.

## 5)     Background

In approximately 2002, Breht Burri and his company[4] contracted with BIVI to provide software to assist in the ordering of fulfillment materials for BIVI's Cattle Division.[5] Sometime around 2004, BIVI also started to use InfoDeli with WRI for all of its fulfillment needs.[6]  In approximately 2011, CEVA contracted to use the InfoDeli platform with WRI to perform its fulfilment function.[7]  InfoDeli provided a range of services to CEVA and BIVI through a "Joint Venture" with WRI.[8]  The Joint Venture used WRI as its billing arm.[9]  For many services InfoDeli performed for CEVA and BIVI, such as market reports, management, purchasing, marketing and sales force reports, WRI invoiced CEVA or BIVI.[10]

In October of 2012, Shane Fairchild of CEVA spoke with Breht Burri and WRI to create a coupon marketing program and to implement it with WRI.[11]  CEVA used the InfoDeli for the rebate program of CEVA's Vectra tick and flea product.  The InfoDeli platform generated unique rebate codes, prepared spreadsheets to assist in the coordinated printing of uniquely number rebate coupons, recorded redemptions for mailed in coupons, accepted on-line coupon redemptions via unique code, and coordinated fulfilment of rebates

---

[4] "Breht C. Burri is the sole member of InfoDeli, LLC, and was the sole member of InfoDeli's predecessor company, Toobaroo." ORDER, Defendant's Motion for Summary Judgment on InfoDeli's claim for Copyright Infringement, December 18, 2017, P. 2.   These two companies will both be referred to herein as InfoDeli unless the context requires a specific reference to its predecessor TooBaRoo.
[5] Deposition of Breht C. Burri, January 23, 2017, PP. 21-22.
[6] Deposition of Jill Williams, Sept. 26, 2016, P. 14:4-5. ORDER, Defendant's Motion for Summary Judgment on InfoDeli's claim for Copyright Infringement, December 18, 2017, P. 3.
[7] Deposition of Cindy R. Burri, September 27, 2016, P. 17. ORDER, Defendant's Motion for Summary Judgment on InfoDeli's claim for Copyright Infringement, December 18, 2017, P. 3.
[8] "In 2009, Burri began working in conjunction with his family's business, a printing company, named WRI. As a part of this "joint venture," InfoDeli provided WRI with the use of the Platform for fulfillment services, and WRI began doing fulfillment for BIVI." ORDER, Defendant's Motion for Summary Judgment on InfoDeli's claim for Copyright Infringement, December 18, 2017, P. 3.
[9] InfoDeli, LLC et al. v. Western Robidoux, et al., Case No. 1616-CV09518 in the Circuit Court of Jackson County, Missouri, Trial Testimony of Breht C. Burri April 11, 2017 at P. 402:24-25 – P. 403:1-14.
[10] InfoDeli, LLC et al. v. Western Robidoux, et al., Case No. 1616-CV09518 in the Circuit Court of Jackson County, Missouri, Trial Testimony of Breht C. Burri April 11, 2017 at P. 402:24-25 – P. 403:1-14.
[11]  Deposition of Shane Fairchild, February 13, 2018, P. 32:20-25 – P. 36:1-12.

4

for CEVA's Vectra product.[12] Vectra and the associated product rebates were important to CEVA, and WRI.[13]

In 2014, it is my understanding that, unbeknownst to InfoDeli and Breht Burri, Cindy Burri and Brian Burri convinced Breht's mother, Connie Burri and his brother, Peter Burri, to replace him and the InfoDeli software.[14] They opted to get new software, databases and support from another vendor, Engage Mobile Solutions, LLC (Engage).[15] This transition from InfoDeli to Engage directly impacted Breht Burri by $2,334,680. CEVA understood that the Engage replacement software system and related databases were needed to allow the fulfilment function to continue.[16] The functionality of the VectraRebate rebate system and databases used to run it also depended on the InfoDeli platform.[17] The databases contained all of the records that allowed the rebate system to recognize which rebate codes already were issued from WRI and which of those rebate codes had already been redeemed.[18]

It is my understanding that InfoDeli believes that WRI, Engage and individuals from those firms illegally accessed the InfoDeli software system and databases, along with content generated from them for the Joint Venture between InfoDeli and WRI, to produce replacements for several of the functions provided by the InfoDeli Platforms. For example, I am advised that Engage populated the replacement platforms with data, product content and images contained in InfoDeli servers within weeks or months, reducing the cost of replicating the InfoDeli platform, and eventually to completely replace all of the functionality of the InfoDeli platform.

In total, even with accessing the InfoDeli systems, databases and website material,

---

[12] "Vectra is one of the products that Ceva carries and a product for which Ceva ran a coupon and/or sample program. For this coupon/sample program, InfoDeli in association with WRI launched vectrarebate.com in late 2012, which allowed Ceva customers to redeem coupons for Vectra online. Similar to WRI's other fulfillment services, Ceva customers could enter a coupon code and provide demographic information directly through vectrarebate.com, after which the website would process the particular coupon code and WRI would retrieve the requested product or discount from its warehouse, and then ship it to the Ceva customer who redeemed the coupon." ORDER, Defendant's Motion for Summary Judgment on InfoDeli's claim for Copyright Infringement, December 18, 2017, PP. 3-4.
[13] Deposition of Stephen Hoffman, March 15, 2019, P. 50:19-25 – P. 52:1-3 and P. 56:20-25 – P. 57:1-7; Deposition of Brian Burri, March 14, 2019, P. 115:25 – P. 116:1-10; Deposition of Cindy R. Burri, September 27, 2016, Exhibit 5.
[14] Deposition of Cindy Burri September 27, 2016 at P. 25: 17-25 – P. 26:1.
[15] Deposition of Cindy Burri September 27, 2016 at P. 30:2-18.
[16] Deposition of Shane Fairchild February 13, 2018 at P. 187:2-25 – P. 190:1-14.
[17] Deposition of Cindy R. Burri, September 27, 2016, Exhibit 5.
[18] Deposition of Shane Fairchild February 13, 2018 at P. 245:8-17.

5

Engage incurred 5,168.75 hours of development time from March 2014 through October 2015 to construct the software to replace InfoDeli' Software Platforms.[19] WRI and Engage understood that the ongoing support of the CEVA Vectra rebates had to continue during the change from the InfoDeli to the Engage software platforms, viewing the potential for a disruption in this support as a "crisis."[20,21] Thereafter, WRI paid Engage an average of $12,391.28 per month from December 2015 to March 2018 for continued support.[22]

## 6)   Analysis

In this section, I analyze 1) the value of InfoDeli's software and databases, and 2) the value of the ongoing business relationship that InfoDeli had with WRI in support of CEVA and BIVI.

In breaking its relationship with InfoDeli, in February 2014, while at the same time maintaining the critical services provided in the InfoDeli platform, WRI had two general types of options:

Option 1: WRI could approach InfoDeli to purchase or lease the rights to the InfoDeli software and request InfoDeli's permission to maintain the InfoDeli software through a third party, i.e., a data-support entity other than InfoDeli.

Option 2: WRI could independently build and replace software and recreate the data from independent sources such as BIVI and CEVA while maintaining the relationship with InfoDeli during the period required to construct and install the software.

WRI and InfoDeli may have obtained extensive economic benefits from using the InfoDeli software, data and databases. However, based on its economic interests, WRI would not pay more to InfoDeli than Option 2 above because WRI knows that it can obtain the software, data, and database functionality through its clients (for the data) and a third

---

[19]  ENGAGE0226880.  Due to errors in the replacement, platform and fulfillment process WRI and Engage made errors worth $140,000 to CEVA. Deposition of Brian Burri March 14, 2019 at P. 140:25 – P. 141:1-18
[20] Deposition of Cindy R. Burri, September 27, 2016, Exhibit 5.
[21] Deposition of Brian Burri, March 13, 2019 at P. 54:1-12; P. 56:17-25 – P. 57:1-8.
[22] WRI_0062986 AEO (Backup May 16,2018  04 31 PM). QBB cited at Western Robidoux, Inc.'s Responses and Objections to Plaintiffs InfoDeli, LLC's and Breht Burri's Second set of Interrogatories to Western Robidoux, Inc. P. 5.

6

party (for the software and functionality). In other words, WRI could purchase the required software coding, install the software, and load it with all relevant databases and product images, within the required timeframe. Even if WRI received benefits of the software in a much greater amount, WRI would not pay more than the cost of the replacement software, loaded and in place within the required timeframe. Similarly, InfoDeli, knowing the costs of developing this type of software, would not accept less than this amount. Even if WRI had initiated Option 1, if InfoDeli demanded a price higher than in Option 2, WRI could have reverted to the price in Option 2.[23]

Therefore, if it is legally determined that Defendants-A obtained the InfoDeli software and databases inappropriately, the market value of the InfoDeli software and databases is the cost of simultaneously constructing the functionality of the software and creating the databases within the required timeframe, while paying the cost of continued use of the InfoDeli platform, during the period of new software construction and installation.

It is my understanding that InfoDeli believes that Defendants-A inappropriately accessed the InfoDeli software and databases in order to reduce Defendant-A's cost of reconstruction of the InfoDeli software and databases, and to minimize the time required to create the software, schemas, databases and website images and collateral. The relevant market value of the software and database construction is the cost of construction without the benefit of the information gathered through this inappropriate accessing of the software and use of InfoDeli databases, within the required timeframe.

As described above, the cost WRI would have had to pay, and that InfoDeli would have received for this software installed in place, is the cost of platform construction and installation plus the cost of incentivizing InfoDeli to continue its software support until the software was in place.

### A. Value of InfoDeli Software and Databases: Software and Database Component

It is clear from the urgent actions of WRI and Engage to replicate the functions and databases of InfoDeli that the InfoDeli software and programs were critical to WRI and their clients.[24] The value the InfoDeli system, the content and databases provided to WRI, CEVA

---

[23] Donald N. McCloskey, *The Applied Theory of Price,* 1982: Macmillan Publishing Co., P. 94.
[24] Deposition of Brian Burri, March 13, 2019 P. 54:1-12; P. 56:17-25 – P. 57:1-8; Deposition of Stephen

7

and BIVI appears to be very high.[25]  Given the actions between InfoDeli, WRI, and all the Burri family members, by late February 2014, WRI may have had to deploy replacement software within weeks or at most a few months to continue both literature stores and the CEVA rebate program.

WRI contracted with a software and database construction company to quickly develop the InfoDeli replacement software, because WRI needed this quick replacement to continue its business.  This quick build allowed WRI to achieve less interruption of the service required for BIVI and CEVA.  However, as we will see, such quickness comes at a cost.  On the other hand, WRI could have attempted to maintain the relationship with Breht Burri and InfoDeli for an extended time, while building the InfoDeli replacement software and databases.  Because rapid construction and deployment of software is more expensive, this longer software and database build and installation time would reduce the cost of the replacement software and databases, but would require a longer continued relationship with InfoDeli, which may not have been viable, and not what WRI chose to do.[26]  The continued relationship with InfoDeli, if even possible, of course would have entailed additional costs.

As mentioned above, it is my understanding that InfoDeli claims that WRI, Engage, and CEVA accessed InfoDeli software and databases illegally.[27]  This means that the cost incurred by the software construction firm WRI actually hired to reconstruct the functionality of the InfoDeli software and databases, Engage, underestimates the cost WRI would have incurred for obtaining the same functionality without the claimed illegal access.

### i. Software and Database Construction and Installation Costs

I have received calculations by Mr. Michael Edge of Stroz Friedberg of the person-hours and total costs of implementing the InfoDeli replacement software and databases without access to the InfoDeli system or databases.  The software and database construction costs range from 9,996 to 12,106 person-hours for a "clean room" solution delivered in 14 to

---

Hoffman March 15, 2019 at P. 12:2-18; P. 13:6-25 – P. 14:1-9, P. 18:17-25 – P. 19:1-6.
[25] Deposition of Cindy R. Burri, September 27, 2016, Exhibit 5.
[26] Brian Burri testified that the decision to refuse payment to Breht Burri was probably a good decision for WRI even after paying over four and half million dollars in legal fees.  Deposition of Brian Burri March 14, 2019, P. 148:15-25 – P.149:1-2.
[27] SAC ¶ 199.

8

15 months for a total cost of $1,249,500 to $1,513,250[28] to 19,179 to 21,289 person-hours to deliver the solution in 5 to 6 months for a total cost of between $2,397,375 and $2,661,125.[29]

Each of these calculations of the person-hours and total costs to produce the replacement software require at least 5 months. This means that for WRI to maintain service for CEVA and BIVI in the interim, WRI would need to continue to use the InfoDeli platform until the replacement software and databases were ready for use. At a minimum, WRI would need to continue to pay Breht Burri during this period, requiring at least 5 to 6 months of compensation for the shorter software construction period and 14 to 15 months for the longer software construction period.

If, as of March 2014, WRI needed to replace the InfoDeli platform, it is clear it needed to be done fast.[30] Therefore, the relevant software build and installation cost for valuing the InfoDeli software is for the shorter timeframe Mr. Edge provided of 5 to 6 months. This is a more conservative (lower) estimate of the cost of constructing and deploying the software than if the time deadlines were even shorter.

In the next section 6.A.ii, I calculate those additional costs associated with maintaining the InfoDeli relationship while the replacement software is constructed, installed and made functional.

### ii. Cost to Maintain InfoDeli Relationship during Software Construction and Installation

I calculate the payment Breht Burri would have expected to receive from April 2014 for 5 to 6 months (through August and September 2014) under normal business circumstances. This is the duration under which WRI needed the essential parts of the replacement software constructed, loaded with data and in place. It is my understanding that Breht Burri claims that he should have received compensation from WRI equal to that of his two brothers. Under normal circumstances, Breht Burri would have expected to receive

---

[28] Mr. Edge indicated that $125/hr would be a reasonable, conservative cost for the average hourly rate of personnel required to construct the replacement for the InfoDeli platform. Engage charged WRI this same hourly rate (Deposition of Cindy R. Burri, September 27, 2016, Exhibit 4, P. 5).

[29] Expert Report of Michael Edge, InfoDeli et al v. WRI et al, U.S. Federal Court Western District of Missouri, March 18, 2019, Summary of Effort Required to Reimplement the InfoDeli Lit Store and VectraRebate Sites based upon Size and Scope of the Original InfoDeli Solution, P. 62

[30] WRI_0032464.

9

compensation that is not affected by legal costs or software costs associated with the replacement of the InfoDeli platform. Further, it is my understanding that Cindy Burri would not have received a portion of the Director profits due to the Burri brothers that WRI paid to Cindy Burri. WRI paid compensation to the Burri brothers in the form of salary and bonuses. To calculate this one-third equal compensation share for the period from April 2014 through August 2014 and September 2014, for each month, I did the following:

1) I obtained WRI's net income using WRI's financial information.[31]

2) I reversed, or added back, legal costs paid by WRI on its behalf and other parties and software expenses paid to Engage. These expenses would not have been incurred if WRI maintained the InfoDeli relationship.[32]

3) I reversed the compensation that Cindy Burri received in the form of an inflated salary and profits because she held no ownership position in WRI.[33]

4) I reversed the compensation and bonuses of Brian Burri and Peter Burri in this time period.[34]

5) I included or subtracted a salary and bonus that Cindy Burri would have received as an employee of WRI.[35]

6) The amount at this point is the profit, available to be divided equally between the three Burri brothers.

7) Table 1 lists these calculations. It shows that across these months Breht Burri should have received between $151,008 (April 2014 to August 2014) to $183,600 (April 2014 to September 2014) in order to be compensated equally with his brothers.

---

[31] WRI_0062986 AEO (Backup May 16,2018  04 31 PM).QBB.
[32] WRI_0062986 AEO (Backup May 16,2018  04 31 PM).QBB.
[33] WRI_0062996.
[34] WRI_0062987, WRI_0063015.
[35] 2010 Salary from WRI_0054403 with an annual increase of 5% and an annual bonus of 20%.

10

Table 1: Breht Burri's Equal Share Compensation for 5 and 6 months starting April 1, 2014

| | Low-End Estimate: 5 months: April 1, 2014 - August 31, 2014 | High-End Estimate: 6 months: April 1, 2014 - September 30, 2014 |
|---|---|---|
| Net Income: WRI | -$339,293 | -$327,168 |
| +Software development | $169,696 | $181,859 |
| +Legal costs | $38,796 | $52,519 |
| +Compensation paid to Cindy Burri, Peter Burri and Brian Burri | $675,000 | $753,000 |
| -Salary, bonus to Cindy Burri | $91,175 | $109,410 |
| Compensation available to be split 3 ways | $453,024 | $550,799 |
| **Equal share compensation** | **$151,008** | **$183,600** |

Sources:

WRI_0062986 AEO (Backup May 16,2018  04 31 PM).QBB

WRI_0062996, WRI_0062987, WRI_0063015

WRI_0054403: Cindy Burri's compensation calculated using 2010 salary obtained from WRI_0054403 with an annual increase of 5% and an annual bonus of 20%

All QuickBooks reports used are on a cash basis

QuickBooks payments by WRI to Ceva Animal Health, LLC and Boehringer Ingelheim Inc. and categorized under Professional Services are assumed to be reimbursements for legal costs

QuickBooks payments by WRI to Polisinelli and SpencerFane and categorized under Professional Services are assumed to be reimbursements for legal costs in this matter

Payments made by WRI to Kirkland & Woods & Martinsen, starting in 2014, include fees related to and unrelated to this matter.  I used 2003 payment information to estimate unrelated fees ($802.99 per month) and deducted it from legal payments starting in April 2014

### iii. Value of InfoDeli Software and Databases: Interim InfoDeli Continuity Component

As described above, in order to maintain service continuity to CEVA and BIVI, WRI would need to maintain the working relationship with Breht Burri.  While Breht Burri, as an equal owner of WRI with his brothers and as a member of the Board of Directors, may not have agreed to continue to support the transition from the InfoDeli software to a replacement software, I perform a calculation as if Breht Burri would have maintained the InfoDeli software for the 5 to 6 months needed to construct the replacement platform without the inappropriate accessing of InfoDeli platform (software, data files etc.).  In an open negotiation, where WRI revealed their purposes and intent to replace InfoDeli, Breht Burri and InfoDeli may have required significantly higher payment to continue software continuity and support than I have calculated in Section 6.A.ii.

In the 5 to 6 month build out of the replacement software, a payment of between

11

$151,008 and $183,600 would have been required to maintain the InfoDeli system during the build out of the replacement system. Similarly, for the lower software construction cost over the course of 14 to 15 months, WRI would have had to maintain payments to Breht Burri for 14 to 15 months, making the payments of between $547,110 and $595,610. Adding these amounts to the software construction costs described in Section 6.A.i yields the cost of the replacement software and the market value of InfoDeli to WRI in the absence of WRI, Engage, and related individuals accessing of the InfoDeli software and databases. However, given that WRI separated Breht Burri from WRI in March 2014, WRI did not have an option to maintain InfoDeli as a software platform over such a period. In fact, WRI may not have had the option to maintain the relationship between WRI and InfoDeli for even the 5 to 6 months listed in Table 2 below, but I allow that more extended period of 5 to 6 months to provide a conservative (lower) estimate of costs of creating and installing the replacement software.[36]

TABLE 2. Value of InfoDeli Platform and Equal Share Compensation: Conservative Estimate on Replacement Costs.

| | Low-End Estimate: 5 months | | | | High-End Estimate: 6 months | | | |
|---|---|---|---|---|---|---|---|---|
| | Platform Build Hours | Platform Build Costs | Compensation: Breht Burri | TOTAL | Platform Build Hours | Platform Build Costs | Compensation: Breht Burri | TOTAL |
| Cost to build replacement platform in 5-6 months AND keep InfoDeli running | 19,179 | $2,397,375 | $151,008 | **$2,548,383** | 21,289 | $2,661,125 | $183,600 | **$2,844,725** |

Sources:
WRI_0062986 AEO (Backup May 16,2018  04 31 PM).QBB
WRI_0062996, WRI_0062987, WRI_0063015
WRI_0054403: Cindy Burri's compensation calculated using 2010 salary obtained from WRI_0054403 with an annual increase of 5% and an annual bonus of 20%
All QuickBooks reports used are on a cash basis
QuickBooks payments by WRI to Ceva Animal Health, LLC and Boehringer Ingelheim Inc. and categorized under Professional Services are assumed to be reimbursements for legal costs
QuickBooks payments by WRI to Polisinelli and SpencerFane and categorized under Professional Services are assumed to be reimbursements for legal costs in this matter
Payments made by WRI to Kirkland & Woods & Martinsen, starting in 2014, include fees related to and unrelated to this matter. I used 2003 payment information to estimate unrelated fees ($802.99 per month) and deducted it from legal payments starting in April 2014
Expert Report of Michael Edge, Infodeli et al v. WRI et al, U.S. Federal Court Western District of Missouri, March 18, 2019, P. 62

Table 2 shows the cost for WRI to construct and put the InfoDeli replacement platform in place, even given 5 to 6 months. The total value of the InfoDeli software is calculated to be between $2,548,383 and $2,844,725 constructed, installed and loaded with the InfoDeli databases and website collateral.

---

[36] Conversation with Michael Edge demonstrated that shortening the software construction time below 5 months would increase the software construction and installation costs much more than the savings in Breht Burri's monthly compensation and Director bonus, and further, the likelihood that the software would work correctly for its intended purpose would be reduced.

**B. Damage from Tortious Interference**

As described above, Breht Burri has claimed that the behavior of Defendants-B interfered with his continued expectancy of payment from WRI.[37] Table 3 lists payments that Mr. Breht Burri would have received if his compensation were equal to his two brothers from April 2014 to the April 2018. I applied the same adjustments to WRI's financials to calculate the available profit to Breht Burri and his brothers.

1) I obtained WRI's net income using WRI's financial information.[38]

2) I reversed, or added back, legal costs paid by WRI on its behalf and other parties and software expenses paid to Engage. These expenses would not have been incurred if WRI maintained the InfoDeli relationship.[39]

3) I reversed the compensation that Cindy Burri received in the form of an inflated salary and profits because she held no ownership position in WRI.[40]

4) I reversed the compensation and bonuses of Brian Burri and Peter Burri in this time period.[41]

5) I included or subtracted a salary and bonus that Cindy Burri would have received as an employee of WRI.[42]

6) The amount at this point is the profit, available to be divided equally between the three Burri brothers.

7) I reviewed financial data from InfoDeli to determine that Breht Burri incurred unreimbursed expenses of $6,603.17 per month which I subtract from Breht Burri's third of the profits.[43]

The total damage including shortfall in compensation during April 2014 to April 2018 due to the loss of continued payment from WRI is $2,334,680, including statutory

---

[37] SAC ¶ 220.
[38] WRI_0062986 AEO (Backup May 16,2018  04 31 PM).QBB.
[39] WRI_0062986 AEO (Backup May 16,2018  04 31 PM).QBB.
[40] WRI_0062996.
[41] WRI_0062987, WRI_0063015.
[42] 2010 Salary from WRI_0054403 with an annual increase of 5% and an annual bonus of 20%.
[43] In 2013, InfoDeli had $162,282 in expenses (INFODELI395048: 2013 Form 1120S, line 19) of which $66,357 was reimbursed (INFODELI395068) leaving $95,925 in unreimbursed expenses that InfoDeli incurred.  In 2015, in its first full year with no business relationship with WRI, InfoDeli had $16,687 in expenses incurred on behalf of other clients (InfoDeli Tax0001:2015 Form 1120S, line 19).  Thus, $79,238 ($95,925 - $16,687) is the annual, unreimbursed expense that InfoDeli incurred on behalf of WRI.  On a monthly basis, this expense is $6,603.17.

13

simple interest of 9% per annum.[44]

TABLE 3. Breht Burri's Equal Share Compensation from April 1, 2014 to April 30, 2018

| | Apr 1, 2014 Aug 31, 2014 | Sep 1, 2014 Sep 30, 2014 | Oct 1, 2014 Dec 31, 2014 | Jan 1, 2015 Dec 31, 2015 | Jan 1, 2016 Dec 31, 2016 | Jan 1, 2017 Dec 31, 2017 | Jan 1, 2018 Apr 30, 2018 | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Net Income: WRI | -$339,293 | $12,125 | -$23,873 | $365,409 | -$395,269 | -$18,247 | $267,636 | -$131,512 |
| +Software development | $169,696 | $12,163 | $16,836 | $225,961 | $175,398 | $133,479 | $28,984 | $762,517 |
| +Legal costs | $38,796 | $13,722 | $18,121 | $335,666 | $1,393,931 | $1,367,262 | $194,093 | $3,361,592 |
| +Compensation paid to Cindy Burri, Peter Burri and Brian Burri | $675,000 | $78,000 | $507,000 | $921,000 | $792,000 | $450,000 | $162,000 | $3,585,000 |
| -Salary, bonus to Cindy Burri | $91,175 | $18,235 | $54,705 | $229,761 | $241,249 | $253,312 | $88,659 | $977,097 |
| Compensation available to be split 3 ways | $453,024 | $97,775 | $463,378 | $1,618,275 | $1,724,812 | $1,679,182 | $564,054 | $6,600,500 |
| Equal share compensation | $151,008 | $32,592 | $154,459 | $539,425 | $574,937 | $559,727 | $188,018 | $2,200,167 |
| Minus Breht Burri's unreimbursed expenses | -$33,016 | -$6,603 | -$19,810 | -$79,238 | -$79,238 | -$79,238 | -$26,413 | -$323,555 |
| Net equal share compensation | $117,992 | $25,989 | $134,650 | $460,187 | $495,699 | $480,489 | $161,605 | $1,876,612 |
| Net equal share compensation with 9% simple interest | **$166,876** | **$36,124** | **$187,122** | **$606,363** | **$611,043** | **$552,411** | **$174,742** | **$2,334,680** |

Sources:
WRI_0062986 AEO (Backup May 16,2018 04 31 PM) Q88
WRI_0062996, WRI_0062987, WRI_0063015
WRI_0054403: Cindy Burri's compensation calculated using 2010 salary obtained from WRI_0054403 with an annual increase of 5% and an annual bonus of 20%
All QuickBooks reports used are on a cash basis
QuickBooks payments by WRI to Ceva Animal Health, LLC and Boehringer Ingelheim Inc. and categorized under Professional Services are assumed to be reimbursements for legal costs
QuickBooks payments by WRI to Polisinelli and SpencerFane and categorized under Professional Services are assumed to be reimbursements for legal costs in this matter
Payments made by WRI to Kirkland & Woods & Martinsen, starting in 2014, include fees related to and unrelated to this matter. I used 2003 payment information to
estimate unrelated fees ($802.99 per month) and deducted it from legal payments starting in April 2014
MO Statutory rate: R.S.Mo.§ 408.020 obtained from http://revisor.mo.gov/main/OneSection.aspx?section=408.020

These damages related to tortious interference are based on each of the Burri brothers receiving equal compensation regardless of their contribution to WRI's profitability. I understand that WRI viewed the InfoDeli platform as critical to its business operations, and therefore this assumption may underestimate the contribution of InfoDeli and Breht Burri to the total compensation pool to be divided among the Burri Brothers.

Although the value of the installed replacement software and the tortious interference are two separate claims, to be conservative, I have excluded Breht Burri's equal share of Burri brothers' compensation from the tortious interference damages for the duration of 5 to 6 months prior to the software installation required to replace InfoDeli. Thus, this conservative total damage estimate is the sum of the following:

[44] R.S.Mo.§ 408.020 obtained from http://revisor.mo.gov/main/OneSection.aspx?section=408.020.

- The damage from tortious interference while excluding the 5 to 6 months to put the replacement software in place. This damage ranges from $2,131,680[45] to $2,167,804[46] and,
- The damage for estimated cost of the installed replacement software in 5 to 6 months. This damages ranges from $2,548,383 to $2,844,725.

This results in a total damage estimate ranging from $4,716,187 to $4,976,405 for computer tampering plus tortious interference.

I have provided a summary in Table 4 below. If the defendants are found liable for tortious interference but not for the loss of the value of the software, the damage is $2,334,680. If the defendants are found liable for the loss of the value of the software platform, but not tortious interference, the damage ranges from $2,548,383 to $2,844,725.

TABLE 4. Summary of Damages Arising From Each Claim

|  | Shorter Time Duration Estimate | Longer Time Duration Estimate |
|---|---|---|
| Claim: Computer Tampering alone | $2,548,383 | $2,844,725 |
| Claim: Tortious Interference alone | $2,334,680 | $2,334,680 |
| Claim: Tortious Interference, excluding 5 to 6 months for software installation | $2,167,804 | $2,131,680 |
| Claim: Both Computer Tampering AND Tortious Interference (excluding 5-6 months) | $4,716,187 | $4,976,405 |

### C. Damage from Breach of Contract

InfoDeli believes that certain defendants accessed the InfoDeli software to facilitate the replication of the functions of the InfoDeli platform in breach of the terms of use.[47] InfoDeli claims that the purpose of this breach of contract was to copy aspects of InfoDeli

---

[45] Net equal share compensation with 9% simple interest from October 1st, 2014 to April 30, 2018.
[46] Net equal share compensation with 9% simple interest from September 1st, 2014 to April 30, 2018.
[47] SAC ¶¶ 228-239.

15

that were protected to produce software to replace the use of InfoDeli at WRI. I have been asked to value the resulting economic impact of those breaches by defendants.

As a result of the breaches, defendants were able to replace, or more swiftly replace, the InfoDeli platform, including it various aspects mentioned above, including software, databases, schemas, and webpage collateral among others. The cost of recreating the InfoDeli platform in the timeframe required is calculated above in Section 6.A.iii. The magnitude of the damages presented there are the same for the breach of contract. Without the InfoDeli platform, WRI would have needed to replace the functionality of the InfoDeli platform. As discussed above, the InfoDeli platform was viewed as critical to WRI.[48] For the same reasons discussed above, WRI would have had to quickly replace the InfoDeli software, the cost of which I value above in Table 2. To damages due to this breach of contract are overlapping with the computer tampering claim. To the extent that the Court finds the defendants liable for one or the other claim of computer tampering or breach, the damages listed in Table 2 should be awarded, in addition to any liability and damaged for tortious interference, as discussed above. If defendants are found liable for both computer tampering and breach the figures in Table 2 should be awarded only once, in addition to any liability and damaged for tortious interference, as discussed above.

Daniel S. Levy, PhD

March 18, 2019

---

[48] Deposition of Cindy R. Burri, September 27, 2016, Exhibit 5 Deposition of Brian Burri, March 13, 2019 P. 54:1-12; P. 56:17-25 – P. 57:1-8.

## Appendix 1 – Information Relied Upon

InfoDeli, LLC. et al v. Western Robidoux, Inc. et al, Case No. 4:15-cv-00364-BCW, Second Amended Complaint, Third Claim for Relief and Fourth Claim for Relief (Amended)

ORDER, Defendant's Motion for Summary Judgment on InfoDeli's claim for Copyright Infringement, December 18, 2017

InfoDeli, LLC et al. v. Western Robidoux, et al., Case No. 1616-CV09518 in the Circuit Court of Jackson County, Missouri, Trial Testimony of Breht C. Burri April 11, 2017

ENGAGE0226880

Expert Report of Michael Edge, InfoDeli et al v. WRI et al, U.S. Federal Court Western District of Missouri, March 18, 2019

Western Robidoux, Inc.'s Responses and Objections to Plaintiffs InfoDeli, LLC's and Breht Burri's Second set of Interrogatories to Western Robidoux, Inc.

WRI_0032464

WRI_0054403

WRI_0062996

WRI_0062986 AEO (Backup May 16, 2018  04 31 PM).QBB

WRI_0062987

WRI_0063015

INFODELI395048

INFODELI395068

InfoDeli Tax0001

Deposition of Breht C. Burri, January 23, 2017

Deposition of Brian Burri, March 13, 2019

Deposition of Brian Burri, March 14, 2019

Deposition of Cindy R. Burri, September 27, 2016

Deposition of Cindy R. Burri, September 27, 2016, Exhibits 4-5

Deposition of Shane Fairchild, February 13, 2018

Deposition of Stephen Hoffman, March 15, 2019

Deposition of Jill Williams, Sept. 26, 2016

17

## Appendix 2- Curriculum Vitae

DANIEL S. LEVY, PhD

National Managing Director
Advanced Analytical Consulting Group, Inc.
112 Water Street | Boston MA 02109
Danlevy@AACG.com

617 330 AACG (2224)

Daniel S. Levy specializes in applications of economics and statistics in the study of corporate structures related to industrial organization/antitrust, intellectual property infringement and damages issues. His work includes detailed analyses and valuations of corporate functions, risks, and assets for international corporations in a wide range of industries. He has served as an expert witness in high technology industries for copyright litigation, patent disputes and associated antitrust allegations. He has designed and performed sampling protocols to review the composition of alleged copyrighted material. He has also designed consumer surveys to determine the consumers' value of products and services. As part of his business consulting, Dr. Levy has worked Fortune 500 companies developing economic, statistical and computing solutions for optimizing prices. He has analyzed lost profits in various business related situations. He has testified in Federal Court, presented statistical issues to Government Agencies and served as an Expert Arbitrator.

Prior to Advanced Analytical Consulting Group, Inc., Dr. Levy was the National Leader of the Economic and Statistical Consulting Group at Deloitte Financial Advisory Services and Global Leader of Economic Consulting at Arthur Andersen's Business Consulting Group. He also held research and consulting positions at Charles River Associates, The RAND Corporation, Needham-Harper Worldwide Advertising, SPSS Inc. and The University of Chicago Computation Center.

Dr. Levy and his team of economists and engineers design, build and implement pricing models and applications that help their clients optimize prices to improve revenues/profits.

Ph.D., Economics, The University of Chicago

18

## EXPERT REPORTS, TESTIMONY/AFFIDAVITS

- Rimini Street, Inc. v. Oracle International Corporation, Case No. 2:14-cv-01699, United States District Court for the District of Nevada, 2018, Expert Report.

- Olvera v. El Pollo Loco, Inc., JCCP Case No. 4957, Superior Court of California, Orange County, 2018, Expert Report and Deposition

- In Re: Wholesale Grocer Products Antitrust Litigation, Civil Action No. 09-md-02090, United States District Court for the District of Minnesota, 2017, Expert Report and Deposition.

- Crescent City Surgical Center v. Louisiana Health Services and Indemnity Company, 24th Judicial District Court for the Parish of Jefferson, Stat of Louisiana, No.: 765-705, 2017, Expert Report and Deposition.

- Lucy Truitt, et al., v Atlanta Independent School System, Civil Action File No. 1:15-CV-04295-SCJ-WEJ,US District Court, Northern District of Georgia, Atlanta Division, 2017, Expert Reports and Deposition.

- US Department of Labor v Analogic, CASE NO. 2017-OFC-00001, United States Department of Labor Office of Administrative Law Judges, 2017, Expert Report and Testimony

- Susan Mojica et al v Securus Technologies , Civil Action No. 14-5258, US Federal Court, Western District, 2017, Expert Report.

- Ex rel Duffy v Lawrence Memorial Hospital, Civil Action Case No. 2:14-cv-02256-SAG-JPO, US Federal Court, District of Kansas, 2017 Expert Report.

- Miller v. The Port Authority of New York & New Jersey, Case No. 2:15-CV-06370-KM-MAH, US District Court for District of New Jersey, 2017.

- Omega Hospital, LLC v Louisiana Health Services & Indemnity Company, State of Louisiana, Civil Proceeding No. 16-c-4, 2016, Expert Report and Deposition

- University of Virginia Patent Foundation v Dynavox Systems, LLC, American Arbitration Association, Case No. 01-14-0000-7598, 2015, Expert Report.

- Veronica Becerra et al v the McClatchy Company, Case No. 8CECG 04411KCK, 2014.

- E. Aguilera, et al. v. Waukesha Memorial Hospital, Inc. U.S. District Court, Eastern District of Wisconsin, Case No. 13-CV-1245, 2015, Labor, Expert Report.

- Sirko et al v International Business Machine Corporation, Case no. CV13-3192 DMG, 2014, Expert Report and Deposition.

- Sawin et al. v. The McClatchy Company et al., SCSC Case No. 34-2009-00033950-CU-OE-GDS, 2014, Expert Report and Deposition.

- Oracle USA, Inc. v Rimini Street Inc. and Seth Ravin, Case No. 2-10-cv-0106 LRH-VCF, 2012, Expert Report.

- Stephen Markson v. MBNA Canada Bank, Ontario Superior Court of Justice, Court File 03-CV254970CP, 2012, Expert Report and Deposition.

- Disney Enterprises, Inc. et al.v. Hotfile Corp et al, U.S. District Court, Southern District of Florida, Case no. 11-20427-Williams-Turnoff, 2012, Expert Report and Deposition.

19

## PROFESSIONAL EXPERIENCE

| 2009 – Present | National Managing Director, Advance Analytical Consulting Group, Inc. |
| 2002 - 2009 | National Leader of Economic and Statistical Consulting, Deloitte FAS LLP |
| 2001 - 2002 | Global Director of Economic and Statistical Consulting, Arthur Andersen: Value Solutions |
| 1998 - 2001 | National Director of Economic and Statistical Consulting, Arthur Andersen: Business Consulting |
| 1996 - 1998 | Regional Director of Economics, Arthur Andersen: CRCO |
| 1995 - 1996 | Economist, Arthur Andersen |
| 1991 - 1995 | Senior Associate, Charles River Associates |
| 1988 - 1991 | Associate Economist, The RAND Corporation |
| 1985 - 1988 | Computer Advisor, The University of Chicago Computation Center |
| 1982 - 1985 | Research and Teaching Consultant, SPSS Inc. |
| 1981 - 1982 | Research Consultant, Needham, Harper Worldwide Advertising |

## PROFESSIONAL HONORS and ACTIVITIES

- Earhart Fellowship for graduate research in economics, 1981 - 1982
- Hewlett Grant for research in developing countries, 1985 - 1986; renewed, 1986 - 1987
- CBS Bicentennial Scholarship for research on events leading to the American Revolution, 1986 - 1987
- Homer and Alice Jones Fellowship, University of Chicago, 1987 - 1988
- American Economics Association, 1988- Present
- Population Association of America, 1988-1991

## PAPERS, PRESENTATIONS, AND PUBLICATIONS

- Levy, Daniel and Tardiff, Timothy J., Measurement of Market Concentration Faced by Labor Pools: Theory and Evidence from Fast Food Chains in Rhode Island with No-Poaching Clauses (September 14, 2018). Available at SSRN: https://ssrn.com/abstract=3247932 or http://dx.doi.org/10.2139/ssrn.3247932

- Levy, Daniel *et al.*," Is LIBOR Still Being Manipulated?: Identifying Colluders with Methods of Detecting LIBOR Tampering," December 27, 2016. Available at SSRN: https://ssrn.com/abstract=2884953 or http://dx.doi.org/10.2139/ssrn.2884953

- Daniel S. Levy and Timothy J. Tardiff "Pricing and Maximizing Profits within Corporations: Applications of Lester Taylor's Insights," Demand for Communications Services – Insights and Perspectives, Springer, New York, 2014.

- Timothy Tardiff, Daniel Levy, Audrius Girnius, and Karthik Padmanabhan, "Antitrust and Community Impact Report," Montana Commissioner of Securities, January 29, 2013.

- Daniel S. Levy and Timothy J. Tardiff "Pricing and Maximizing Profits within Corporations: Applications of Lester Taylor's Insights," Presented at Telecommunications Demand and Investment: The Road Ahead, Conference in Honor of Emeritus Professor Lester D. Taylor, Jackson Hole, Wyoming, October 10, 2011.

- Daniel S. Levy. "Foundations of Pricing," Presented at the Professional Pricing Society Meetings, Oct 2010.

**Appendix 3 – Value of InfoDeli Platform and Equal Share Compensation: 14-15 months**

Case 4:15-cv-00364-BCW   Document 694-2   Filed 05/31/19   Page 23 of 24

Value of InfoDeli Platform and Equal Share Compensation if Replacement Platform is Built in 14-15 Months

| | Low-End Estimate | | | | High-End Estimate | | | |
|---|---|---|---|---|---|---|---|---|
| | Platform Build Hours | Platform Build Costs | Compensation: Breht Burri | TOTAL | Platform Build Hours | Platform Build Costs | Compensation: Breht Burri | TOTAL |
| Cost to build repalcement platform in 14-15 months AND keep InfoDeli running | 9,996 | $1,249,500 | $547,110 | **1,796,610** | 12,106 | $1,513,250 | $595,610 | **2,108,860** |

Sources:
WRI_0062986 AEO (Backup May 16,2018  04 31 PM).QBB
WRI_0062996, WRI_0062987, WRI_0063015
WRI_0054403: Cindy Burri's compensation calculated using 2010 salary obtained from WRI_0054403 with an annual increase of 5% and an annual bonus of 20%
All QuickBooks reports used are on a cash basis
QuickBooks payments by WRI to Ceva Animal Health, LLC and Boehringer Ingelheim Inc. and categorized under Professional Services are assumed to be reimbursements for legal costs
QuickBooks payments by WRI to Polisinelli and SpencerFane and categorized under Professional Services are assumed to be reimbursements for legal costs in this matter
Payments made by WRI to Kirkland & Woods & Martinsen, starting in 2014, include fees related to and unrelated to  this matter.  I used 2003 payment information to estimate unrelated fees ($802.99 per month) and deducted it from legal payments starting in April 2014
Expert Report of Michael Edge, Infodeli et al v. WRI et al, U.S. Federal Court Western District of Missouri, March 18, 2019, P. 62