**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **ECIMOS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | **Case No. 2:15-CV-2726-JPM-cgc** |
| | ) | |
| **CARRIER CORPORATION** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**REPORT OF THE SPECIAL MASTER REGARDING THE IMPLEMENTATION OF
NON-INFRINGING RUNTEST SOLUTIONS**

Pursuant to the Court's November 20th, 2018 Revised Order Memorializing Injunction and Appointing Special Master ("Order"), the special master submits the following report to the Court regarding the progress of the implementation of new non-infringing run test solution by Carrier Corporation ("Carrier").

## I.  Introduction

1. This report describes my progress and finding thus far. Since this is the first report, I have also included an outline of expectations for a development process that prevents access to ECIMOS's protected intellectual property in the implementation of new non-infringing run test solutions.

## II.   Background

### A. Court Order

2.  The Court on November 20th, 2018, ordered:

> 1. The special master shall review the implementation of new run test solutions by Carrier. Specifically, the special master shall:
>
>> a. Review Carrier's selection and hiring of third-party developers for its RES database replacement projects to date, and oversee selection and hiring of any additional third-party developers;
>>
>> b. Determine what processes were in place to prevent the development team from accessing ECIMOS's protected intellectual property, including, specifically:
>>
>>> i. the RES database, that is, the tables, stored procedures, database scripts, or database script portions specific to the RES application's run test processes;
>>>
>>> ii. ECIMOS's software source code, including the algorithms for the valid tests and test procedures and the way the software source code interacts with ECIMOS's database;
>>>
>>> iii. ECIMOS's assembled hardware and wiring diagrams;
>>
>> c. Determine whether these policies were followed and were effective in preventing access to ECIMOS's protected intellectual property by the third-party developer(s).
>
> 2. If the special master determines that the policies in place were adequate and effective to prevent the development team from accessing the above described ECIMOS intellectual property, the special master shall make a report stating his findings to the Court. The special master shall then oversee the continued implementation of solutions necessary to replace the infringing RES database.
>
> 3. If the special master determines that the policies in place were inadequate or ineffective, or if the special master cannot determine that the polices were adequate and effective, the special master shall make a report stating his findings to the Court. The master shall then:
>
>> a. Review the selection and hiring of a new third-party developer;
>>
>> b. Review requirements for a new, non-infringing database;
>>
>> c. Ensure that no protected information is shared with the third-party development team; and
>>
>> d. Review the implementation of a new, non-infringing database.
>
> 4. The special master shall report when implementation of a non-infringing RES database is complete.

REPORT OF THE SPECIAL MASTER REGARDING THE                                        2
IMPLEMENTATION OF NON-INFRINGING RUNTEST SOLUTIONS
Case No. 2:15-CV-2726-JPM-cgc

### B. Expected Process

3.  As described in the Order, it is expected that Carrier will follow an adequate and effective policy, including the selection and hiring of an appropriate third-party developer, to prevent access to and possible use of ECIMOS's protected intellectual property in the implementation of new non-infringing run test solutions. In order to comply with the Order, my expectation is that Carrier will follow a process of, or equivalent to, what is known as software clean room development. The following description of a proper software clean room development process is therefore provided.

4.  Software clean room development is based upon three roles: clean room developers, dirty room developers, and the monitor[1,2]. The dirty room developers are individuals with possible exposure to the protected intellectual property. The clean room developers are individuals with no access or exposure to the protected intellectual property. The clean room developers will implement the new non-infringing solutions. The dirty room developers and clean room developers should be distinct.

5.  The software clean room development process should include barriers that prevent direct or unrestricted communication between the clean room developers and dirty room developers, this may constitute a difference in physical location, business organization, electronic security, or other measures. It is recommended that both the dirty room developers and clean room developers maintain regular records of their activities.

6.  The role of the monitor is assigned to a person or organization entrusted with filtering all information passed between the dirty room developers and clean room developers to assure that no protected intellectual property is passed to the clean room developers. In addition to having the monitor assess all information and communications passing to the clean room developers, records of all information allowed to pass to the clean room developers should be maintained. There should also be defined protocols for communication with the monitor, how approved information is passed by the monitor to the dirty room developers and clean room developers, and for reporting if any

---

[1] Bob Zeidman, "Implementing a Software Clean Room," in *The Software IP Detective's Handbook*. Westford, MA: Prentice Hall, 2011.
[2] Bernard A. Galler, "The Clean Room Approach," in *Software and Intellectual Property Protection*. Westport, CT: Quorum Books, 1995.

REPORT OF THE SPECIAL MASTER REGARDING THE                                    3
IMPLEMENTATION OF NON-INFRINGING RUNTEST SOLUTIONS
Case No. 2:15-CV-2726-JPM-cgc

unmonitored passing of information occurs. The passing of unmonitored information may render the entire software clean room process ineffective.

7. A proper software clean room development process should also include the education of individuals assigned to the roles of clean room developers, dirty room developers, and monitor on their responsibilities. Therefore, it is recommended that Carrier creates, and follows, a written software clean room development policy for the development of new non-infringing run test solutions, which includes designations of individuals to the roles of clean room developer, dirty room developer, and monitor.

### C. Carrier's New Implementation

8. Carrier has undertaken the development of two distinct implementations of new run test solutions. Carrier has provided materials documenting the first new run test solution (the "Bloomy project") and is preparing to send documentation regarding the second new run test solution ("PVI project").

## III.   Analysis

9. I am currently conducting my initial review of the transcripts and exhibits from the trial as well as reports submitted by the experts, in order to establish an understanding of ECIMOS's protected intellectual property described in the Order. I am supplementing this review by communicating with Carrier and ECIMOS regarding ECIMOS's protected intellectual property.

10. I have requested for Carrier and ECIMOS to identify and provide materials representative of ECIMOS's protected intellectual property, particularly native or originating versions of materials that became trial exhibits. Carrier has provided native versions of the RES database and MES database, which I am examining. I have requested copies of Exhibits 4A and 4B from ECIMOS.

11. I have also begun a review of the materials provided by Carrier for the Bloomy project. I am initially focusing on Carrier's selection of the third-party developers and the processes and policies of Carrier for preventing access to ECIMOS's protected intellectual property by the third-party developers. I have thus far observed that Carrier is attempting to follow a software clean room development process intended to prevent the development team from accessing ECIMOS's protected intellectual property for the

REPORT OF THE SPECIAL MASTER REGARDING THE                                          4
IMPLEMENTATION OF NON-INFRINGING RUNTEST SOLUTIONS
Case No. 2:15-CV-2726-JPM-cgc

Bloomy project. However, I am still reviewing the details of their process and the selection of the third-party developer to determine if it is adequate and effective. I have requested some additional information regarding Carriers implementation of the Bloomy project and additional information about the third-party developer. After I receive the additional information, I intend to conduct interviews with the third-party developer. I also intend to visit the Carrier Collierville plant to review the run test operations and equipment, which I am arranging with Carrier for the week of January 7th.

## IV.   Additional Issues

12. The subject of whether I might obtain and report an accounting of the number of run test stations interacting with the infringing RES database has arisen. I would therefore like to request a clarification from the Court as to whether I should obtain and report this information in addition to the responsibilities assigned by the Order on November 20th, 2018.

13. I would also like to request a clarification from the Court regarding the possible relationship between ECIMOS's assembled hardware and wiring diagrams and the hardware of the run test stations at Carrier's Collierville plant.

## V.   Conclusion

14. I am continuing my review of the available materials, while awaiting some additional materials that I have requested from both Carrier and ECIMOS.

DATED: December 14, 2018.

_____

Special Master

Nikolaus Baer

REPORT OF THE SPECIAL MASTER REGARDING THE                                          5
IMPLEMENTATION OF NON-INFRINGING RUNTEST SOLUTIONS
Case No. 2:15-CV-2726-JPM-cgc

Case 4:15-cv-00364-BCW      Document 695-3      Filed 05/31/19      Page 5 of 5